# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION
### www.flsb.uscourts.gov

In re:                                                       Case No. 18-16248-BKC-MAM
                                                             Chapter 7
CHANCE & ANTHEM, LLC,

      Debtor.

_____/

ROBERT C. FURR not individually but                          ADV. NO. 19-01298-BKC-MAM-A
as Chapter 7 Trustee of the estate of the
Debtor, Chance & Anthem, LLC,

      Plaintiff,

v.

JEFFREY M. SISKIND, individually and
d/b/a SISKIND LEGAL SERVICES,
TANYA SISKIND, individually,
JEFFREY M SISKIND, solely in his capacity as Trustee of the,
SECOND SISKIND FAMILY TRUST,
CANNAMED PHARMACEUTICALS, LLC,
a Maryland Limited Liability Company,
OB REAL ESTATE HOLDINGS 1732, LLC, a
Florida Limited Liability Company,
SISKIND LEGAL SERVICES, LLC,
a Florida Limited Liability Company,
SOVEREIGN GAMING & ENTERTAINMENT, LLC,
a Florida Limited Liability Company
FLORIDA'S ASSOCIATION OF COMMUNITY
BANKS AND CREDIT UNIONS, INC. a Florida Corporation,
SYMPATICO EQUINE RESCUE, INC, a Florida Corporation,
WELLINGTON 3445, LP, a Florida Limited Partnership,
ZOKAITES PROPERTIES, LP, a Pennsylvania Limited Partnership,
and ROBERT GIBSON, individually[1],

      Defendants.

_____/

---

[1] Pursuant to Fed. R. Civ. P. 20, as incorporated by Fed. R. Bankr. P. 7020, the Defendants are joined in this adversary proceeding because they are liable jointly, severally, or with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and questions of law and fact common to the Defendants will arise in the action.

**<u>FIRST AMENDED ADVERSARY COMPLAINT TO AVOID AND TO RECOVER
FRAUDULENT TRANSFERS, FOR TURNOVER, FOR AN ACCOUNTING,
SUBSTANTIVE CONSOLIDATION, INJUNCTIVE RELIEF
AND FOR OTHER RELIEF</u>**

Plaintiff, Robert C. Furr (the "Trustee" or "Plaintiff"), not individually but as Chapter 7 Trustee of the bankruptcy estate of the Debtor, Chance & Anthem, LLC  (the "<u>Debtor</u>" or "<u>C&A</u>"), files this First Amended Adversary Complaint against JEFFREY M. SISKIND, individually and doing business as SISKIND LEGAL SERVICES ("<u>Siskind</u>"), TANYA SISKIND, individually (<u>T. Siskind</u>) and Jeffrey Siskind as Trustee of the Second Siskind Family Trust ("<u>Family Trust</u>"), CANNAMED PHARMACEUTICALS, LLC, a Maryland Limited Liability Company ("<u>Cannmed</u>"), SISKIND LEGAL SERVICES, LLC, a Florida Limited Liability Company ("<u>Siskind Legal</u>"), SOVEREIGN GAMING & ENTERTAINMENT, LLC, a Florida Limited Liability Company ("<u>Sovereign</u>"), FLORIDA'S ASSOCIATION OF COMMUNITY BANKS AND CREDIT UNIONS, INC. a Florida Corporation ("<u>FLACC</u>"), SYMPATICO EQUINE RESCUE, INC, a Florida Corporation ("<u>Sympatico</u>") (Family Trust, Cannmed, Siskind Legal, Sovereign, FLACC and Sympatico are collectively referenced as the "Related Defendants"), OB REAL ESTATE HOLDINGS 1732, LLC, a Florida  Limited Liability Company ("<u>OB Real Estate</u>"), WELLINGTON 3445, LP, a Florida Limited Partnership ("<u>Wellington</u>"), and ZOKAITES PROPERTIES, LP, a Pennsylvania Limited Partnership ("<u>Zokaites Properties</u>")(OB Real Estate, Wellington and Zokaites Properties are collectively referenced as the "<u>Zokaites Defendants,</u>" and together with the Related Defendants, the "Corporate Defendants") and ROBERT GIBSON, individually ("<u>Gibson</u>"), to avoid and to recover fraudulent transfers from the Debtor to the Defendants, for turnover of property, for an accounting, for substantive consolidation, for injunctive relief and for other relief pursuant to Sections 105, 542, 544, 548, and 550 of Title 11 of the United States Code (the "<u>Bankruptcy</u>

Code"), Chapter 726 of the Florida Statutes, Rule 7001, et seq. of the Federal Rules of Bankruptcy Procedure and federal common law and alleges, as follows:

## INTRODUCTION

1.      Jeffrey Siskind is an attorney licensed in Florida since 1998.  Siskind was the sole member, attorney and control person of the Debtor.  Siskind contends that the Debtor's alleged business affairs consisted of two primary ventures: (1) serving as a funding vehicle for a cannabis business in Maryland in exchange for 70% of the membership interests in that business; and (2) renovating and thereafter selling a home in Wellington, Florida.

2.      In truth, Siskind used the Debtor in concert with the Related Defendants in order to divert over $3 million of creditor, investor and client funds and real estate for his benefit and the benefit of his family members and associates.  Siskind later concealed the value of these diverted assets through a series of transactions involving the Corporate Defendants.  During the course of most of these transactions, Defendant Siskind was a Chapter 11 debtor before this Court.  *In re Siskind,* Case No. 13-13096-MAM.  Defendant Siskind failed to properly disclose his interest in these transactions during his five (5) years as a debtor.

3.      The Trustee's investigation, to date, reveals that Siskind transferred his clients' and investors' funds indiscriminately between entities that he controls and for which the Debtor and its affiliates did not receive reasonably equivalent value.  For example, Siskind used creditor monies to (i) transfer over $800,000 to himself; (ii) make payments in excess of $175,000 for airplanes not owned by the Debtor; (iii) transfer over $160,000 into his IOTA Trust account; (iv) fund a series of cash withdrawals in excess of $119,000; and (v) place millions of dollars of real estate purchased with creditor funds in the hand of companies controlled by his long-term business associate Frank Zokaites ("Zokaites") and identified herein as the Zokaites Defendants.

4.      By this adversary proceeding, the Trustee seeks to recover the property (or its value, products, and replacements) fraudulently transferred by Siskind for the benefit of the creditors of the Debtor and the Related Defendants.  Certain of the transfers identified in this adversary Complaint were made by the Related Defendants.  In turn, certain creditors of the Related Defendants have sought to assert claims against the Debtor on the basis the Related Defendants' transactions with the Debtor.  Accordingly, the Trustee is a proper party with standing to pursue these transfers.

5.      The Trustee also seeks to substantively consolidate before this Court the Related Defendants.

6.      The Trustee further seeks injunctive relief to prevent Siskind and his associates from dissipating, encumbering and/or absconding with the property of the Debtor or the Related Defendants.

## THE PARTIES, JURISDICTION AND VENUE

7.      On January 29, 2018, the Debtor filed a voluntary petition for bankruptcy relief under Chapter 7 of the United States Code (the "Bankruptcy Code") [ECF No. 1] in the United States Bankruptcy Court for the District of Maryland.

8.      On January 29, 2018, George W. Liebman was appointed Chapter 7 Trustee in the District of Maryland.

9.      On March 17, 2018, a Section 341 Meeting of Creditors was held in the District of Maryland.  The Debtor failed to appear.

10.     On May 24, 2018, A Memorandum and Order Transferring Venue to the Bankruptcy Court for the Southern District of Florida.

11.     On May 25, 2018, Robert C. Furr was appointed as the Chapter 7 Trustee.  A

4

section 341 Meeting of Creditors occurred on July 9, 2018 at 8:30 am in the Southern District of Florida, West Palm Beach Division. The Debtor appeared through its sole managing member, Defendant Siskind.

12.     Defendant, Siskind, is the control person of the Related Defendants. Siskind resides in Palm Beach County, Florida. Defendant Siskind is also the sole manager and member of the Debtor, the individual who prepared and executed its bankruptcy schedules, and served as the Debtor's pre-petition counsel.

13.     Defendant, T. Siskind, is Siskind's wife. She is believed to be in possession of a Mercedes Benz acquired with funds fraudulently transferred from the Debtor. Additionally, T. Siskind also received cash and property fraudulently transferred by the Debtor. T. Siskind resides in Wellington, Florida.

14.     Defendant, Family Trust, is a trust that upon information and belief is settled under the laws of the State of Florida. Additionally, upon information and belief, Siskind is the Trustee of Family Trust, and a beneficiary or party that asserts dominion and/or control of the Family Trust.

15.     Defendant, CannaMed, is a limited liability company organized under the laws of the State of Maryland. Its principal place of business was 27120 Ocean Gateway, Hebron, Maryland 21230. The Debtor purports to own 70% of Defendant CannaMed. The Debtor's bankruptcy schedules reflect investments in CannaMed and liabilities of CannaMed as liabilities of the Debtor. The Debtor and CannaMed purported to share a principal place of business in Hebron, Maryland.

16.     Defendant, OB Real Estate, is an inactive Florida Limited Liability Company having a principal address of 375 Golfside Drive, Wexford, PA 15090. Its manager is Zokiates

and its principal place of business is the same as Defendants Wellington and Zokaites Properties. Its registered agent is Defendant Siskind at 525 S. Flagler Drive, Suite 500, West Palm Beach, FL 33401.

17.     Defendant, Siskind Legal, is an inactive Florida Limited Liability Company having a principal address of 525 S. Flagler Drive, Suite 500, West Palm Beach, FL 33401. From time to time, Defendant Siskind has purported to practice law through Defendant Siskind Legal.

18.     Defendant, Sovereign, is an inactive Florida Limited Liability Company having its principal address of 525 S. Flagler Drive, Suite 500, West Palm Beach, FL 33401.  Its sole manager and registered agent was William Siskind.  Defendant Siskind is believed to control Defendant Sovereign as a nominee of William Siskind, his deceased father.

19.     Defendant, FLACC, is a Florida corporation having its principal address of 525 S. Flagler Drive, Suite 500, West Palm Beach, FL 33401.  Its sole manager and registered agent is Defendant Siskind.  Siskind claims that Defendant FLACC provides services to community banks and credit unions.  FLACC appears to have no legitimate operations and appears to be a mere instrumentality created by Siskind to facilitate his and the Debtor's scheme.

20.     Defendant, Sympatico, is a Florida corporation having its principal address of 3465 Santa Barbara Drive, Wellington, FL 33144.  Its sole officer and registered agent is Defendant Siskind.  Siskind claims that Defendant Sympatico is a charity.  Sympatico appears to be a mere instrumentality used by Siskind to facilitate his and the Debtor's scheme.

21.     Defendant, Wellington, is a Florida Limited Partnership having its principal address of 375 Golfside Drive, Wexforx, P.A.  Defendant Wellington's general partner is Zokaites Contracting FL, LLC ("Zokaites Contracting").  Defendant Wellington was formed with the Florida Secretary of State on February 16, 2017.  The sole member and sole manager of

Zokaites Contracting is Zokaites.

22.    Defendant, Zokaites Properties, is a limited partnership organized under the laws of Pennsylvania.  Zokaites and his wife are the principal partners.  It maintains its principal place of business in Wexford, Pennsylvania.  Although it is not registered to conduct business in Florida, it frequently engages in transactions in Florida, including those at issue in this adversary proceeding.

23.    W. Siskind was the elderly father of Defendant Siskind.  W. Siskind died during the course of this bankruptcy case.  The Trustee has recorded a caveat concerning the claims referenced in this adversary proceeding, and reserves the right to join any probate estate, his heirs or beneficiaries at a later date.  Upon information and belief, a probate estate has not been opened to administer the affairs of W. Siskind.

24.    Defendant, Gibson, is a resident of Palm Beach County.  He claims to hold legal title to certain property at issue in this First Amended Complaint.

25.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

26.    This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C), (E), (H) and (O).  The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court.

27.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>**FACTS SUPPORTING THE CLAIMS**</u>

A.    **The Siskind Bankruptcy Case**

28.    On February 11, 2013, Siskind filed a personal bankruptcy petition under Chapter 11 of the Bankruptcy Code.  Notably, Siskind appeared as his own counsel and regularly appears as counsel on behalf of clients in the Bankruptcy Court.

29.    On June 11, 2018, Siskind's personal bankruptcy case was dismissed. Notwithstanding this, the transactions at issue in this adversary proceeding occurred during the pendency of his bankruptcy case.

30.    During the course of Siskind's bankruptcy case, Siskind was required to file timely Monthly Operating Reports and periodic financial reports pursuant to Federal Rule of Bankruptcy Procedure 2015.3.

31.    Specifically, Rule 2015.3(a) provides:

> **(a)** Reporting Requirement. In a chapter 11 case, the trustee or debtor in possession shall file periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest. The reports shall be prepared as prescribed by the appropriate Official Form, and shall be based upon the most recent information reasonably available to the trustee or debtor in possession.

32.    During the course of Siskind's Chapter 11 case, he filed four such reports each of which is annexed hereto as Composite Exhibit A.  The reports fail to disclose his interests in the Debtor, Sympatico, Sovereign, CannaMed[2] or FLACC.

### *Chance & Anthem Transactions*

33.    Siskind testified in this bankruptcy case that Chance & Anthem did not file tax returns because it was "never profitable."  Although the Debtor never generated any revenue from operations, it received millions from investors and creditors that were used to make substantial transfers to or on behalf of Siskind or his family and insiders.  Indeed, the Debtor's bank accounts reflect a pattern of withdrawal transactions for Siskind's personal benefit, including, without limitation, the following transactions which took place between November 7, 2014 and June 13, 2018:

    A.  Cash withdrawals with no backup in an amount exceeding $119,000;

---

[2] CannaMed allegedly did not have a bank account and was "funded" by Chance & Anthem.

B.  Disbursements to Siskind in the amount of $228,626[3]

C.  The use of $59,000 of funds obtained from clients or investors to purchase a Mercedes Benz titled in the name of Siskind Trust;

D.  Payment of $17,000 to his wife Defendant Tanya Siskind;

E.  Payment of $16,200 to his sister Wendy Buckingham; and,

F.  Consumer debit card purchases ($14,707).

### *Sympatico and FLACC Transactions*

34.     Similarly, it appears that during the pendency of his Chapter 11 case, Siskind used FLACC and Sympatico to pay for personal expenses while evading the reporting requirements of his Chapter 11 case. Notably, the bank accounts of FLACC and Sympatico reflect that the majority of cash receipts originated from bank accounts controlled by Siskind and funded with creditor money.

35.     FLACC and Sympatico appear to have been incorporated as non-profit corporations in the State of Florida. Neither appears to have used significant funds in furtherance of an eleemosynary or legitimate business purpose during the period examined but rather appear to reflect a pattern of withdrawals and transactions for Siskind's personal benefit and those of his family members, including the following transactions which took place between January 28, 2013 and July 16, 2018 (FLACC) and February 7, 2013 and August 14, 2018 (Sympatico):

A.  Disbursements to Siskind from FLACC ($597,490) and Sympatico ($2,050).

---

[3] The Trustee's forensic professionals have identified checks written to his DIP Account(s) from the Debtor ($28,955), FLACC ($129,685) and Sympatico ($5,582) which are exclusive of the sums otherwise identified here. It appears that Siskind may have deposited most of the balance of the funds into his DIP Accounts without identifying the DIP account as the payee, the underlying source of the funds or the purpose of the transfers.

B. Cash withdrawals from FLACC in the amount of $36,882 and from Sympatico in the amount of $500.

C. Disbursement from FLACC for personal expenses to the Ocean Reef Club ($53,890). Mar-a-Lago Club ($48,104), Travel and Entertainment ($40,917), Gas and Auto ($10,568), Meals ($11,118), Taxes ($26,006) and transfers to Sympatico ($15,933). FLACC additionally made disbursements to Ozment Merril, Siskind's sometimes bankruptcy counsel, in the amount of $20,000; and,

D. Disbursements for consumer debit card purchases from FLACC ($37,222) and Sympatico ($70,150).

### *Christopher George & Sovereign*

36.    On December 24, 2013, Siskind deposited $2,000,000 obtained from Christopher George in his attorney's IOTA Trust Account.  Siskind proceeded to use the funds obtained from George to make the following payments which appear to have been for his personal benefit and the benefit of his family members:

A. On December 24, 2013, Siskind wired $100,000 to Sovereign Gaming and Entertainment, LLC.  Siskind alleges that this entity belonged to his elderly father, but it appears that Siskind controlled the entity and was the signatory for checks out of this entity.

B. After receipt of this transfer, the balance in Sovereign's account was $100,094.93.  The balance was subsequently used to make payment related toward an Ocean Reef property at 401 Carysfort (formerly owned by Siskind and believed to have been transferred to his parents), W Aviation LLC, Mar-A-Lago Club, Dillard's, First Insurance, Old Guard Club, Big Lots, Brooks Brothers, ER Bradley's Saloon and to purchase cashier's checks in excess of $18,000.

C. On December 30, 2013, Siskind made two transfers each from his IOTA Trust Account in the amount of $70,000 to a private membership club. Siskind is known to have been either a member of the club or a frequent visitor.

D. On January 9, 2014, Siskind wired $1,800,000 to Sovereign.  Siskind claims this was a loan to Sovereign authorized by Christopher George.

a. The proceeds were then again used to pay what appear to be personal expenses (Home Depot, Publix, Staples, Ocean Reef

10

Club, W Aviation, US Airways, Marriott, etc.) and to fund cash withdrawals/purchases of official checks in excess of $130,000.

b. Siskind then transferred $1,100,000 to FLACC. He thereafter $1,000,000 million to purchase an office condominium in the name of OB Real Estate 1732, LLC. Siskind later caused OB Real Estate 1732, LLC to become fully encumbered and did not use the funds to repay either Sovereign or Christopher George. Siskind later transferred ownership of OB Real Estate 1732, LLC from William Siskind to Frank Zokaites, again without any compensation to either Sovereign or Mr. George. Mr. Zokaites later caused the condominium to be sold, and again, no consideration was ever paid to Sovereign or George;

c. Siskind thereafter transferred $215,620 to purchase a home located at 11400 Torchwood Court in Wellington in the name of Beacon Acquisition Group, LLC and David Fiore, and

d. the remaining funds were disbursed over the 30 to 45 days and the disbursements included $50,000 to FLACC, $25,000 to Jeffrey Siskind and $25,000 to Siskind Legal Services.

37.    Although Sovereign was nominally owned by William Siskind, it appears that Jeffrey Siskind dominated the entity and controlled all of its financial and business affairs. Indeed, most of the checks written from Sovereign's accounts during the relevant time period appear to be signed by Jeffrey Siskind. It does not appear that Sovereign had any meaningful legitimate business operations during the course of these transactions other than to serve as a conduit for the transfers identified herein. As with the Debtor, FLACC and Sympatico, Siskind did not disclose his interest in Sovereign despite the fact that he appears to have controlled the entity and directed the transactions described above.

**B.    Chance & Anthem and CannaMed Pharmaceuticals, LLC**

38.    The Debtor purports to have been in the medical cannabis business through its ownership of CannaMed Pharmaceuticals, LLC ("CannaMed"). The Debtor has valued its interest in CannaMed at over $28 million. Yet, on the Petition Date, the Debtor only had $48 in its checking account and approximately $150 worth of office equipment (also dissipated by

11

Siskind prior to the Trustee's appointment).The Debtor paid many of CannaMed's expenses and appears to have made itself liable for a number of "loans" or "investments" acquired by Defendant Siskind purportedly for use in CannaMed.  In a recent court filing, Siskind identified litigation involving CannaMed as "the Debtor's only asset."  *See* Bankruptcy Petition No. 18-11168 (Bankr. D. Md.) at ECF No. 81, ¶7.

39.    The Debtor's bankruptcy schedules reflect that it received in excess of $1.3 million from third parties purportedly to assist it with its cannabis business[4]:  Among these creditors are (a) Frederick Volkwein ($500,000); (b) Richard Neff ($526,000); (c) ABK South Properties, LLC ($250,000); (d) Gen VC, LLC ($100,000); and (e) Richard Bell ($50,000).

40.    Like the Debtor, CannaMed never operated a *bona fide* business.  In truth, it was little more than a shell used by Defendant Siskind to defraud creditors, conceal assets, and facilitate his use of assets placed in his trust by clients and investors.

41.    On October 29, 2019, Siskind attempted to forfeit the Debtor's interest in CannaMed citing to several nonsensical pretexts.  A copy of Siskind's correspondence is annexed hereto as Exhibit B (the "Post-Petition Forfeiture").  Notably, Siskind failed to seek stay relief or authority from the bankruptcy court prior to engaging in his conduct.  Furthermore, the correspondence appears on letterhead titled "Siskind Legal, PLLC" despite Siskind having been disqualified as counsel to CannaMed in this adversary proceeding.

## C.    Christopher George

42.    Prior to May 2013, Defendant Siskind was retained as an attorney by Christopher George ("George").  George, who is incarcerated, retained Defendants Siskind and Siskind Legal

---

[4] The Trustee's investigation into the extent, validity and priority of the investments is ongoing and remain subject to further diligence and reconciliation by Plaintiff. The Trustee reserves all rights with respect to the foregoing claims, including but not limited to the right to seek to subordination or disallowance of any claim that is filed against the bankruptcy estate.

to establish a trust for the benefit of his minor child. The Trust was to be funded with $2 million in cash and George's homestead located at 3485 Lago de Talavera, Lake Worth, Florida, 33467 (the "Talavera House").

43.    On May 8, 2013, Michael Haggerty (George's father-in-law) by and through a power of attorney, quitclaimed the Talavera House to 3485 Lago de Talavera Trust ("Talavera Trust"). The Talavera Trust was settled by Defendants Siskind and Siskind Legal on George's behalf. The quitclaim deed was also prepared by Defendant Siskind.

44.    On December 24, 2013, Defendant Siskind caused George's wife Dianna George to transfer $2 million belonging to George to an attorney trust account denominated "Siskind Trust Account" ending in 7721 maintained by Defendants Siskind and Siskind Legal.

45.    Defendant Siskind, as set forth in greater detail below and in Table 1, used the Debtor and the Related Defendants to abscond with George's $2 million and the Talavera House. George, acting through Dianna George, has filed a claim a proof of claim against the estate in the amount of $2,000,000, alleging among other things, conversion, fraud and breaches of fiduciary duty.

46.    Defendant Siskind deposited the funds obtained from George into his IOTA Trust account and quickly used them for his own personal benefit. Among other things, Siskind purported to structure a loan transaction to Defendant Sovereign in the amount of approximately $1.9 million. The balance of the funds ($70,000) were used to pay a relative's personal expenses.

47.    After transferring the funds to Defendant Sovereign, purportedly for bona fide investment purposes, Siskind proceeded to use those funds for his own personal benefit, including but not limited to (i) transferring $1.15 million to FLACC, later used to purchase an

office condominium (defined below as the "Office Space"); (ii) withdrawing $100,000; (iii) acquiring an existing mortgage on the Talavera House (defined below); (iv) purchasing real estate at 114000 Torchwood Court in Wellington, Florida in the name of Beacon Acquisition & David Fiore; (v) transferring $25,000 to Defendant Siskind Legal; (vi) transferring $25,000 to Defendant Siskind; and (v) dissipating another $373,379 through a series of other transfers, including to third parties (Ocean Reef Club, The Beach Club, Mar-A-Lago Club, Old Guard Club & Going Aire) for the benefit of Siskind and his father, William Siskind  (collectively, the "Sovereign Cash Out").

48.    In sum, Defendant Siskind obtained $2 million from his client, Christopher George, and used that money to fund his family's lifestyle and other investments through a series of artifices used in conjunction with the Debtor to part Mr. George from his money for the benefit of Defendant Siskind and his family.  Mr. George, in turn, seeks to hold the Debtor liable for Siskind's conduct as a Related Defendant or otherwise, as evidence by his proof of claim against the Debtor's bankruptcy estate.  Mr. George, notably, received no apparent benefit from Siskind's use of these funds.


[REMAINDER OF PAGE INTENTIONALLY BLANK]

## TABLE 1 – CHRISTOPHER GEORGE RELATED TRANSFERS



D.    **Carl Stone & Richard Neff**

49.    On or about August 9, 2015, Carl Stone and his associate David Fiore ("Stone") transferred $800,000 to an attorneys' trust account maintained by Defendants Siskind and Siskind Legal for investment purposes in the improvements to real estate located at 3445 Santa Barbara Drive, Wellington, FL  33414 (the "Santa Barbara House").

50.    Defendant Siskind purportedly was in the process of renovating the Santa Barbara House in order to later sell it for a profit.  Defendants Siskind and Siskind Legal Services agreed that they would record proper instruments in order to protect Stone's interest in the Santa Barbara House.

51.    Defendants Siskind and Siskind Legal never recorded a security interest in favor of Stone against the Santa Barbara House.  Instead, Defendant Siskind used his law firm's bank accounts to (i) transfer $35,000 to FLACC and from those proceeds $30,000 to himself; (ii) $750,000 to FLACC of which $725,000 were returned to the Debtor;  (iii) the balance of the proceeds used to purchase the Santa Barbara House (collectively, the "Stone Cash Out").

52.    In sum, Defendant Siskind obtained $800,000 from Carl Stone for investment purposes, and used that money to fund his lifestyle and other investments through a series of artifices used in conjunction with the Debtor to part Mr. Stone from his money for the benefit of Defendant Siskind.  Mr. Stone, in turn, seeks to hold the Debtor liable for Siskind's conduct as evidence by his proof of claim against the Debtor's bankruptcy estate.

53.    Richard Neff also loaned the Debtor money for use in the renovation of the Santa Barbara House.  On October 6, 2015, Neff transferred $500,000 to the Debtor.  Similarly, Defendant Siskind failed to record a mortgage or perfect any other security protecting Neff's investment in the Santa Barbara House.  Instead, Defendant Siskind transferred $59,000 from the

Debtor to purchase a Mercedes Benz for Defendant Tanya Siskind but purchased in the name of the Family Trust (the "Mercedes Transfer").  *See* Table 2, *infra*.

54.     As set forth in greater detail below, Defendant Siskind later refinanced the Santa Barbara House without recognizing the investments of Stone and Neff, and yet again using those proceeds for his own purposes.

55.     In sum, Defendant Siskind obtained $500,000 from Richard Neff for investment purposes, and used that money to fund his lifestyle and other investments through a series of artifices used in conjunction with the Debtor to part Mr. Neff from his money for the benefit of Defendant Siskind.  Mr. Neff, in turn, seeks to hold the Debtor liable for Siskind's conduct as evidence by his proof of claim against the Debtor's bankruptcy estate.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## TABLE 2 – CARL STONE & RICHARD NEFF TRANSFERS



**E.**    **Fredrick Volkwein**

56.    On or about November 17, 2014, Fred Volkwein, either directly or through Sarenil Associates, LLC, deposited $1,157,623 into the Debtor.

57.    In this instance, Defendant Siskind deposited the funds in the Debtor's bank account and quickly proceeded to use the funds for his personal benefit by, among other things transferring (i) $230,000 to FLACC of which $188,000 was transferred to Defendant Siskind and $15,000 was subsequently transferred to Defendant Siskind Legal; (ii) $101,500 to himself through six separate transfers; (iii) $100,000 to his IOTA Trust Account; (iv) $58,000 to "Fenderhooks" in an apparent repayment to Volkwein; (v) $45,000 to George Maler in satisfaction of another debt; (vi) $43,500 to Crystal Title and Equity regarding "Fiore"; and (vii) $26,000 to Defendant Sovereign (collectively, the "Volkwein Cash Out").  *See* Table 3, *infra*.

58.    Siskind used Volkwein's own funds to repay $535,109 to Volkwein in consideration of his prior investment.

59.    On August 7, 2018, the Sarenil Associates, LLC filed a proof of claim against the Debtor's bankruptcy estate in the amount of $669,124 (Claim No. 3).


[REMAINDER OF PAGE INTENTIONALLY BLANK]

## TABLE 3 – FREDERICK VOLKWEIN TRANSFERS



(a) - Two deposits totaling $20,000 from Siskind IOTA in same time period

**F.**    **The Real Estate Transactions**

60.    Defendant Siskind used also the Debtor and its Related Defendants to conceal his use of client and investor assets for his own personal benefit through transactions involving four (4) real properties in Palm Beach County, Florida: (1) The Talavera House; (2) The Santa Barbara House, (3) The Office Space; and (4) The Cross Creek Condominium.

### *3485 Lago de Talavera*

61.    On or about December 2013, George alleges that he instructed his attorney, Defendant Siskind, to use a portion of the $2 million held by Defendant Siskind for the benefit of George to satisfy a mortgage encumbering the Talavera House.  The mortgage was held by Michelle Watson in the principal amount of $200,000.

62.    The Legal Description of the Talavera House is:

> TALAVERA PUD LT 29, according to the Plat thereof, as recorded in Plat Book 105, Page 44, of the Public Records of Palm Beach County, Florida

> Parcel Control Number:        00-42-44-19-09-000-0290

63.    Instead of satisfying the mortgage, however, Defendant Siskind obtained an assignment of the mortgage in favor of Defendant Sovereign.  The assignment was prepared by Defendant Siskind.  W. Siskind, Siskind's deceased father, was the sole member of Defendant Sovereign and Defendant Siskind admits to being its control person.

64.    On November 14, 2014, Defendant Siskind prepared and recorded a *Notice of Lis Pendens* in Palm Beach County (Filing #20558894) purporting to give notice of the foreclosure of a mortgage by Defendant Sovereign.

65.    On February 5, 2014, Defendant Siskind prepared and recorded a so-called "indemnity mortgage" against the Talavera House in the amount of $300,000 in order to secure

legal fees that he or Defendant Siskind Legal could potentially incur at a future date while providing legal services to George or Talavera Trust (the "Indemnity Mortgage").

66.     George alleges that no legitimate fees were incurred by Defendants Siskind or Siskind Legal, and that the indemnity mortgage was orchestrated by Defendant Siskind to part him from his assets.  Upon information and belief, little or no consideration was ever given to George by Defendants Siskind or Siskind Legal in exchange for the Indemnity Mortgage.

67.     On January 8, 2015, Defendant Siskind caused the Talavera Trust, alleged by George to have occurred through fraud and misrepresentation, to transfer the Talavera House to Defendant Sovereign through a deed-in-lieu of foreclosure.  George alleges that at Defendant Siskind's insistence, the Talavera Trust conveyed to Defendant Sovereign all right, title and interest in the Talavera House.   The deed in favor of Defendant Sovereign was prepared and recorded by Defendant Siskind.

68.     On February 25, 2016, Defendant Sovereign gave a mortgage against the Talavera House in favor of Tatarow Family Partners, Ltd. ("Tatarow") in the amount of $300,000.  Upon information and belief, the proceeds of the loan collateralized by the Talavera House were wholly misappropriated by Defendants Siskind for his own personal use and never provided any value to Defendant Sovereign (the "First Talavera Cash Out").

69.     On July 19, 2016, Defendants Siskind and Siskind Legal sold the Indemnity Mortgage to George Maler and Jeri Maler for $100,000 (the "Second Talavera Cash Out").  The proceeds of the First Talavera Cash Out were transferred to Defendants Siskind and Siskind Legal for their own benefit and never provided any value to the Debtor or Defendant Sovereign.

70.     Subsequently, Tatarow initiated a foreclosure proceeding against the Talavera House in a case captioned *Tatarow Family Partners LTD v. Sovereign Gaming & Entertainment,*

*LLC, etc.*, Case No. 50-2016-CA-012892-XXXX-MB, pending in the Seventeenth Judicial Circuit of Florida (the "Talavera Foreclosure Case").

71.    On March 5, 2018. Tatarow assigned its mortgage to Defendant Zokaites Properties, which was substituted as plaintiff in the Talavera Foreclosure Case (the "Tatarow Mortgage Transfer").

72.    The Talavera Foreclosure case remains pending. The Talavera House is presently believed to be occupied by Defendant Siskind's elderly mother Judy Siskind.  Although it was titled in the name of Defendant Sovereign, the title to same has been transferred to Defendant's Siskind former paralegal, Robert Gibson, through a series of quit claim deeds allegedly executed by Defendant Sovereign to the Maler's and finally to Defendant Robert Gibson (the "Gibson Transfer").  It is believed that Mr. Gibson has further pledged a mortgage against the house in favor of the Malers.

73.    The First Talavera Cash Out, Second Talavera Cash Out, Tatarow  Mortgage Transfer and Gibson Transfer shall collectively be referred to as the "**Talavera Transfers**")

### *The Santa Barbara House*

74.    On August 25, 2015, the Debtor purchased the Santa Barbara House from JP Morgan Chase Co. for $1,250,000.  Upon information and belief, the Debtor used at least $1 million in funds from Neff and Stone to fund the purchase of the Santa Barbara House.

75.    The Legal Description of the Santa Barbara House is:

> SOUTHFIELDS PHASE 1 WELLINGTON COUNTRYPLACE LT 2 PUD, according to the Plat thereof, as recorded in Plat Book 39, Pages 19 through 22, of the Public Records of Palm Beach County, Florida
>
> Parcel Control Number:        73-41-44-21-03-000-0020

76.     On November 13, 2015, Defendant Siskind encumbered the Santa Barbara House with a mortgage in favor of New Wave Loans Residential, LLC in the amount of $812,500.  The mortgage instrument was executed by Defendant Siskind as managing member of the Debtor. The Mortgage purported to secure a balloon loan in the amount of $812,500 plus accumulated interest which matured in December 2018 (the "First Santa Barbara Cash Out").

77.     The funds obtained from the First Santa Barbara Cash Out were deposited in the Debtor and quickly thereafter used by Siskind to fund his own personal expenses, including (i) five payments to Siskind for $107,500; (ii) a transfer of $61,719.63 to K Title Company LLC fbo Jeffrey Siskind; (iii) two payments of $145,950 to George Maler; (iv) two payments totaling $117,000 for aircraft related expenses; (v) thirteen cash withdrawals totaling $82,000; (vi) a payment of $62,506 to Defendant Zokaites Properties for a "loan payoff;" (vii) two transfers totaling $60,000 to Siskind's IOTA trust accounts; and (viii) four transfers totaling $30,000 to Defendant Sovereign.

78.     On March 23, 2016, Defendant Siskind further encumbered the Santa Barbara House with a mortgage in favor of ABK South Properties, LLC in the amount of $500,000.  The mortgage instrument was executed by Defendant Siskind as managing member of the Debtor. The Mortgage purported to secure a balloon loan in the amount of $812,500 plus accumulated interest which matured on December 2018.  Upon information and belief, the proceeds of this loan incurred by the Debtor were transferred to Defendant Siskind for his own personal use and were never of any value to the Debtor or Related Defendant(s) (the "Second Santa Barbara Cash Out").

79.     The proceeds of the Second Santa Barbara Cash Out, to date identified as $100,000 deposited in the Debtor's bank account, were again quickly used by Siskind to fund his

own personal expenses including (i) six transfers totaling $48,625 to FLACC; (ii) a transfer of $10,000 to Defendant Siskind Legal; and (iii) $30,231 to fund a payment to Long Badger & Sheller purportedly in consideration of CannaMed's rent expense.

80.     On November 8, 2016, New Wave Lenders initiated a foreclosure proceeding against the Santa Barbara House. *New Wave Lenders 2015 B LP v. Chance & Anthem, LLC,* Case No. 50-2016-CA-012543.

81.     On January 23, 2017, Defendant Wellington acquired the first position mortgage in favor of New Wave Lenders for $898,231 and subsequently substituted itself as plaintiff in the foreclosure case.

82.     On June 12, 2017, the Santa Barbara House was sold at a foreclosure sale to Defendant Wellington for $1,000,100 ("Santa Barbara Foreclosure Transfer").

83.     The Santa Barbara House, in summary, was used by Defendant Siskind to (1) conceal the use of $1 million he wrongfully obtained from Stone and Neff; (2) obtain over $800,000 in additional cash from the equity in the house mortgaged by New Wave Lenders and ABK South Properties, LLC; and (3) transfer the value of the Santa Barbara House from the Debtor free and clear of all liens, claims and encumbrances to Defendant Wellington in the Santa Barbara Foreclosure Transfer.

84.     Notably, the Santa Barbara House is adjacent to Siskind's personal residence located within the municipality of Wellington, Florida.  It is believed that Defendant Siskind recorded an easement on the Santa Barbara House in favor of his personal residence in order to add value to the home he owns with Tanya Siskind (the "Siskind Parcel Transfer").

85.     Hereinafter, the First Santa Barbara Cash Out, the Second Santa Barbara Cash Out, the Santa Barbara Foreclosure Transfer and the Siskind Parcel Transfer shall be collectively

referred to as the **"Santa Barbara Transfers"**).

### *The Trump Office Suite / OB Real Estate Holdings 1732, LLC*

86.    Defendant, OB Holdings, was the fee simple owner of the suite of offices where Defendants Siskind, Siskind Legal and Sovereign operated.  The suite consisted of the entire fifth (top) floor of the Trump Office Center on 525 S. Flagler Drive, West Palm Beach Florida (the "Office Suite").

87.    The Legal Description of the Office Suite is:

> Condominium Units CCU3A2, CCU3B2 and CCU3C2, Trump Plaza of the Palm Beaches, a condominium, according to the Declaration of Condominium thereof, recorded in Official Records Book 4800, Page 457, with all exhibits and amendments thereof, Public Records of Palm Beach County, Florida, and any and all amendments thereto, together with an undivided interest in the common elements appurtenant thereto a set forth in said declaration, together with an undivided 16.93% interest in Unit No. CCU3 as set forth in the Declaration of Agreement for Commercial Unit

> Parking Facilities as recorded in Official Records Book 19010, Page 70, Public Records of Palm Beach County, Florida

> Parcel Control Number: 74-43-43-22-25-003-0012

88.    On February 27, 2014, Defendant OB Holdings acquired the Office Suite through a foreclosure proceeding captioned *Optimum Bank v. TP5, LLC, et al*, Case No. 50-2010-CA-026014 (17th Judicial Circuit).  In this original proceeding, Optimum Bank foreclosed on a first position mortgage recorded against the Office Suite, which at the time was owned by TP5, LLC, a limited liability company.  Defendant Siskind was the sole managing member and registered agent for TP5, LLC.  He was also a guarantor of the indebtedness to Optimum Bank.  Ultimately, through the foreclosure case, Optimum Bank took title to the Office Suite through Defendant OB Holdings.  In his personal bankruptcy case, Defendant Siskind claimed that TP5, LLC was his Related Defendant.

89.    On April 30, 2014, Defendant Siskind acquired the shares of Defendant OB Holdings from Optimum Bank and placed them in the name of W. Siskind.  Through Defendant OB Holdings, Defendant Siskind acquired fee simple ownership of the Office Suite (the "Office Suite Repurchase").

90.    Defendant Siskind used the $1 million from Christopher George to fund the Office Suite Repurchase.  Defendant Siskind accomplished the Office Suite Repurchase by purporting to "lend" $1 million allegedly held in trust by Defendants Siskind and Siskind Legal to Defendant Sovereign.  Although Defendant Sovereign funded the purchase of Defendant OB Real Estate, it received no consideration or reasonably equivalent value in connection with the transaction (the "First Office Suite Cash Out").

91.    After acquiring the Office Suite, Defendant Siskind proceeded to encumber and cash out of the Office Suite much as he did with the Talavera House and the Santa Barbara House.

92.    On September 3, 2014, Defendant Siskind encumbered the Office Suite with a mortgage in favor of George Maler and others (the "Maler Lenders") in the amount of $200,000. The mortgage instrument was executed by W. Siskind (deceased) as managing member of Defendant OB Real Estate.  Upon information and belief, the proceeds of this loan incurred by the Defendant OB Real Estate were transferred to Defendants Siskind through his IOTA Trust Account for his own personal use and were never of any value to the Debtor or Defendant OB Real Estate (the "Second Office Suite Cash Out").

93.    On November 28, 2014, Defendant Siskind further encumbered the Office Suite by increasing the indebtedness to the Maler Lenders by $150,000 to $350,000.  The mortgage instrument was executed by W. Siskind as managing member of Defendant OB Real Estate.

Upon information and belief, the proceeds of this loan incurred by Defendant OB Real Estate were transferred to Defendants FLACC, Siskind and W. Siskind for their own personal use and were never of any value to the Debtor or Defendant OB Real Estate (the "Third Office Suite Cash Out").

94.     On March 28, 2015, Defendant Siskind further encumbered the Office Suite by increasing the indebtedness to the Maler Lenders by $150,000 to $500,000.  The mortgage instrument was executed by W. Siskind as managing member of Defendant OB Real Estate. Upon information and belief, the proceeds of this loan incurred by Defendant OB Real Estate were transferred to Defendants FLACC and Sovereign for the personal use of Siskind and W. Siskind and were never of any value to the Debtor or Defendant OB Real Estate (the "Fourth Office Suite Cash Out").

95.     On September 20, 2015, Defendant Siskind further encumbered the Office Suite by increasing the indebtedness to the Maler Lenders by $250,000 to $750,000.  The mortgage instrument was executed by W. Siskind as managing member of Defendant OB Real Estate. Upon information and belief, the proceeds of this loan incurred by Defendant OB Real Estate were transferred to Defendants Siskind and W. Siskind for their own personal use and were never of any value to the Debtor or Defendant OB Real Estate (the "Fifth Office Suite Cash Out").

96.     On November 28, 2016, W. Siskind resigned as the sole managing member of OB real Estate and was replaced with Zokaites.

97.     On January 31, 2018, Zokaites caused Defendant OB Real Estate to transfer its interest in the Office Suite in exchange for $1.2 Million (the "Office Suite Sale").

98.     The Office Suite, in summary, was used by Defendant Siskind to (1) conceal the

28

use of $1 million he wrongfully obtained from his client Christopher George through Defendant Sovereign; (2) encumber the property in the face amount of $750,000 from the Office Suite in mortgages provided by the Maler Lenders; (3) transfer the interests in Defendant OB Real Estate to Zokaites; and (4) consummate the Office Suite Sale in order to liquidate the remaining equity in the Office Suite without providing any value to Defendant Sovereign in exchange for its original $1 million contribution for the Office Space Repurchase.

99.     Hereinafter, the Office Suite Repurchase, First Office Suite Cash Out, Second Office Suite Cash Out, Third Office Suite Cash Out, Fourth Office Suite Cash Out, Fifth Office Suite Cash Out, Fifth Office Suit Cash Out and the Office Suite Sale shall collectively be referred to as the "Office Suite Transfers").

### The Cross Creek Condominium

100.     On December 2, 2015, Defendant Siskind caused the Debtor to obtain an Assignment of Mortgage from George A. Maler recorded against real property located in Cross Creek Condominium at 1500 N Congress Avenue, Unit B-6, West Palm Beach, Florida 33401 (the "Cross Creek Condominium").

101.     The Legal Description of the Cross Creek Condominium is:

CROSS CREEK COND UNIT B-6 BLDG 9, a condominium according to the Declaration thereof recorded in Official Record Book 3262, Page 1812, of the Public Records of Palm Beach County, Florida.

Parcel Control Number: 74-43-43-18-05-000-2006

102.     On August 1, 2017, the Debtor, through Defendant Siskind, filed a Notice of Lis Pendens against the CrossCreek Condominium and also initiated a foreclosure proceeding against its owners in the matter *Imitiaz Mohammed and Zoreeda Mohammad*, et al. Case No. 20-

2017-CA-008682XXXXMB, which case was pending the Palm Beach County Circuit Court.

103.    On October 12, 2017, the Debtor executed and Assignment of Mortgage from the Debtor to Zokaites Properties concerning the mortgage it owned on the Cross Creek Condominium (the "Cross Creek Transfer"). Upon information and belief, the Debtor did not receive any value for assignment of its mortgage to Defendant Zokaites Properties.

**G.    The Transfers at Issue**

104.    During the Four Years prior to the Petition Date, **Defendant Siskind** using the Debtor or the **Related Defendants**, engaged in the following transactions which reflect transfers of real estate and cash either to him individually or nominally to third parties but for his benefit:

a.    The Sovereign Cash Out;

b.    The Stone Cash Out

c.    The Volkwein Cash Out

d.    The Stone Cash Out;

e.    The Mercedes Transfer;

f.    The Talavera Transfers;

g.    The Santa Barbara Transfers

h.    The Office Suite Transfers

i.    The Cross Creek Transfer;

j.    The Post Petition Forfeiture; and

k.    Additionally, Siskind withdrew over $119,000 from the Debtor's bank accounts in cash for his own personal benefit in the manner set forth at Exhibit "C," and referred to herein as the "Siskind Cash Transfers"

105.    During the Four Years prior to the Petition Date, Defendant **Family Trust**

engaged in the Mercedes Transfer which reflects the transfer of property of the Debtor: Additionally, Defendant Tanya Siskind was paid $17,000 by the Debtor for which the Debtor received no value (the "Tanya Siskind Cash Transfer") in the manner set forth at Exhibit "D." Defendant Tanya Siksind was also a beneficiary of the Santa Barbara Parcel Transfer.

106. During the Four Years prior to the Petition Date, **Defendant Wellington** engaged in the Santa Barbara Transfer which reflects a transfer of real estate for its benefit:

107. During the Four Years prior to the Petition Date, **Defendant Zokaites Properties** engaged in the Talavera Transfers and Cross Creek Transfers, each of which reflects transfers of real estate and cash either to him individually or nominally to third parties but for its benefit:

     a. The Talavera Transfer;

     b. The Cross Creek Transfer.

108. During the Four Years prior to the Petition Date, **Defendant Sympatico** benefitted from the scheme by receiving (i) $11,354.50 from the Debtor; (ii) $12,540 from Siskind Legal; (iii) $15.933 from FLACC; and (iv) $11,498.05 from Siskind's DIP Account (collectively, the "Sympatico Transfers"). Additionally, Siskind deposited over $25,000 in cash into Sympatico's bank accounts.

109. Additionally, during the Four Years prior to the Petition Date, **Defendant Gibson** engaged in the Talavera Transfer which reflects a transfer of the bare legal title the Talavera House to himself individually.

**H.**    **Conditions Precedent**

110. All conditions precedent to the institution of this action have been performed, have occurred, have been waived or have otherwise been excused.

## I.    The Causes of Action

### COUNTS 1-6
### ACTION FOR SUBSTANTIVE CONSOLIDATION OF DEFENDANTS CANNAMED, SISKIND LEGAL, SOVEREIGN, FLAC, SYMPATICO, AND WELLINGTON WITH THE DEBTOR'S BANKRUPTCY ESTATE

The Trustee sues Defendants CannaMed, Sovereign, Siskind Legal, Wellington, FLACC and Sympatico and alleges:

111.    The Trustee repeats and realleges paragraphs 1-110 of his Complaint as if fully set forth herein, with respect to each applicable Defendant.

112.    This is an action to substantively consolidate Defendants CannaMed, Siskind Legal, Sovereign and Wellington, as set forth in the table below, into the Debtor's bankruptcy proceedings such that each respective Defendant will be deemed a jointly administered bankruptcy debtor pursuant to Section 105 of the Bankruptcy Code

| COUNT | RELATED DEFENDANT | RELATED TRANSACTION |
|:-----:|:-----------------:|:-------------------:|
| 1 | CannaMed | Liabilities of the Debtor |
| 2 | Sovereign | Talavera Transfers<br>Office Suite Transfers |
| 3 | Siskind Legal | Sovereign Cash Out<br>Stone Cash Out<br>Volkwein Cash Out<br>Talavera Transfers<br>Santa Barbara Transfers<br>Office Suite Transfers |
| 4 | Wellington | Santa Barbara Transfers |
| 5 | FLACC | Sovereign Cash Out, Stone Cash Out,<br>Volkwein Cash Out |
| 6 | Sympatico | Sympatico Transfers |

113.    Given the facts and circumstances set forth above, equity and applicable law require that each respective Defendant be substantively consolidated as a jointly administered bankruptcy debtor.

114.    Based upon the foregoing, under applicable law the entry of an order and/or judgment substantively consolidating the Defendant at issue in each respective Count herein with the Debtor is both necessary and appropriate.

115.    In the event the relief requested in this Count is granted, the Trustee will, by separate motion to be filed in the main case to be served on all creditors and parties in interest, seek entry of an order substantively consolidating Defendant at issue in each respective Count herein with the estate of the Debtor.

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, respectfully requests entry of an order and/or judgment against Defendants CannaMed, Sovereign, Siskind Legal, Wellington, FLACC and Sympatico: (i) declaring that each Defendant be substantively consolidated with the Debtor to be jointly administered with the Debtor's bankruptcy proceeding; and (ii) for any other relief the Court deems appropriate.

**COUNTS 7 – 22**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTIONS 548(a))(1)(A), 550(a)(1) and 550(a)(2) OF THE BANKRUPTCY CODE**

The Trustee sues Defendants and alleges:

116.    The Trustee restates and realleges paragraphs 1 through 110, as if fully set forth herein.

117.    Pursuant to 11 U.S.C. § 548(a)(1)(A) and/or 11 U.S.C. § 544, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under § 548 of the Bankruptcy Code) before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(a) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

118.    Further, pursuant to 11 U.S.C. § 550(a), in a fraudulent transfer action commenced under §§ 544 and 548 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

119.    The transfers identified below that occurred within two (2) years of the Petition Date to Defendant constitute transfers of an interest in property and/or obligation of the Debtor or the Related Defendant(s) identified in each count set forth in the table above as set forth herein and are therefore avoidable pursuant to 11 U.S.C. § 548(a)(1)(A) as actual intent fraudulent transfers.

| Count | Debtor/ Related Defendant Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 7 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 8 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 9 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 10 | Chance | Family Trust | Mercedes Transfer |
| 11 | Sovereign | Siskind | First Talavera Cash Out |
| 12 | Sovereign | Siskind | Second Talavera Cash Out |
| 13 | Sovereign | Zokaites Properties | Encumbrance of Tatarow Mortgage transferred to |

|  |  |  | Defendant Zokaites Properties |
|---|---|---|---|
| 14 | Sovereign | Gibson | Gibson Transfer |
| 15 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |
| 16 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 17 | Chance | Wellington | Santa Barbara Foreclosure Transfer |
| 18 | Sovereign | OB Real Estate | Office Suite Sale |
| 19 | Chance | Zokaites Properties | Cross Creek Transfer |
| 20 | Chance | Siskind | Siskind Cash Transfers |
| 21 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 22 | Chance Siskind Legal | Sympatico | Sympatico Transfers |

120.    Further, the Debtor and its Related Defendants as identified in the table herein did not receive reasonably equivalent value for each transfer identified in the table herein, to the extent that the Debtor or its Related Defendant identified therein (i) were insolvent at the time of each transfer to each defendant as set forth above or became insolvent as a result thereof; (ii) were engaged or were about to engage in a business or transaction for which the remaining assets of the Debtor or the Related Defendant identified in each count set forth in the table herein were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that the Debtor or the Related Defendant identified in each  count set forth in the table herein would incur debts beyond their ability to pay as they came due.

121.    Each defendant identified in each count set forth in the table herein was the initial transferee or the entity for whose benefit the transfer at issue in each count herein was made, and as a result, the Trustee is entitled to avoid each transfer from each Defendant as set forth in each Count herein pursuant to 11 U.S.C. § 548(a)(1)(A) as actual intent fraudulent transfers and to

recover all such property for the benefit of the estate or, should the Court so order, the value thereof pursuant to 11 U.S.C. § 550(a)(1).

122.    Alternatively, the Defendant(s) identified in each Count set forth in the table above was(were) the immediate or subsequent transferee(s) of the initial transferee for whose benefit the transfer at issue in each count herein was made.  As a result, the Trustee is entitled to recover the transfer at issue in each count herein as referenced above, from each Defendant, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550(a)(2).

123.    Therefore, in accordance with 11 U.S.C. § 550(a), the recovery of property for the benefit of the bankruptcy estate of the Debtor is authorized to the extent that a transfer at issue in each count herein occurred within two (2) years of the Petition Date are avoided pursuant to 11 U.S.C. § 548(a)(1)(A).

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, demands judgment against each Defendant identified in each respective Count above and (a) determining that each respective transfer that occurred within two (2) years of the Petition Date was  fraudulent and avoidable pursuant to 11 U.S.C. § 548(a)(1)(A); (b) and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of each such  transfer and post-judgment interest and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNTS 23-38
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 548(a)(1)(B) OF THE BANKRUPTCY CODE

The Trustee sues Defendants and alleges:

124.    The Trustee restates and realleges paragraphs 1 through 110, as if fully set forth herein.

125.    Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and/or 544, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under § 548 of the Bankruptcy Code) before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

>    (B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
>    (ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
>    (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>
>    (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

126.    Further, pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under §§ 544 and 548 of the Bankruptcy Code, the Trustee may recover, for the benefit of the estate, the property transferred or obligation incurred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, *i.e.*, any and all subsequent transferees.

127.    The transfers identified in the table herein that occurred within two (2) years of

37

the Petition Date constitute transfers of an interest in property and/or obligations of Debtor or the Related Defendant(s) identified in each Count set forth in the table herein, which are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B) as constructively fraudulent transfers. \

| Count | Debtor/ Related Defendant Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 23 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 24 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 25 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 26 | Chance | Family Trust | Mercedes Transfer |
| 27 | Sovereign | Siskind | First Talavera Cash Out |
| 28 | Sovereign | Siskind | Second Talavera Cash Out |
| 29 | Sovereign | Zokaites Properties | Encumbrance of Tatarow Mortgage transferred to Defendant Zokaites Properties |
| 30 | Sovereign | Gibson | Gibson Transfer |
| 31 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |
| 32 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 33 | Chance | Wellington | Santa Barbara Foreclosure Transfer |
| 34 | Sovereign | OB Real Estate | Office Suite Sale |
| 35 | Chance | Zokaites Properties | Cross Creek Transfer |
| 36 | Chance | Siskind | Siskind Cash Transfers |
| 37 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 38 | Chance Siskind Legal | Sympatico | Sympatico Transfers |

128.    The Debtor or the Related Defendant identified in each Count set forth in the table herein did not receive reasonably equivalent value for each transfer identified in the table to the extent that the Debtor or the Related Defendant identified in each Count set forth in the table (i)

were insolvent at the time of each transfer at issue in each Count herein was or became insolvent as a result thereof; (ii) were engaged or were about to engage in a business or transaction for which the remaining assets of the Debtor or the Related Defendant identified in each Count set forth in the table were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that the Debtor or the Related Defendant identified in each Count set forth in the table would incur debts beyond their ability to pay as they came due.

129.    Each Defendant identified in each Count set forth in the table herein was the initial transferee or the entity for whose benefit each transfer at issue was made, and as a result, the Trustee is entitled to avoid and recover each transfer at issue herein pursuant to 11 U.S.C. § 548(a)(1)(B) as constructively fraudulent transfers.

130.    Alternatively, each defendant identified in each count set forth in the table herein was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer at issue herein was made, and as a result, the Trustee is entitled to recover each transfer at issue herein as referenced above from each Defendant identified herein pursuant to 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550(a)(2).

131.    Therefore, in accordance with 11 U.S.C. § 550(a), the recovery of property for the benefit of the bankruptcy estate of the Debtor is authorized to the extent that each transfer at issue in each Count herein occurred within two (2) years of the Petition Date are avoided pursuant to 11 U.S.C. § 548(a)(1)(B).

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, demands judgment against each Defendant identified in each respective Count above and (a) determining that each respective transfer that occurred within

two (2) years of the Petition Date was fraudulent and avoidable under 11 U.S.C. § 548(a)(1)(B); (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor or the estate of any of its Related Defendants, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNTS 39-55
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
## AND SECTION 726.105(1)(A) OF THE FLORIDA STATUTES

The Trustee sues Defendants Siskind, W. Siskind, Zokaites, Wellington and Zokaites Properties and alleges:

132.    The Trustee re-states and re-alleges paragraphs 1 through 110, as if fully set forth herein.

133.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title or that is not allowable only under § 502(e) of this title.

134.    § 726.105(1)(a), Florida Statutes, provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

40

(a) With actual intent to hinder, delay, or defraud any creditor
of the debtor.

135.   Further, pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Chapter 726 of the Florida Statutes, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

136.   The transfers identified in the table herein to each respective Defendant were transfers made with the actual intent to hinder, delay, and/or defraud creditors pursuant to § 726.105(1)(a), Florida Statutes.

| Count | Debtor/ Related Defendant Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 39 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 40 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 41 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 42 | Chance | Family Trust Tanya Siskind | Mercedes Transfer |
| 43 | Sovereign | Siskind | First Talavera Cash Out |
| 44 | Sovereign | Siskind | Second Talavera Cash Out |
| 45 | Sovereign | Zokaites Properties | Encumbrance of Tatarow Mortgage transferred to Defendant Zokaites Properties |
| 46 | Sovereign | Gibson | Gibson Transfer |
| 47 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |
| 48 | Chance | Siskind, Siskind Legal, | Second Santa Barbara |

|     |                          | FLACC                                                    | Cash Out                           |
|-----|--------------------------|----------------------------------------------------------|------------------------------------|
| 49  | Chance                   | Wellington                                               | Santa Barbara Foreclosure Transfer |
| 50  | Sovereign                | Siskind, Siskind Legal, FLACC, Sovereign, OB Real Estate | Office Suite Transfers             |
| 51  | Sovereign                | OB Real Estate                                           | Office Suite Sale                  |
| 52  | Chance                   | Zokaites Properties                                      | Cross Creek Transfer               |
| 53  | Chance                   | Siskind                                                  | Siskind Cash Transfers             |
| 54  | Chance                   | Tanya Siskind                                            | Tanya Siskind Cash Transfers       |
| 55  | Chance Siskind Legal     | Sympatico                                                | Sympatico Transfers                |

137.    At the time of each respective transfer identified in the table herein, the Debtor or the Related Defendant identified in each Count set forth in the table were, and still are, indebted in an amount greater than each transfer.

138.    At the time of each respective transfer identified in the table herein, the Debtor or the Related Defendant identified in each Count set forth in the table had incurred debts beyond their ability to pay as they became due.

139.    As set forth above, the Debtor or the Related Defendant identified in each Count set forth in the table were otherwise insolvent at the time(s) of each respective transfer identified in the table herein.

140.    As a result of each respective transfer identified in the table herein, the Trustee has been damaged pursuant to 11 U.S.C. §544(b) for the total value of each respective transfer identified in the table herein.

141.    Each respective Defendant was the initial transferee or the entity for whose benefit each respective transfer as identified in the table above was made, and as a result, the Trustee is entitled to avoid and recover each respective transfer from each respective Defendant

42

as identified in the table herein under 11 U.S.C. § 544 of the Bankruptcy Code and § 726.105(1)(a) of the Florida Statutes as actual intent fraudulent transfers.

142.    Alternatively, each respective Defendant was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer identified in the table herein was made, and as a result, the Trustee is entitled to recover each respective transfer, as referenced above, from each respective Defendant pursuant to § 726.105(1)(a) of the Florida Statutes and 11 U.S.C. §550(a)(2).

143.    Therefore, in accordance with 11 U.S.C. § 550(a), the recovery of property for the benefit of the Debtor's bankruptcy estate is authorized to the extent that the respective transfers are avoided pursuant to § 726.105(1)(a) of the Florida Statutes.

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, respectfully requests entry of judgment against each Defendant identified in each respective Count above and (a) determining that each respective transfer that occurred within two (2) years of the Petition Date was fraudulent and avoidable pursuant to § 726.105(1)(a), Florida Statutes; (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

43

**COUNTS 56--72**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE**
**AND SECTION 726.105(1)(B) OF THE FLORIDA STATUTES**

The Trustee sues Defendants and alleges:

144.    The Trustee restates and realleges paragraphs 1 through 110 as if fully set forth herein.

145.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title or that is not allowable only under § 502(e) of this title.

146.    § 726.105(1)(b), Florida Statutes, provides:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(b) Without receiving reasonably equivalent in value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

147.    Further, pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Chapter 726 of the Florida Statutes, the Trustee may recover, for the benefit of the estate, the property transferred, or, if the Court so orders, the value of such property, from – (1) the

initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee, i.e., any and all subsequent transferees.

148.    The transfers identified in the table herein to each respective Defendant were transfers made without the Debtor or the Related Defendant(s) identified in each Count set forth in the table herein receiving reasonably equivalent value in exchange for each respective transfer pursuant to § 726.105(1)(b), Florida Statutes.

| Count | Debtor/ Related Defendant Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 56 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 57 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 58 | Chance | Siskind, Siskind Legal, Sovereign, FLACC | Volkwein Cash Out |
| 59 | Chance | Family Trust Tanya Siskind | Mercedes Transfer |
| 60 | Sovereign | Siskind | First Talavera Cash Out |
| 61 | Sovereign | Siskind | Second Talavera Cash Out |
| 62 | Sovereign | Zokaites Properties | Encumbrance of Tatarow Mortgage transferred to Defendant Zokaites Properties |
| 63 | Sovereign | Gibson | Gibson Transfer |
| 64 | Chance | Siskind, Sovereign, | First Santa Barbara Cash Out |
| 65 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 66 | Chance | Wellington | Santa Barbara Foreclosure Transfer |
| 67 | Sovereign | Siskind, Siskind Legal, FLACC, Sovereign | Office Suite Transfers |

| | | OB Real Estate | |
|---|---|---|---|
| 68 | Sovereign | OB Real Estate | Office Suite Sale |
| 69 | Chance | Zokaites Properties | Cross Creek Transfer |
| 70 | Chance | Siskind | Siskind Cash Transfers |
| 71 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 72 | Chance Siskind Legal | Sympatico | Sympatico Transfers |

149.    At the time(s) of each respective transfer, the Debtor or the Related Defendant identified in each Count set forth in the table herein were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtor or its respective Related Defendant were unreasonably small in relation to the business or transactions in which the Debtor or its respective Related Defendant were engaged.

150.    At the time of each respective transfer identified in the table herein, the Debtor or the Related Defendant identified in each Count set forth in the table had incurred debts beyond their ability to pay as they became due.

151.    As set forth above, the Debtor or the Related Defendant(s) identified in each Count set forth in the table were otherwise insolvent at the time(s) of each respective transfer identified in the table herein.

152.    As a result of each respective transfer identified in the table herein, the Trustee has been damaged pursuant to 11 U.S.C. § 544(b) for the total value of each respective transfer identified in the table herein.

153.    Each respective Defendant was the initial transferee or the entity for whose benefit each respective transfer as identified in the table above was made, and as a result, the Trustee is entitled to avoid and recover each respective transfer from each respective Defendant as identified in the table herein under 11 U.S.C. § 544 of the Bankruptcy Code and §

726.105(1)(a) of the Florida Statutes as actual intent fraudulent transfers.

154.    Alternatively, each respective Defendant was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer identified in the table herein was made, and as a result, the Trustee is entitled to recover each respective transfer as referenced above from each respective Defendant pursuant to § 726.105(1)(b) of the Florida Statutes and 11 U.S.C. § 550(a)(2).

155.    Therefore, in accordance with 11 U.S.C. § 550(a), the recovery of property for the benefit of the estate is authorized to the extent that the respective transfers are avoided pursuant to 11 U.S.C. § 548(a)(1)(B).

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, respectfully requests entry of judgment against each Defendant identified in each respective Count above and (a) determining that each respective transfer that occurred within two (2) years of the Petition Date was fraudulent and avoidable under § 726.105(1)(B), Florida Statutes; (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

## COUNTS 73--89
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
## AND SECTION 726.106(1) OF THE FLORIDA STATUTES

The Trustee sues Defendants and alleges:

156.    The Trustee restates and realleges paragraphs 1 through 110 as if fully set forth herein.

157.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property or any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of Title 11 or that is not allowable only under § 502(e) of this title.

158.    § 726.106(1), Florida Statutes, provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

159.    The transfers identified in the table herein to each respective Defendant were transfers made without the Debtor or the Related Defendant(s) identified in each Count set forth in the table herein receiving reasonably equivalent value in exchange for each respective transfer pursuant to § 726.106(1), Florida Statutes.

| Count | Debtor/ Related Defendant Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 73 | Sovereign | Siskind, FLACC Siskind Legal | Sovereign Cash Out |
| 74 | Chance | Siskind, Siskind Legal FLACC | Stone Cash Out |
| 75 | Chance | Siskind, Siskind Legal, | Volkwein Cash Out |

48

|  |  | Sovereign, FLACC |  |
|---|---|---|---|
| 76 | Chance | Family Trust | Mercedes Transfer |
| 77 | Sovereign | Siskind | First Talavera Cash Out |
| 78 | Sovereign | Siskind | Second Talavera Cash Out |
| 79 | Sovereign | Zokaites Properties | Encumbrance of Tatarow Mortgage transferred to Defendant Zokaites Properties |
| 80 | Sovereign | Gibson | Gibson Transfer |
| 81 | Chance | Siskind | First Santa Barbara Cash Out |
| 82 | Chance | Siskind, Siskind Legal, FLACC | Second Santa Barbara Cash Out |
| 83 | Chance | Wellington Zokaites | Santa Barbara Foreclosure Transfer |
| 84 | Sovereign | Siskind, Siskind Legal, FLACC, OB Real Estate | Office Suite Transfers |
| 85 | Sovereign | OB Real Estate | Office Suite Sale |
| 86 | Chance | Zokaites Properties | Cross Creek Transfer |
| 87 | Chance | Siskind | Siskind Cash Transfers |
| 88 | Chance | Tanya Siskind | Tanya Siskind Cash Transfers |
| 89 | Chance Siskind Legal | Sympatico | Sympatico Transfers |

160.    At the time(s) of each respective transfer, the Debtor or the Related Defendant(s) identified in each Count set forth in the table herein were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtor or its respective Related Defendant(s) were unreasonably small in relation to the business or transactions in which the Debtor or its respective Related Defendant(s) were engaged.

161.    At the time of each respective transfer identified in the table herein, the Debtor or the Related Defendant(s) identified in each Count set forth in the table had incurred debts beyond their ability to pay as they became due.

162.    As set forth above, the Debtor or the Related Defendant(s) identified in each Count set forth in the table were otherwise insolvent at the time(s) of each respective transfer identified in the table herein.

163.    As a result of each respective transfer identified in the table herein, the Trustee has been damaged pursuant to 11 U.S.C. § 544(b) for the total value of each respective transfer identified in the table herein.

164.    Each respective Defendant was the initial transferee or the entity for whose benefit each respective transfer as identified in the table above was made, and as a result, the Trustee is entitled to avoid and recover each respective transfer from each respective Defendant as identified in the table herein pursuant to 11 U.S.C. § 544 of the Bankruptcy Code and § 726.106(1) of the Florida Statutes as actual intent fraudulent transfers.

165.    Alternatively, each respective Defendant was the immediate or subsequent transferee of the initial transferee for whose benefit each transfer identified in the table herein was made, and as a result, the Trustee is entitled to recover these each respective transfer as referenced above from each respective Defendant pursuant to § 726.106(1) of the Florida Statutes and 11 U.S.C. § 550(a)(2).

166.    Therefore, in accordance with 11 U.S.C. §§544 and 548, the recovery of property for the benefit of the estate is authorized to the extent that the respective transfers are avoided under 11 U.S.C. § 548.

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, respectfully requests entry of judgment against each Defendant identified in each respective Count above and (a) determining that each respective transfer that occurred within two (2) years of the Petition Date was fraudulent and avoidable under §

50

726.106(1), Florida Statutes; (b) avoiding each respective transfer and entering judgment in favor of Plaintiff against each respective Defendant in such amounts as are determined at trial, or the value of thereof, and as otherwise detailed in the amounts set forth herein, plus pre-judgment interest from the date of the transfers and post-judgment interest, and costs of suit, all pursuant to 11 U.S.C. § 550; (c) disallowing any claim that each respective Defendant may have against the Debtor, including without limitation, pursuant to and as provided in 11 U.S.C. § 502(d); and (d) for such other and further relief as the Court deems just and proper.

**COUNTS 90-92**
**ACTION FOR CONSTRUCTIVE TRUST**

The Trustee sues Defendants and alleges:

167.    The Trustee restates and realleges paragraphs 1 through 110 as if fully set forth herein.

168.    The Trustee is the legal title holder to all property of the Debtor and its Related Defendants.

169.    The following transfers were fraudulently effected by the Debtor or its Related Defendant(s) or alternatively, without fraud but retained by the transferees set forth below under inequitable circumstances.

| Count | Debtor/ Related Defendant Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 90 | Sovereign | Zokaites Properties | Encumbrance of Tatarow Mortgage transferred to Defendant Zokaites Properties |
| 91 | Sovereign | Gibson | Gibson Transfer |
| 92 | Chance | Wellington | Santa Barbara Foreclosure Transfer |

170.     As the beneficiary of the transfers set forth herein, each Defendant knew or should have known that transfers at issue in each Count set forth herein were improper.

171.     The recipients of each transfer set forth herein have been unjustly enriched to the detriment of the Debtor and its alter egos, and as a result, a constructive trust should be established against the transfers at issue and all proceeds, products and replacements of each of the subject transfers.

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, respectfully requests this Court to enter a judgment against e each respective Defendant, for imposition of a constructive trust lien to be established against the transfers identified herein and all proceeds, products or replacements of the transfers set forth herein, for damages and all such other relief as this court deems just and appropriate.

**COUNT 93-95**
**ACTION FOR EQUITABLE LIEN**

The Trustee sues Defendants and alleges:

172.     The Trustee restates and realleges paragraphs 1 through 110 as if fully set forth herein.

173.     The Trustee is the legal title holder to all property of the Debtor and its Related Defendants.

174.     The following transfers were fraudulently effected by the Debtor or its Related Defendants  or egregiously, or alternatively, without fraud but retained by the transferees set forth below under inequitable circumstances.

| Count | Debtor/ Related Defendant Transferor | Transferee / Defendant | Property Transferred |
|---|---|---|---|
| 93 | Sovereign | Zokaites Properties | Encumbrance of |

| | | | Tatarow Mortgage transferred to Defendant Zokaites Properties |
|---|---|---|---|
| 94 | Sovereign | Gibson | Gibson Transfer |
| 95 | Chance | Wellington | Santa Barbara Foreclosure Transfer |

175.     As the beneficiary of the transfers set forth herein, each Defendant knew or should have known that transfers at issue in each Count set forth herein were improper.

176.     The recipients of each transfer set forth herein have been unjustly enriched to the detriment of the Debtor and its alter egos, and as a result, a constructive trust should be established against the transfers at issue and all proceeds, products and replacements of each of the subject transfers.

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, respectfully requests this Court to enter a judgment against each respective Defendant, for imposition of an equitable lien to be established against all realty and personalty directly traceable from the transfers at issue herein and all proceeds of the their products, proceeds or replacements, for damages and all such other relief as this Court deems just and appropriate.

## COUNT 96
## AVOIDANCE OF POST-PETITION TRANSFERS UNDER 11 U.S.C. §549

The Trustee sues Defendants Siskind and CannaMed and alleges:

177.     The allegations contained in paragraphs 1 through 110 are restated in their entirety.

178.     The Post-Petition Forfeiture was executed on October 29, 2010, well after the Petition Date and, therefore, is ineffective and void as an improper and unauthorized post-

petition transfer of an interest of the Debtor in property of the estate under 11 U.S.C. §541 of the Bankruptcy Code.

179.    11 U.S.C. §549 provides in pertinent part, as follows:

(a)    Except as provided in subsection (b) or (c) of this section, the Trustee may avoid a transfer of property of the estate -

(1)    that occurs after the commencement of the case; and
(2)    (A)  that is authorized only under §303(t) or 542(c) of this title; or
(B)   that is not authorized under this title or by the Court.

180.    For the reasons stated above, the Trustee may avoid and recover post-petition transactions pursuant to 11 U.S.C. §549 and §550, such that any claims, rights or interests asserted by Siskind of CannaMEd in the Debtor's interest in CannaMed pursuant to the Post-Petition Forfeiture are ineffective and avoidable based upon the statutory prohibition on post-petition transfers.

181.    Accordingly, the Trustee seeks the entry of an order avoiding any improper post-petition transfer arising from the Post-Petition Forfeiture, preserving the avoided transfer or the value thereof for the benefit of the estate.

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, respectfully requests this Court to enter a judgment against each respective Defendant  (i) determining and declaring that the Post-Petition Forfeiture is ineffective and/or avoidable as an unauthorized post-petition transfer; (ii) avoiding the Post-Petition Forfeiture, thus preserving the avoided transfer or the value thereof for the benefit of the bankruptcy estate pursuant to under 11 U.S.C. §549, §550 and §551 of the Bankruptcy Code; (iii) awarding to the Trustee the amount or value of Post-Petition Forfeiture, plus pre-judgment and post-judgment interest and costs ;and (iv) for such other further relief as the Court deems

necessary and appropriate.

## COUNT 97
## ACTION SEEKING A PERMANENT
## INJUNCTION AGAINST ALL DEFENDANTS

The Trustee sues all Defendants and alleges:

182.    The Trustee realleges Counts 1-96 above.

183.    This is an action requesting the entry of a permanent injunction against Defendants and others pursuant to Fed. R. Civ. P. 65 as incorporated by Fed. R. Bankr. P. 7065.

184.    Given the nature of the transfers and transactions at issue in this Complaint and the facts and circumstances surrounding such transfers as alleged above, it is necessary and appropriate for a permanent injunction to be issued against the Defendants, and all others in custody, possession or control of funds or other property that is the subject of the transfers and transactions at issue in this complaint, in order to fully protect the interests of the estate in regard to recovering such transfers.

**WHEREFORE**, the Plaintiff, Robert C. Furr, as Chapter 7 Trustee of the Debtor, Chance & Anthem, LLC, demands the entry of an order and/or judgment against Defendants (i) imposing a permanent injunction against each Defendant, and all others in custody, possession or control of funds or other property that are the subject of the transfers at issue in this Complaint; and (ii) for any other relief the Court deems appropriate.

## G.    Reservation of Rights

185.    The Trustee reserves his right to amend this Complaint to assert any additional claims for relief against the Defendants as may be warranted under the circumstances and as otherwise allowed by law.

**Respectfully submitted this <u>1st</u> day of November, 2019**.

GENOVESE JOBLOVE & BATTISTA, P.A.
Counsel to the Chapter 7 Trustee
100 S.E. 2nd Street, Suite 4400
Miami, FL  33131
Tel.: (305) 349-2300
Fax.: (305) 349-2310

By:____/s/ Jesus M. Suarez_____
   John H. Genovese, Esq.
   Florida Bar No. 280852
   jgenovese@gjb-law.com
   Jesus M. Suarez, Esq.
   Fla. Bar No. 60086
   jsuarez@gjb-law.com
   Barry P. Gruher, Esq.
   Florida Bar No. 960993
   bgruher@gjb-law.com

## CERTIFICATE OF SERVICE

  **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via CM/ECF notification upon all interested parties registered to receive electronic notification on this matter and/or via U.S. Mail as indicated on the Service List below on this 1st day of November, 2019.

     By: /s/  *Jesus M. Suarez*_____
      Jesus M. Suarez, Esq.

## SERVICE LIST

### *Notice was served via CM/ECF upon:*

Nancy B Colman on behalf of Defendant Robert Gibson
ncolman@baritzcolman.com, mizzo@baritzcolman.com

Julie Feigeles on behalf of Defendant OB Real Estate Holdings 1732, LLC
jf@womenatlawfl.com, way@womenatlawfl.com

Julie Feigeles on behalf of Defendant Wellington 3445, LP
jf@womenatlawfl.com, way@womenatlawfl.com

Julie Feigeles on behalf of Defendant Zokaites Properties, LP
jf@womenatlawfl.com, way@womenatlawfl.com

Barry P Gruher on behalf of Plaintiff Robert C Furr
bgruher@gjb-law.com, vlambdin@gjb-law.com;gjbecf@gjb-law.com;cesser@gjb-law.com;gjbecf@ecf.courtdrive.com;chopkins@gjb-law.com

Samantha T Haimo on behalf of Defendant OB Real Estate Holdings 1732, LLC
sth@womenatlawfl.com, way@swlawyers.law

Samantha T Haimo on behalf of Defendant Wellington 3445, LP
sth@womenatlawfl.com, way@swlawyers.law

Samantha T Haimo on behalf of Defendant Zokaites Properties, LP
sth@womenatlawfl.com, way@swlawyers.law

Jesus M Suarez on behalf of Plaintiff Robert C Furr
jsuarez@gjb-law.com, gjbecf@gjb-law.com;chopkins@gjb-law.com;jzamora@gjb-law.com;ecastellanos@gjb-law.com;gjbecf@ecf.courtdrive.com


**Notice will be served via U.S. Mail upon:**


Jeffrey M. Siskind
3465 Santa Barbara Drive
Wellington, Florida 33414

CannaMed Pharmaceuticals, LLC
c/o Siskind Legal
3465 Santa Barbara Dr
Wellington, FL 33414

Florida's Association of Community Banks and Credit Unions, Incorporated
c/o Jeffrey M Siskind, President
3465 Santa Barbara Dr
Wellington, FL 33414

Second Siskind Family Trust
c/o Jeffrey Siskind, Trustee
3465 Santa Barbara Dr
Wellington, FL 33414

Tanya Siskind
3465 Santa Barbara Dr
Wellington, FL 33414

Siskind Legal Services
c/o Jeffrey M Siskind, Managing Member
3465 Santa Barbara Dr
Wellington, FL 33414

Sovereign Gaming and Entertainment, LLC
c/o Jeffrey M Siskind
3465 Santa Barbara Dr
Wellington, FL 33414

Sovereign Gaming and Entertainment, LLC
c/o Secretary of State
500 S. Bronough Street
Tallahassee, Florida 32399

Sovereign Gaming and Entertainment, LLC
c/o Secretary of State
2661 Executive Center Circle
Tallahassee, Florida 32301

Sympatico Equine Rescue, Inc.
c/o Jeffrey M Siskind, President
3465 Santa Barbara Dr
Wellington, FL 33414

# EXHIBIT "A"
*(Periodic Reports)*

Official Form 26 (12/03)

# United States Bankruptcy Court
_SOUTHERN_ District of _FLORIDA_

In re _JEFFREY MARC SISKIND_        Case No. _13-13096_

Debtor              Chapter 11

## PERIODIC REPORT REGARDING VALUE, OPERATIONS AND PROFITABILITY OF ENTITIES IN WHICH THE ESTATE OF [NAME OF DEBTOR] HOLDS A SUBSTANTIAL OR CONTROLLING INTEREST

This is the report as of _3-14-13_ on the value, operations and profitability of those entities in which the estate holds a substantial or controlling interest, as required by Bankruptcy Rule 2015.3. The estate of [Name of Debtor] holds a substantial or controlling interest in the following entities:

| Name of Entity | Interest of the Estate | Tab # |
|---|---|---|
| _TPS_ | _OWNED 100%_ | _1_ |
| _SISKIND LEGAL SVCS_ | _OWNED 100%_ | _2_ |

This periodic report (the "Periodic Report") contains separate reports ("Entity Reports") on the value, operations, and profitability of each entity listed above.

Each Entity Report shall consist of three exhibits. Exhibit A contains a valuation estimate for the entity as of a date not more than two years prior to the date of this report. It also contains a description of the valuation method used. Exhibit B contains a balance sheet, a statement of income (loss), a statement of cash flows, and a statement of changes in shareholders' or partners' equity (deficit) for the period covered by the Entity Report, along with summarized footnotes. Exhibit C contains a description of the entity's business operations.

## THIS REPORT MUST BE SIGNED BY A REPRESENTATIVE OF THE TRUSTEE OR DEBTOR IN POSSESSION.

The undersigned, having reviewed the above listing of entities in which the estate of [Debtor] holds a substantial or controlling interest, and being familiar with the Debtor's financial affairs, verifies under the penalty of perjury that the listing is complete, accurate and truthful to the best of his/her knowledge.

Official Form 26 (12/08) -- Cont.                                            2

Date: ___3-14-13___

                                            _____
                                            Signature of Authorized Individual

                                            ___JEFFREY M. SISKIND___
                                            Name of Authorized Individual

                                            ___DEBTOR___
                                            Title of Authorized Individual

[If the Debtor is an individual or in a joint case]

                                            _____
                                            Signature(s) of Debtor(s) (Individual/Joint)

                                            _____
                                            Signature of Debtor

                                            _____
                                            Signature of Joint Debtor

B26 (Official Form 26) (12/08)    Cont.                                  3

## Exhibit A
## Valuation Estimate for [Name of Entity]

[Provide a statement of the entity's value and the value of the estate's interest in the entity, including a description of the basis for the valuation, the date of the valuation and the valuation method used.  This valuation must be no more than two years old.  Indicate the source of this information.]

① Entity has no value; formerly held title to office condominium, but secured liens exceed value.

② Entity has no value; owns Robinson R-22 (YR 1983) but secured lien exceeds value.

B26 (Official Form 26) (12/08) – Cont.

Exhibit B
Financial Statements for [Insert Name of Entity]

① None Kept; formerly a pass-through entity

② None Kept; formerly a pass-through entity.

B26 (Official Form 26) (12/08) - Cont. 5

### Exhibit B-1
### Balance Sheet for [Name of Entity]
### As of [date]

[Provide a balance sheet dated as of the end of the most recent six-month period of the current fiscal year and as of the end of the preceding fiscal year. Indicate the source of this information.]

① NONE KEPT FOR THIS ENTITY.

② NONE KEPT FOR THIS ENTITY.

B26 (Official Form 26) (12/08) — Cont.                                    6

## Exhibit B-2
## Statement of Income (Loss) for [Name of Entity]
Period ending [date]

[Provide a statement of income (loss) for the following periods:

    (i) For the initial report:
        a. the period between the end of the preceding fiscal year and the end of the
            most recent six-month period of the current fiscal year; and
        b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]

① None - reported on DEBTORS' 1040 Sched C.

② None - reported on DEBTOR's 1040 Sched. C.

B26 (Official Form 26) (12/08) — Cont.

7

## Exhibit B-3
### Statement of Cash Flows for [Name of Entity]
For the period ending [date]

[Provide a statement of changes in cash flows for the following periods:

      (i) For the initial report:
           a. the period between the end of the preceding fiscal year and the end of the
              most recent six-month period of the current fiscal year; and
           b. the prior fiscal year.
      (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]

① None – Reported on Debtor's Sched. C.

② None – Reported on Debtor's Sched C.

B26 (Official Form 26) (12/08) – Cont.                                          8

## Exhibit B-4
### Statement of Changes in Shareholders'/Partners' Equity (Deficit) for [Name of Entity]
### period ending [date]

[Provide a statement of changes in shareholders'/partners equity (deficit) for the following periods:

    (i) For the initial report:
        a. the period between the end of the preceding fiscal year and the end of the most recent six-month period of the current fiscal year; and
        b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]

① Not Applicable.

② Not Applicable.

B26 (Official Form 26) (12/08)   Cont.                                      9

Exhibit C

**Description of Operations for [name of entity]**

[Describe the nature and extent of the estate's interest in the entity.

Describe the business conducted and intended to be conducted by the entity, focusing on the entity's dominant business segment(s).  Indicate the source of this information.]

① 100% owned ; NONE.

② 100% owned ; NONE.

B26 (Official Form 26) (12/08)

# United States Bankruptcy Court

_Southern_ District of _Florida_

In re _JEFFREY M. SISKIND,_        Case No. _13-13096_

        Debtor                 Chapter 11

## PERIODIC REPORT REGARDING VALUE, OPERATIONS AND PROFITABILITY OF ENTITIES IN WHICH THE ESTATE OF [NAME OF DEBTOR] HOLDS A SUBSTANTIAL OR CONTROLLING INTEREST

This is the report as of _12/17/13_ on the value, operations and profitability of those entities in which the estate holds a substantial or controlling interest, as required by Bankruptcy Rule 2015.3. The estate of [Name of Debtor] holds a substantial or controlling interest in the following entities:

| Name of Entity | Interest of the Estate | Tab # |
|---|---|---|
| TPS, LLC | 100% | 1 |
| SISKIND LEGAL SVCS | 100% | 2 |
| | | |

This periodic report (the "Periodic Report") contains separate reports ("Entity Reports") on the value, operations, and profitability of each entity listed above.

Each Entity Report shall consist of three exhibits. Exhibit A contains a valuation estimate for the entity as of a date not more than two years prior to the date of this report. It also contains a description of the valuation method used. Exhibit B contains a balance sheet, a statement of income (loss), a statement of cash flows, and a statement of changes in shareholders' or partners' equity (deficit) for the period covered by the Entity Report, along with summarized footnotes. Exhibit C contains a description of the entity's business operations.

## THIS REPORT MUST BE SIGNED BY A REPRESENTATIVE OF THE TRUSTEE OR DEBTOR IN POSSESSION.

The undersigned, having reviewed the above listing of entities in which the estate of [Debtor] holds a substantial or controlling interest, and being familiar with the Debtor's financial affairs, verifies under the penalty of perjury that the listing is complete, accurate and truthful to the best of his/her knowledge.

B26 (Official Form 26) (12/08) – Cont.                                                    2

Date: 12/7/13

_____
Signature of Authorized Individual

JEFFREY M. SISKIND

Name of Authorized Individual

DEBTOR-IN-POSSESSION

Title of Authorized Individual

[If the Debtor is an individual or in a joint case]

Signature(s) of Debtor(s) (Individual/Joint)

_____
Signature of Debtor

_____
Signature of Joint Debtor

B26 (Official Form 26) (12/08) – Cont.                                           3

**Exhibit A**
**Valuation Estimate for [Name of Entity]**

[Provide a statement of the entity's value and the value of the estate's interest in the entity, including a description of the basis for the valuation, the date of the valuation and the valuation method used.  This valuation must be no more than two years old.  Indicate the source of this information.]

TAB 1        VALUE                    ESTATE's INTEREST VALUE

                 —0—                              —0—

        BASIS — DEBT OWED EXCEEDS ASSET VALUE


TAB 2

                 —0—                              —0—

        BASIS — ASSET VALUE IS EXCEEDED BY DEBT
                SECURED TO ASSET ; Robinson R-22 Helicopter

    METHOD — ESTIMATE BY PRINCIPAL
    SOURCE — DEBTOR-IN-POSSESSION

B26 (Official Form 26) (12/08) – Cont.                                      4

### Exhibit B
### Financial Statements for [Insert Name of Entity]

_TAB 1_    NO INDEPENDENT RECORDS KEPT; INCOME
AND EXPENSES REPORTED ON DEBTOR-IN-POSSESSION'S
1040 Sched.C.

_TAB 2_    NO INDEPENDENT RECORDS KEPT; INCOME AND
EXPENSES REPORTED ON DEBTOR-IN-POSSESSION'S
1040 Sched.C.

B26 (Official Form 26) (12/08) – Cont.                                5

**Exhibit B-1**
**Balance Sheet for [Name of Entity]**
As of [date] _Sept. 30, 2013_

[Provide a balance sheet dated as of the end of the most recent six-month period of the current fiscal year and as of the end of the preceding fiscal year. Indicate the source of this information.]

$\underline{TAB\ 1}$

|  | $\underline{ASSETS}$ (1) | $\underline{LIABILITIES}$ (2) |
|---|---|---|
| Accounts Receivable | 33,800. |  |
| Accounts Payable |  | 1,545,000. |
| Real Property | 500,000. |  |

$\underline{TAB\ 2}$

|  | ASSETS | LIABILITIES |
|---|---|---|
| Accounts Receivable |  | — 0 — |
| Accounts Payable |  | — 0 — |
| Personal Property | 10,000 |  |

$\underline{NOTES}$

(1)  ASSETS ARE ACCOUNTS RECEIVABLE PLUS LIQUIDATION VALUE OF PERSONAL PROPERTY BASED UPON DEBTOR IN POSSESSION ESTIMATES AND ESTIMATED REAL PROPERTY VALUES

(2)  VALUE IS ESTIMATED JUDGMENT AMOUNTS OUTSTANDING WITHOUT OFFSETTING ASSET VALUES

SOURCE - DEBTOR-IN-POSSESSION MONTHLY OPERATING RPT.

B26 (Official Form 26) (12/08) – Cont.                                    6

### Exhibit B-2
### Statement of Income (Loss) for [Name of Entity]
Period ending [date] _SEPT. 30, 2013_

[Provide a statement of income (loss) for the following periods:

    (i) For the initial report:
        a. the period between the end of the preceding fiscal year and the end of the
          most recent six-month period of the current fiscal year; and
        b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]  _DEBTOR-IN-POSSESSION_

_TAB 1_

    _INCOME FROM OPERATIONS_
    _EXPENSES OF OPERATIONS_
    _PD. TO OWNER ACCT._
    _P/LOSS_

    _SOURCE = TPS, LLC DEBTOR-IN-POSSESSION REPORTS_
        _(CASH BASIS)_

_TAB 2_  _NO INCOME (LOSS) FOR PERIOD_

B26 (Official Form 26) (12/08) – Cont.                                                    7

## Exhibit B-3
## Statement of Cash Flows for [Name of Entity]

For the period ending [date]  _SEPTEMBER 30, 2013_

[Provide a statement of changes in cash flows for the following periods:

    (i) For the initial report:
        a. the period between the end of the preceding fiscal year and the end of the
           most recent six-month period of the current fiscal year; and
        b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]  _DEBTOR - IN - POSSESSION_

_TAB 1_

| | |
|---|---|
| BEGINNING CASH ON HAND | — 0 — |
| INFLOWS | 1,796.00 |
| OUTFLOWS | − 1,586.00 |
| ENDING CASH ON HAND | 210.00 |

_TAB 2_

| | |
|---|---|
| BEGINNING CASH ON HAND | — 0 — |
| INFLOWS | — 0 — |
| OUTFLOWS | — 0 — |
| ENDING CASH ON HAND | — 0 — |

B26 (Official Form 26) (12/08) – Cont.                                                    8

**Exhibit B-4**
**Statement of Changes in Shareholders'/Partners' Equity (Deficit) for [Name of Entity]**
period ending [date]    *SEPTEMBER 30, 2013*

[Provide a statement of changes in shareholders'/partners equity (deficit) for the following periods:

      (i) For the initial report:
               a. the period between the end of the preceding fiscal year and the end of the
                   most recent six-month period of the current fiscal year; and
               b. the prior fiscal year.
      (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]    — *DEBTOR IN POSSESSION*

*TAB 1*    — *NONE*

*TAB 2*    — *NONE*

B26 (Official Form 26) (12/08) – Cont.                                        9

## Exhibit C
## Description of Operations for [name of entity]

[Describe the nature and extent of the estate's interest in the entity.

Describe the business conducted and intended to be conducted by the entity, focusing on the entity's dominant business segment(s).  Indicate the source of this information.]

_TAB 1_   100% OWNED BY ESTATE

RETAL PROPERTY MANAGEMENT; TRUMP PLAZA OFFICE CONDO.

_TAB 2_   100% OWNED BY ESTATE

NO BUSINESS CONDUCTED; ALL BUSINESS FORMERLY CONDUCTED IS NOW CONDUCTED BY DEBTOR-IN-POSSESSION

SOURCE = DEBTOR-IN-POSSESSION

B26 (Official Form 26) (12/08)

# United States Bankruptcy Court

_Southern_ District of _Florida_

In re _Jeffrey M. Siskind_            Case No. _13-13096_

Debtor                          Chapter 11

## PERIODIC REPORT REGARDING VALUE, OPERATIONS AND PROFITABILITY OF ENTITIES IN WHICH THE ESTATE OF [NAME OF DEBTOR] HOLDS A SUBSTANTIAL OR CONTROLLING INTEREST

This is the report as of _9/15/2014_ on the value, operations and profitability of those entities in which the estate holds a substantial or controlling interest, as required by Bankruptcy Rule 2015.3. The estate of [Name of Debtor] holds a substantial or controlling interest in the following entities:

| Name of Entity | Interest of the Estate | Tab # |
|---|---|---|
| Consolidated Eng. Co Inc. | 80% | 1 |
| Oasis Mortgage, LLC | 100% | 2 |
| Aviatat, LLC | 100% | 3 |

This periodic report (the "Periodic Report") contains separate reports ("Entity Reports") on the value, operations, and profitability of each entity listed above.

Each Entity Report shall consist of three exhibits. Exhibit A contains a valuation estimate for the entity as of a date not more than two years prior to the date of this report. It also contains a description of the valuation method used. Exhibit B contains a balance sheet, a statement of income (loss), a statement of cash flows, and a statement of changes in shareholders' or partners' equity (deficit) for the period covered by the Entity Report, along with summarized footnotes. Exhibit C contains a description of the entity's business operations.

## THIS REPORT MUST BE SIGNED BY A REPRESENTATIVE OF THE TRUSTEE OR DEBTOR IN POSSESSION.

The undersigned, having reviewed the above listing of entities in which the estate of [Debtor] holds a substantial or controlling interest, and being familiar with the Debtor's financial affairs, verifies under the penalty of perjury that the listing is complete, accurate and truthful to the best of his/her knowledge.

B26 (Official Form 26) (12/08) — Cont.

Date: _9/15/2014_

_____
Signature of Authorized Individual

_JEFFREY M SISKIND_
Name of Authorized Individual

_DEBTOR-IN-POSSESSION_
Title of Authorized Individual

[If the Debtor is an individual or in a joint case]

_____
Signature(s) of Debtor(s) (Individual/Joint)

_____
Signature of Debtor

_____
Signature of Joint Debtor

B26 (Official Form 26) (12/08) -- Cont.

3

**Exhibit A**
**Valuation Estimate for [Name of Entity]**

[Provide a statement of the entity's value and the value of the estate's interest in the entity, including a description of the basis for the valuation, the date of the valuation and the valuation method used. This valuation must be no more than two years old. Indicate the source of this information.]

TAB 1                    VALUE                    ESTATE INTEREST

$ 800,000                $ 640,000

VALUATION BASIS IS MOST RECENT SALE OF 5% FOR $40,000

TAB 2

$ 50,000                $ 50,000

VALUATION BASIS IS DEBTOR-IN-POSSESSION'S ASSESSMENT OF VALUE AS A FUNCTION OF EXPECTED PROFITABILITY

TAB 3        $ 20,000        $ 20,000

VALUATION BASIS IS DEBTOR'S ASSESSMENT OF VALUE OF INOPERATIVE AIRCRAFT

B26 (Official Form 26) (12/08) — Cont.

4

**Exhibit B**
**Financial Statements for [Insert Name of Entity]**

TAB 1      NO RECORDS AVAILABLE ON OPERATIONS

TAB 2      NO RECORDS AVAILABLE, EXCEPT THAT
           ENTITY IS INCURRING MONTHLY ADVERTISING
           COSTS OF $1,368.50

TAB 3      NO RECORDS MAINTAINED ON OPERATIONS

B26 (Official Form 26) (12/08) – Cont.

5

**Exhibit B-1**
**Balance Sheet for [Name of Entity]**
As of [date]

[Provide a balance sheet dated as of the end of the most recent six-month period of the current fiscal year and as of the end of the preceding fiscal year. Indicate the source of this information.]

TAB 1        ASSETS              LIABILITIES
             --○--               --○--

TAB 2        ..○--               --○--

TAB 3      *29,000*              --○--

SOURCE: DEBTOR-IN-POSSESSION

* ESTIMATED VALUE OF AIRCRAFT

B26 (Official Form 26) (12/08) – Cont.

6

## Exhibit B-2
### Statement of Income (Loss) for [Name of Entity]

Period ending [date]  *SEPTEMBER 15, 2014*

[Provide a statement of income (loss) for the following periods:

    (i) For the initial report:
          a. the period between the end of the preceding fiscal year and the end of the
            most recent six-month period of the current fiscal year; and
          b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]  *DEBTOR-IN-POSSESSION*

*TAB 1*          *NO INCOME OR OPERATING EXPENSES*
*FOR CURRENT PERIOD OR PRIOR YEAR*

*TAB 2*          *$1,368.50/mo. ADVERTISING, NO INCOME*

*TAB 3*          *NO INCOME OR OPERATING EXPENSES OTHER*
*THAN LLC RENEWAL FEE OF APPROX $100*

B26 (Official Form 26) (12/08) -- Cont.

7

**Exhibit B-3**
**Statement of Cash Flows for [Name of Entity]**
For the period ending [date]  SEPTEMBER 15, 2014

[Provide a statement of changes in cash flows for the following periods:

    (i) For the initial report:
          a. the period between the end of the preceding fiscal year and the end of the
             most recent six-month period of the current fiscal year; and
          b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]  DEBTOR-IN-POSSESSION

TAB 1  NO TRANSACTIONS

TAB 2  $1,368.50/MONTH OUTFLOW

TAB 3  NO TRANSACTIONS EXCEPT LLC RENEWAL

B26 (Official Form 26) (12/08) – Cont.

8

## Exhibit B-4
**Statement of Changes in Shareholders'/Partners' Equity (Deficit) for [Name of Entity]**
period ending [date] *SEPTEMBER 15, 2014*

[Provide a statement of changes in shareholders'/partners equity (deficit) for the following periods:

    (i) For the initial report:
        a. the period between the end of the preceding fiscal year and the end of the most recent six-month period of the current fiscal year; and
        b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.] *DEBTOR – IN – POSSESSION*

*TAB 1*     *DEBTOR-IN-POSSESSION ACQUIRED 100% OF SHARES AND SIMULTANEOUSLY SOLD 15% OF SHARES, THEN SOLD ADDITIONAL 5% OF SHARES (AUGUST 2014) AND EXPECTS TO SELL ADDITIONAL 5% OF SHARES IN SEPTEMBER, 2014*

*TAB 2*     *NONE; DEBTOR HOLDS 100% EQUITY*

*TAB 3*     *NONE; DEBTOR HOLDS 100% EQUITY*

*NOTE RE PRIOR REPORTS:*

    *TPS, LLC LAPSED; ASSETS & LIABILITIES MERGED TO DEBTOR*

    *SICKIND LEGAL SERVICES, LLC LAPSED; ASSETS MERGED TO DEBTOR*

B26 (Official Form 26) (12/08) – Cont. 9

### Exhibit C
### Description of Operations for [name of entity]

[Describe the nature and extent of the estate's interest in the entity.

Describe the business conducted and intended to be conducted by the entity, focusing on the entity's dominant business segment(s). Indicate the source of this information.]

TAB 1 — 80% OWNED BY ESTATE
COMMERCIAL CONSTRUCTION COMPANY FOUNDED 1911

TAB 2 — 100% OWNED BY ESTATE
LAW OFFICE SUPPORT SERVICES & MORTGAGE LOAN PROGRAM

SOURCE: DEBTOR-IN-POSSESSION

B26 (Official Form 26) (12/08)

United States Bankruptcy Court
Southern District of Florida

In re    Jeffrey Marc Siskind                    Case No. 13-13096

           Debtor                                Chapter 11

PERIODIC REPORT REGARDING VALUE, OPERATIONS AND PROFITABILITY OF
ENTITIES IN WHICH THE ESTATE OF JEFFREY MARC SISKIND
HOLDS A SUBSTANTIAL OR CONTROLLING INTEREST

This is the report as of June 1, 2015 on the value, operations and profitability of those entities in which the estate holds a substantial or controlling interest, as required by Bankruptcy Rule 2015.3. The estate of Jeffrey Marc Siskind holds a substantial or controlling interest in the following entities:

| Name of Entity | Interest of the Estate | Tab # |
|---|---|---|
| Consolidated Engineering Co., Inc. | 80% | 1 |
| JurisMortgage, LLC | 100% | 2 |
| Aviatat, LLC | 100% | 3 |

This periodic report (the "Periodic Report") contains separate reports ("Entity Reports") on the value, operations, and profitability of each entity listed above.

Each Entity Report shall consist of three exhibits. Exhibit A contains a valuation estimate for the entity as of a date not more than two years prior to the date of this report. It also contains a description of the valuation method used. Exhibit B contains a balance sheet, a statement of income (loss), a statement of cash flows, and a statement of changes in shareholders' or partners' equity (deficit) for the period covered by the Entity Report, along with summarized footnotes. Exhibit C contains a description of the entity's business operations.

THIS REPORT MUST BE SIGNED BY A REPRESENTATIVE OF THE TRUSTEE OR
DEBTOR IN POSSESSION.

The undersigned, having reviewed the above listing of entities in which the estate of [Debtor] holds a substantial or controlling interest, and being familiar with the Debtor's financial affairs, verifies under the penalty of perjury that the listing is complete, accurate and truthful to the best of his/her knowledge.

B26 (Official Form 26) (12/08) - Cont.                                    2

Date:   June 2, 2105

_____
Signature of Authorized Individual

_____Jeffrey Marc Siskind_____
Name of Authorized Individual

_____Debtor in Possession_____
Title of Authorized Individual


[If the Debtor is an individual or in a joint case]

Signature(s) of Debtor(s) (Individual/Joint)

_____
Signature of Debtor


_____
Signature of Joint Debtor

B26 (Official Form 26) (12/08) - Cont.                                                              3

Exhibit A
<u>Valuation Estimate</u>
Consolidated Engineering Co., Inc., JurisMortgage, LLC and Aviatat, LLC


[Provide a statement of the entity's value and the value of the estate's interest in the entity, including a description of the basis for the valuation, the date of the valuation and the valuation method used. This valuation must be no more than two years old. Indicate the source of this information.]

| <u>Tab 1</u> | Value | Estate Interest |
|---|---|---|
| | $800,000 | $640,000 |

Valuation basis is most recent sale of 5% for $40,000


| <u>Tab 2</u> | Value | Estate Interest |
|---|---|---|
| | $50,000 | $50,000 |

Valuation basis is Debtor in Possession's assessment of value


| <u>Tab 3</u> | Value | Estate Interest |
|---|---|---|
| | $20,000 | $20,000 |

 Valuation basis is Debtor in Possession's assessment of value

Source:  Debtor in Possession

B26 (Official Form 26) (12/08) - Cont.                                                                 4

Exhibit B

<u>Financial Statements</u>

Consolidated Engineering Co., Inc., JurisMortgage, LLC and Aviatat, LLC

<u>Tab 1</u>          No income or expenses during this reporting period

<u>Tab 2</u>          No separate records are maintained; income and expenses appear on Debtor's monthly reports

<u>Tab 3</u>          No income or expenses during this reporting period

B26 (Official Form 26) (12/08) - Cont.                                                   5

Exhibit B-1
Balance Sheet
Consolidated Engineering Co., Inc., JurisMortgage, LLC and Aviatat, LLC
As of June 2, 2015

[Provide a balance sheet dated as of the end of the most recent six-month period of the current fiscal year and as of the end of the preceding fiscal year. Indicate the source of this information.]

| Tab 1 | Assets | Liabilities |
|---|---|---|
| Tab 2 | - 0 - | - 0 - |
| Tab 3 | $50,000 | - 0 – |

Source: Debtor in Possession

B26 (Official Form 26) (12/08) - Cont.                                              6

Exhibit B-2
<u>Statement of Income (Loss)</u>
Consolidated Engineering Co., Inc., JurisMortgage, LLC and Aviatat, LLC
Period ending June 1, 2015

[Provide a statement of income (loss) for the following periods:

    (i) For the initial report:
        a. the period between the end of the preceding fiscal year and the end of the most
          recent six-month period of the current fiscal year; and
        b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]

      <u>Tab 1</u>        No income or operating expenses during current period

      <u>Tab 2</u>        Advertising costs appear on Debtor's monthly reports

      <u>Tab 3</u>        No income or operating expenses during current period

Source:  Debtor in Possession

B26 (Official Form 26) (12/08) - Cont.                                    7

Exhibit B-3
Statement of Cash Flows
Consolidated Engineering Co., Inc., JurisMortgage, LLC and Aviatat, LLC
For the period ending June 1, 2015


[Provide a statement of changes in cash flows for the following periods:

    (i) For the initial report:
          a. the period between the end of the preceding fiscal year and the end of the most
            recent six-month period of the current fiscal year; and
          b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]

       Tab 1         No income or operating expenses during current period

       Tab 2         Advertising costs appear on Debtor's monthly reports

       Tab 3         No income or operating expenses during current period

Source:  Debtor in Possession

B26 (Official Form 26) (12/08) - Cont.                                          8

Exhibit B-4
<u>Statement of Changes in Shareholders'/Partners' Equity (Deficit)</u>
Consolidated Engineering Co., Inc., JurisMortgage, LLC and Aviatat, LLC
Period ending June 1, 2015


[Provide a statement of changes in shareholders'/partners equity (deficit) for the following periods:

    (i) For the initial report:
        a. the period between the end of the preceding fiscal year and the end of the most recent six-month period of the current fiscal year; and
        b. the prior fiscal year.
    (ii) For subsequent reports, since the closing date of the last report.

Indicate the source of this information.]

               <u>Tab 1</u>           No changes during this period

               <u>Tab 2</u>           No changes during this period

               <u>Tab 3</u>           No changes during this period

Source: Debtor in Possession

B26 (Official Form 26) (12/08) - Cont.                                              9

Exhibit C
Description of Operations
Consolidated Engineering Co., Inc., JurisMortgage, LLC and Aviatat, LLC

[Describe the nature and extent of the estate's interest in the entity.

Describe the business conducted and intended to be conducted by the entity, focusing on the
entity's dominant business segment(s). Indicate the source of this information.]

Tab 1          80% owned by Debtor in Possession
               Commercial construction company founded 1911
               Dormant

Tab 2          100% owned by Debtor in Possession
               Law office support services consisting of mortgage loan training program

Tab 3          100% owned by Debtor in Possession
               Entity possesses lien interests in aircraft

Source:  Debtor in Possession

# EXHIBIT "B"

*(Correspondence dated 10/29/2019)*

# SISKIND LEGAL, P.L.L.C.

- South Florida Office --
3445 Santa Barbara Drive
Wellington, FL 33414

- Tallahassee Office -
113 N. Monroe St., 1st Floor
Tallahassee, FL 32301

jeffsiskind@msn.com
Tel (561) 791-9565
Fax (561) 791-9581

October 29, 2019

VIA E-MAIL TO jsuarez@gjb-law.com

Chance & Anthem, LLC
c/o Jesus Suarez, Esquire
Counsel toteh Chapter 7 Trustee
Genovese, Joblove & Battista
100 S.E. 2nd Street, Ste 4400
Miami, FL 33131

      RE:    Notice of Forfeiture of CannaMED Pharmaceuticals, LLC Interest
               Demand to Cease & Desist making defamatory remarks concerning
               CannaMED Pharmaceeuticals, LLC's Managing Member

Dear Messers. Furr and Suarez:

You are hereby notified that Chance & Anthem, LLC's entire interest in CannaMED Pharmaceuticals, LLC ("Company") is FORFEITED in accordance with the provision contained within the Company's Amended Operating Agreement which prohibits disparagement and/or other activities by or on behalf of stakeholders which, in the opinion of Company management, would tend to damage the Company's prospects for licensure and/or successful operation.

In my capacity as the Company's managing member, I am adopting your assessment of the value of your interest in the Company as 'worthless,' which valuation is the direct result of and proximate result of your intentional actions to discredit the Company, its employees and/or investors. Therefore, consistent with the Operating Agreement, as amended, the value of your interest to be paid to you is ZERO Dollars.

Furthermore, it is obvious that Chance & Anthem, LLC is, as a Chapter 7 debtor, unable to fulfill its continuing obligation to fund CannaMED Pharmaceuticals, LLC's cash needs, and is therefore in anticipatory breach of the Funding Agreement upon which Chance & Anthem, LLC had a right to hold a 70% non-voting interest in the Company.

This shall also serve as a demand that you immediately cease and desist from publishing or otherwise making defamatory remarks both toward me individually and in my capacity as Managing Member of CannaMED Pharmaceuticals, LLC.

Page 2
Chance & Anthem, LLC
c/o Jesus Suarez, Esquire
Counsel to the Chapter 7 Trustee
October 29, 2019


Please govern yourself accordingly.

Sincerely,

Jeffrey M. Siskind

# EXHIBIT "C"
## *(Siskind Cash Transfers)*

## Chance & Anthem, LLC

Detailed of Disbursements - Cash & Withdrawals

| Bank | Entity | Type | Date | Received From/ Payee | Disbursement/ Debit |
|------|--------|------|------|---------------------|---------------------|
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/13/15 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/30/15 | Cash | 500.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 11/09/15 | Cash | 2,500.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 11/13/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 11/23/15 | Cash | 5,000.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 11/25/15 | Cash | 500.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 11/27/15 | Cash | 40,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/02/15 | Cash | 2,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/02/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/07/15 | Cash | 1,000.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 12/11/15 | Cash | 100.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/11/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/14/15 | Cash | 2,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/16/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/21/15 | Cash | 2,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 12/31/15 | Cash | 5,000.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 01/04/16 | Cash | 2,500.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 01/19/16 | Cash | 2,000.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/07/16 | Cash | 300.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/22/16 | Cash | 2,500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/23/16 | Cash | 63.50 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/24/16 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/25/16 | Other Withdrawal | 2,000.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 04/04/16 | Other Withdrawal | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 04/21/16 | Cash | 20.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 04/22/16 | Cash | 1,100.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 06/01/16 | Other Withdrawal | 200.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 06/15/16 | Other Withdrawal | 750.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 06/24/16 | Other Withdrawal | 750.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 07/08/16 | Cash | 20.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 07/29/16 | Other Withdrawal | 600.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 08/08/16 | Other Withdrawal | 300.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 08/26/16 | Other Withdrawal | 3,300.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 08/26/16 | Cash | 900.00 |
| SunTrust 6688 | Chance & Anthem | Withdrawal | 08/30/16 | Cash | 300.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/02/16 | Other Withdrawal | 40.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/06/16 | Other Withdrawal | 3,265.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/06/16 | Other Withdrawal | 500.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/09/16 | Other Withdrawal | 300.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/09/16 | Other Withdrawal | 4,000.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/12/16 | Other Withdrawal | 40.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 09/14/16 | Other Withdrawal | 250.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 09/16/16 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/21/16 | Cash | 400.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/24/16 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 11/01/16 | Other Withdrawal | 200.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 11/28/16 | Cash | 50.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/27/17 | Cash | 20.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/30/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 02/27/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/07/17 | Other Withdrawal | 75.00 |

| Bank | Entity | Type | Date | Received From/ Payee | Disbursement/ Debit |
|------|--------|------|------|----------------------|--------------------:|
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 03/30/17 | Cash | 40.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/01/17 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/04/17 | Cash | 60.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 05/15/17 | Other Withdrawal | 20.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/24/17 | Cash | 180.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 06/19/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 07/26/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 07/28/17 | Cash | 20.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 08/04/17 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 10/03/17 | Other Withdrawal | 80.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 10/04/17 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 10/05/17 | Other Withdrawal | 400.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 102.68 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 112.05 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 102.98 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 103.57 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 107.46 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/10/17 | Walmart | 103.74 |
| Chase 1866 | Chance & Anthem | Card Purchase | 10/11/17 | Walmart | 101.80 |
| Chase 1866 | Chance & Anthem | Withdrawal | 11/30/17 | Other Withdrawal | 50.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 12/05/17 | Walmart | 110.57 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 12/05/17 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 12/14/17 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 12/15/17 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 12/16/17 | Other Withdrawal | 250.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 12/18/17 | Walmart | 100.98 |
| Chase 1866 | Chance & Anthem | Card Purchase | 12/18/17 | Walmart | 104.97 |
| Chase 1866 | Chance & Anthem | Withdrawal | 12/23/17 | Other Withdrawal | 300.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 01/02/18 | Walmart | 141.77 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/02/18 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/02/18 | Cash | 300.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/04/18 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 01/16/18 | Walmart | 135.94 |
| Chase 1866 | Chance & Anthem | Card Purchase | 01/16/18 | Walmart | 115.40 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/16/18 | Cash | 220.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/22/18 | Cash | 100.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 01/22/18 | Cash | 200.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 02/26/18 | Walmart | 101.05 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/06/18 | Other Withdrawal | 20.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/14/18 | Other Withdrawal | 200.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 03/22/18 | Other Withdrawal | 2,000.00 |
| Chase 1866 | Chance & Anthem | Card Purchase | 03/27/18 | Walmart | 140.97 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/12/16 | Cash | 500.00 |
| Chase 1866 | Chance & Anthem | ATM Withdrawal | 05/13/16 | Cash | 600.00 |
| Chase 1866 | Chance & Anthem | Withdrawal | 05/31/16 | Other Withdrawal | 200.00 |

**Cash & Withdrawal Total**    $    **119,769.43**

# EXHIBIT "D"
*(Tanya Siskind Cash Transfers)*

## Chance & Anthem, LLC

Summary of Transfers to Tanya Siskind

Source: Bank Statements, deposit detail and canceled checks

| Bank | Entity | Type | Date | Check No. | Received From/ Payee | Disbursement/ Debit |
|------|--------|------|------|-----------|----------------------|---------------------|
| Chase 1866 | Chance & Anthem | Check | 03/01/16 | 1127 | Tanya Siskind | 2,500.00 |
| Chase 1866 | Chance & Anthem | Check | 04/04/16 | 1151 | Tanya Siskind | 3,000.00 |
| Chase 1866 | Chance & Anthem | Check | 06/29/16 | 1210 | Tanya Siskind | 6,000.00 |
| Chase 1866 | Chance & Anthem | Check | 11/01/16 | 1315 | Tanya L. Siskind | 5,000.00 |
| Chase 1866 | Chance & Anthem | Check | 03/29/18 | 1361 | Tanya Siskind | 500.00 |
| | | | | | **TOTAL** | **$ 17,000.00** |