*[handwritten: Sovereign + Seller]*

## PURCHASE OPTION AGREEMENT

THIS PURCHASE OPTION AGREEMENT (the "Agreement") dated **8/28/2015**, 2015, is given by MACHINING TECHNOLOGIES, INC., whose address is 510 Naylor Mill Road, Salisbury, Maryland 21801 ("Seller") to SOVEREIGN GAMING & ENTERTAINMENT, LLC, a limited liability company formed under the laws of the state of Florida, whose address is 525 South Flagler Drive, West Palm Beach, Florida 33401 ("Buyer").

WHEREAS, the Seller is the owner of the real property together with the improvements thereon, located in Wicomico County, Maryland, which is more particularly described on Exhibit A attached as a part of this Agreement (the "Property").

WHEREAS, Seller and Buyer had entered into an Improved Commercial Sales Contract dated on or about June 11, 2015, under which Buyer did not proceed to settlement in accordance with the terms of such contract; and

WHEREAS, the parties have now agreed to enter into this Agreement;

NOW THEREFORE, the parties agree as follows:

1. *Grant of Option.* The Seller offers to sell and convey to the Buyer and hereby grants to the Buyer the exclusive and irrevocable option to purchase the Property, together with the improvements thereon, and all the rights, ways, privileges, and appurtenances belonging, or in anywise appertaining thereto, more particularly described on Exhibit A, subject to the terms and conditions set forth below and in the contract of sale which is attached as a part of this Agreement and is designated as Exhibit B (the "Contract of Sale").

2. *Purchase Price for Option; Operating Expenses.*

   a. Buyer shall pay Seller for this option to purchase the sum of Two Hundred and Ninety Thousand Dollars ($290,000.00) (a portion of which shall be applied as a reduction in the purchase price as provided in section 2 of Exhibit B attached hereto), which shall be payable as follows:

   | | |
   |---|---|
   | Upon execution of this option: | $100,000.00 —PD |
   | On or before September 1, 2015: | $ 15,000.00 —PD |
   | On or before October 1, 2015: | $ 15,000.00 —PD |
   | On or before November 1, 2015: | $115,000.00 —PD |
   | On or before December 1, 2015: | $ 15,000.00 —PD |
   | On or before January 1, 2016: | $ 15,000.00 —PD |
   | On or before February 1, 2016: | $ 15,000.00 |

   b. In addition to the amounts payable in Section 2.a above, Buyer shall also pay the estimated operating costs of the Seller for its insurance, property taxes, electric, and grass cutting and snow removal, less offset for the rent paid under the Sharpgas, Inc. lease. Buyer shall pay,

PLAINTIFF'S TRIAL EXHIBIT T-28

concurrently with each payment provided for in Section 2.a beginning on and after September 1, 2015, the sum of Two Thousand Three Hundred Eighty Three Dollars ($2,383.00) per payment (for a total of $14,298.00 through February 28, 2015). In the event that Buyer exercises this option, then the parties will adjust the amounts paid hereunder to the actual operating expenses incurred (less the Sharpgas, Inc. rent), between the date of this Agreement and settlement, with any annual or monthly expenses or rent being prorated for that period.

    c.    If any payment provided for hereunder is not made within five days after it is due, then, at the option of Seller, this option may be terminated upon written notice to Buyer and Buyer's failure to cure such nonpayment within five days after such notice is given.

    d.    Any payment made pursuant to this option is non-refundable.

3.    *Time for Exercise.* The Buyer's option to purchase the Property must be exercised by the Buyer on or before February 28, 2016. If the option to purchase is not exercised on or before that date, then the option granted herein shall automatically cease and terminate and Buyer shall have no further rights hereunder, at law or in equity.

4.    *Manner of Exercise.* The Buyer's option to purchase shall be exercised by the timely delivery, within the time provided in Section 3 above, to the Seller at the Seller's address set forth below of two copies of the Contract of Sale duly executed by the Buyer. Provided that Buyer is not in breach of this Agreement, then promptly upon receiving the same the Seller shall execute both copies of the Contract of Sale and return one fully executed copy to the Buyer. Provided that Buyer is not in breach under this Agreement, the failure of the Seller to execute and return a fully executed copy of the Contract of Sale to the Buyer shall not affect its enforceability and the Contract of Sale shall be binding upon and enforceable against the Seller in the same manner as if it had been executed by the Seller and returned to the Buyer.

5.    *Rights and Obligations of the Parties if the Option is Exercised.* In the event that Buyer exercises the option to purchase within the time and in the manner hereinbefore provided and is not in breach of this Agreement, then the parties shall proceed to settlement as set forth therein; provided however, that Buyer shall continue to make to Seller any payment due under this Purchase Option Agreement which comes due prior to the date of settlement.

6.    *Changes in Condition of Property.* Buyer assumes the risk of all changes in the condition of the Property after the date hereof. Buyer acknowledges that Seller shall have no obligation to maintain, repair or replace the Property or any improvements thereon. The Property and any improvements will be sold "AS IS", with all faults.

7.    *Seller's Address.* The address of the Seller is as follows: 510 Naylor Mill Road, Salisbury, Maryland 21801, Attention Gary Gaskill.

8.    *Time of the Essence.* Time shall be of the essence of this Option Agreement and all obligations of the parties hereunder.

9.    *Termination of Prior Contract.* The Buyer's rights, if any, under the Improved

2

Commercial Sales Contract referred to above are hereby terminated.

10. *Access.* A key will be provided to Seller's real estate agent John McClellan, who will provide to Buyer or his designees access to the Property upon reasonable notice. Buyer may not perform any alterations, modifications or cause any damage to the Property without the Seller's advance written consent, and, if Seller so required as a condition of its approval then Buyer shall thereafter at its expense restore the Property to its former condition unless Buyer proceeds to settlement under the Contract of Sale; provided however, that Buyer may inspect and clean all or a portion of the Property; and further provided that Buyer may maintain, repair, and paint all or a portion of the Property provided that the same are approved by Seller in advance in writing and Buyer may store supplies related to such maintenance, repair and painting provided they are removed within 5 days after termination or expiration of this option (after which time they will be considered abandoned and may be retained, removed or disposed of by Seller at Buyer's expense and without accounting to Buyer therefore). Any alterations, inspections, cleaning, maintenance, repair, painting or other improvements shall be at Buyer's sole expense, be made in compliance with all laws, and, unless Seller required their removal by Buyer as a condition of its approval, shall remain with the Property with no reimbursement or compensation to Buyer if Buyer does not exercise the option hereunder and timely proceed to settlement as provided herein. Further, if Buyer does not exercise the option hereunder and timely proceed to settlement as provided herein, then Buyer shall leave the Property in all respects in at least as good a condition as it was before Buyer undertaking any such alterations, inspections, cleaning, maintenance, repair, painting or other improvements. Buyer agrees to hold Seller harmless (including any costs or expenses incurred by Seller in investigating, dealing with or defending any claim, including but not limited to attorney's fees, expert costs, and litigation costs) from any personal injury or property damage caused by Buyer or its agents employees, representatives, contractors and subcontractors while on or with respect to the Property, which indemnification shall survive settlement or any termination or expiration of this Agreement.

11. *Use of sign.* Buyer may utilize the existing street sign on the Property for the announcement of Buyer's intended use of the Property if, and only if, the Buyer has exercised the right to purchase the Property under this Agreement, that Buyer has made to Seller all payments due through November 1, 2015 under this Agreement; that Buyer has obtained all necessary available licenses required for the operation of its intended use of the Property, and the Buyer is not in breach of this Agreement or the Contract of Sale.

12. *Notices.* Except as otherwise provided herein, all notices, demands, requests, consents, approvals or other communications (for the purpose of this Section collectively called "Notices") required or permitted to be given hereunder or which are given with respect to this Agreement shall be valid only if in writing and hand delivered, sent by registered or certified United States mail, return receipt requested, postage prepaid, or delivered by Federal Express or UPS courier service, addressed as follows:

To Buyer:

Sovereign Gaming & Entertainment, LLC
525 S. Flagler Drive, Suite 500
West Palm Beach, FL 33401
Attention: William Siskind
E-mail: jeffsiskind@msn.com

3

To Seller:    Machining Technologies, Inc.
510 Naylor Mill Road
Salisbury, Maryland
Attention: Gary Gaskill
E-mail: ggaskill@lwrci.com

or such other address as such party shall hereafter have specified by Notice given by the same means. Any Notice shall be deemed given upon delivery or refusal. E-mail transmittal of a Notice to a party at the above e-mail address is also valid, but only if receipt thereof is acknowledged by the recipient.

IN WITNESS WHEREOF the parties have duly executed this Agreement and affixed their seals as of the date set forth above.

ATTEST/WITNESS:

_____ 8/28/13

SELLER:
MACHINING TECHNOLOGIES, INC.

By: _____ (SEAL)
Name: GARY GASKILL
Title: V.P.

BUYER:
SOVEREIGN GAMING & ENTERTAINMENT, LLC

By: _____ (SEAL)
Name: WILLIAM C. SICKING
Title: MBR/MEMBER

4

EXHIBIT A

ALL that lot, tract or parcel of land situate, lying and being in Hebron Election District of Wicomico County and State of Maryland, and on the Northeasterly side of and binding upon U. S. Route 50 leading from Salisbury to Cambridge and more particularly described as follows: BEGINNING for the same at a point on the Northeasterly right-of-way line of U. S. Route 50, said point of beginning being at Maryland State Roads Commission Station 146+25 as shown and designated on plat entitled AFive Star Farms,@ made by P. J. Hannon Associates, dated June 3, 1969, and recorded among the Land Records of Wicomico County, Maryland, in Liber J.W.T.S. No. 678, Folio 85, said point of beginning being also designated by the letter AA@ as shown on said plat, (1) thence by and with the Northeasterly right-of-way line of U. S. Route 50 aforesaid, South 24 degrees 28 minutes 55 seconds East 394 feet, (2) thence North 65 degrees 31 minutes 5 seconds East 200 feet, (3) thence South 24 degrees 28 minutes 55 seconds East 325 feet, (4) thence North 35 degrees 27 minutes 5 seconds East 703.40 feet to the center line of Rewastico Creek, (5) thence by and with the center line of said Rewastico Creek the following four courses: (a) North 78 degrees 6 minutes 55 seconds West 552.14 feet, (b) North 81 degrees 50 minutes 55 seconds West 48.80 feet, (c) South 83 degrees 13 minutes 5 seconds West 108.21 feet, (d) South 65 degrees 31 minutes 5 seconds West 208 feet to a point on the Northeasterly right-of-way line of said U. S. Route 50, (6) thence South 24 degrees 28 minutes 55 seconds East a distance of 20 feet, (7) thence South 65 degrees 31 minutes 5 seconds West a distance of 12 feet to the place of beginning, containing 7.4 acres, more or less, and being more particularly shown and designated on the aforesaid plat.

*EXHIBIT B*

## IMPROVED COMMERCIAL SALES CONTRACT

1. **THIS AGREEMENT OF SALE**, made this ___ day of _____, 2015, by and between <u>Machining Technologies Inc.</u>, 510 Naylor Mill Road, Salisbury, Maryland 21801, hereinafter referred to as **SELLER**, <u>Sovereign     Gaming     &     Entertainment,     LLC</u>, _____ hereinafter referred to as **BUYER**,

WITNESS, that the Seller does hereby bargain and sell unto the said Buyer and latter does hereby purchase from the former, the following described property in fee simple

27120 Ocean Gateway<br>
Hebron, MD 21830

improved by a 43,948 +/- SF building situated on 7.4 +/- acres being the same property described in a deed to Seller recorded at Liber 1400, Folio 768 in the Land Records of <u>Wicomico County Maryland</u>, a legal description of which is attached hereto as <u>Exhibit A</u> (the "Property").

2. **PURCHASE PRICE AND METHOD OF PAYMENT:** The purchase price shall be as follows: The sum of Nine Hundred Fifty Thousand Dollars ($950,000.00) plus interest of seven percent (7%) per annum from the date of _____, 2015, through the date of settlement hereunder; less amounts paid to Seller pursuant to Section 2.a. of that Purchase Option Agreement by and between Seller and Buyer dated August ___, 2015. The purchase price shall be paid in cash, certified funds or wire transfer at settlement.

3. The property conveyed hereunder is sold "AS IS", with all faults.

4. **SETTLEMENT ATTORNEY/TITLE COMPANY.** Buyer shall have the option of selecting his own Title Insurance Company or Title Attorney.

5. **SETTLEMENT DATE:** Settlement shall be made on or before **30 days** after Buyer's exercise of the option to purchase as set forth in the Purchase Option Agreement.

6. **BROKER:** The Seller Recognizes **Sperry Van Ness – Miller Commercial Real Estate** as the Broker negotiating this contact and agrees to pay said Broker a Brokerage Fee for services rendered. It is also agreed and understood the fee for services is earned upon settlement of the property at which time the settling attorney will deduct said fee from the proceeds and distribute same directly to the aforesaid Broker.

7. **RESPONSIBILITY FOR PHYSICAL CONDITION:** It is understood and agreed to by the parties hereto that neither **Sperry Van Ness – Miller Commercial Real Estate**, nor its agents, assume any

Initials<br>
Seller | Buyer

responsibility for the physical condition of the property and all improvements thereon, nor any responsibility for the performance of this agreement by the parties hereto. The herein described Property is to be held at the risk of the Seller until legal title has passed or possession given.

**8. CONVEYANCING:** Buyer has already conducted a title search in connection with the Property in connection with the Improved Commercial Sales Contract dated on or about June 11, 2015, previously entered into by Buyer and Seller, and is satisfied with the title of the Property. Without limiting the generality of the foregoing, Buyer acknowledges that it is aware of the list of title exceptions attached hereto as **Exhibit B** and accepts the same, and Buyer accepts any use and occupancy restrictions of public record which are generally applicable to properties in the immediate neighborhood or the subdivision in which the Property is located, publicly recorded easements for public utilities, and other easements which may be observed by inspection of the Property. At settlement, Seller shall execute an assignment to Buyer of that certain lease agreement entered into between Seller and Sharpgas, Inc. dated October 14, 2013, in a form reasonably acceptable to Seller and Buyer. Notwithstanding the foregoing, Seller shall cause sufficient funds to be paid to The Farmers Bank of Willards at or pursuant to settlement in order to obtain release of that certain mortgage from Machining Technologies, Inc. to The Farmers Bank of Willards, dated September 7, 2010, and recorded among the Land Records of Wicomico County, Maryland, in Liber 3226, Folio 178.

Buyer expressly assumes the risk that restrictive covenants, zoning laws or other recorded documents may restrict or prohibit the use of the Property for the purpose(s) intended by Buyer.

In the event the title becomes subject to additional liens or defects in title after the execution of this contract, with Buyer unable as a result of such liens or defects to obtain title insurance through a Maryland licensed title insurer with Buyer paying not more than the standard rate as filed with the Maryland Insurance Commissioner, then Seller, at Seller's expense, shall have the option of curing any such lien or defect or, if Buyer is willing to accept title without said defect being cured, paying any special premium on behalf of Buyer to obtain title insurance on the Property to the benefit of Buyer. In the event Seller elects to cure any liens or defects in title, then this Contract shall continue to remain in full force and effect; and the date of settlement shall be extended for a period not to exceed fourteen (14) additional days. If Seller is unable or unwilling to cure such lien or title defect(s) and is unable or unwilling to obtain a policy of title insurance on the Property to the benefit of Buyer from a Maryland licensed title insurer, then Buyer shall have the option of taking such title as Seller can give, or terminating this Contract and being reimbursed by Seller for (a) cost of searching title as may have been incurred not to exceed 1/2 of 1% of the purchase price, plus (b) the amounts paid pursuant to Section 2.a. of the Purchase Option Agreement other than the initial payment upon execution of that agreement, which shall be Buyer's sole remedies. In the latter event, there shall be no further liability or obligation on either of the parties pursuant to the Purchase Option Agreement and this Contract. In no event shall Broker(s) or their agent(s) have any liability for any defect in Seller's title.

Initials
Seller | Buyer

9. INTENTIONALLY OMITTED.

10. **CASUALTY INSURANCE:** It is agreed that the Seller shall cause the Fire and Casualty Insurance Policies now in force on the above described Property to be endorsed at once so as to protect all parties hereto, as their interests may appear and continue said insurance in force during the life of this contract. As provided in section 15 below, the herein described Property is to be held at the risk of the Buyer until legal title has passed. Buyer may require additional insurance if he wishes.

11. **OTHER CONDITIONS:**

    1. Seller shall remove all personal property that is not attached to the building prior to settlement.
    2. Buyer hereby acknowledges the existing land lease to Sharpgas, Inc. for a bulk propane storage tank at the rate of $625 per month. Seller has provided Buyer with a copy of said lease and will assign said lease at settlement.

12. **ADJUSTMENTS AND POSSESSION:** Rent, water rent, taxes, sewer and water charges and all other public charges shall be apportioned as of the date of settlement, at which time possession shall be given, unless otherwise agreed upon herein. In the event Seller fails to give possession at time of settlement, it shall become and be thereafter a tenant by sufferance of the Buyer and hereby waives all notices to quit, as provided by Maryland Law. Costs of all documentary stamps required by law, recordation tax, and transfer tax shall be <u>split equally between the Buyer and Seller.</u>

13. **DEED:** Upon payment of the purchase price, a deed for the Property containing covenants of special warranty and further assurances (except in the case of transfer by personal representative of an estate), shall be executed at Buyer's expense by Seller and shall convey the Property to Buyer.

14. **CONDITION OF PROPERTY AND POSSESSION:** At settlement, Seller shall deliver possession of the Property and shall deliver the Property vacant, clear of trash and debris, and broom clean. Buyer acknowledges that it assumes the risk of all changes in the condition of the Property until the date of settlement, and that Seller shall have no obligation to maintain, repair, or replace the Property or any improvements or other property. THE PROPERTY IS SOLD "AS IS" WITH ALL FAULTS.

15. **RISK OF LOSS RESPONSIBILITY:** The Property is to be held at the risk of Buyer. If, prior to the time legal title has passed or possession has been given to Buyer, all or a substantial part of the Property is destroyed or damaged by casualty, without fault of Buyer, then Buyer shall be entitled to the proceeds payable under the insurance policy maintained by Seller in connection with such loss.

Initials
Seller | Buyer

16. **LEASES:** Seller may neither negotiate new leases nor renew existing leases for the Property which extend beyond settlement or possession date without Buyer's written consent.

17. **DEFAULT:** Buyer and Seller are required and agree to make full settlement in accordance with the terms of this Contract and acknowledge that failure to do so constitutes a breach hereof. If Buyer fails to make full settlement or is in breach due to Buyer's failure to comply with the terms, covenants and conditions of this Contract, then Seller shall be entitled to pursue all legal and equitable remedies. If Seller fails to make full settlement or is in breach due to Seller's failure to comply with the terms, covenants and conditions of this Contract, Buyer shall be entitled to pursue such rights and remedies as may be available, at law or in equity, including, without limitation, an action for specific performance of this Contract and/or monetary damages.

18. **MEDIATION OF DISPUTES:** Mediation is a process by which the parties attempt to resolve a dispute or claim with the assistance of a neutral mediator who is authorized to facilitate the resolution of the dispute. The mediator has no authority to make an award, to impose a resolution of the dispute or claim upon the parties or to require the parties to continue mediation if the parties do not desire to do so. Buyer and Seller agree that any dispute or claim arising out of or from this Contract or the transaction which is the subject of this Contract shall be mediated through the Maryland Association of REALTORS®, Inc. or its member local boards/associations in accordance with the established Mediation Rules and Guidelines of the Association or through such other mediator or mediation service as mutually agreed upon by Buyer and Seller, in writing. Unless otherwise agreed in writing by the parties, mediation fees, costs and expenses shall be divided and paid equally by the parties to the mediation. If either party elects to have an attorney present that party shall pay his or her own attorney's fees.

Buyer and Seller further agree that the obligation of Buyer and Seller to mediate as herein provided shall apply to all disputes or claims arising whether prior to, during or within one (1) year following the actual contract settlement date or when settlement should have occurred. Provided that the mediation concludes within two months after demand therefore, the Buyer and Seller agree that neither party shall commence any action in any court regarding a dispute or claim arising out of or from this Contract or the transaction which is the subject of this Contract, without first mediating the dispute or claim, unless the right to pursue such action or the ability to protect an interest or pursue a remedy as provided in this Contract, would be precluded by the delay of the mediation. In the event the right to pursue such action, or the ability to protect an interest or pursue a remedy would be precluded by the delay, Buyer or Seller may commence the action only if the initial pleading or document commencing such action is accompanied by a request to stay the proceeding pending the conclusion of the mediation. If a party initiates or commences an action in violation of this provision, the party agrees to pay all costs and expenses, including reasonable attorneys' fees, incurred by the other party to enforce the obligation as provided herein. The provisions of this paragraph shall

Initials
Seller | Buyer

survive closing and shall not be deemed to have been extinguished by merger. Buyer and Seller may agree to waive mediation.

**19. ATTORNEY'S FEES:** In any action or proceeding between Buyer and Seller based, in whole or in part, upon the performance or non-performance of the terms and conditions of this Contract, including, but not limited to, breach of contract, negligence, misrepresentation or fraud, the prevailing party in such action or proceeding shall be entitled to receive reasonable attorney's fees from the other party as determined by the court or arbitrator.

**20. NOTICE OF BUYER'S RIGHT TO SELECT SETTLEMENT SERVICE PROVIDERS:** Buyer has the right to select Buyer's own title insurance company, title lawyer, settlement company, escrow company, mortgage lender or financial institution as defined in the Financial Institutions Article, Annotated Code of Maryland. Buyer acknowledges that Seller may not be prohibited from offering owner financing as a condition of settlement.

**21. NOTICE TO BUYER CONCERNING THE CHESAPEAKE AND ATLANTIC COASTAL BAYS CRITICAL AREA:** Buyer is advised that all or a portion of the property may be located in the "Critical Area" of the Chesapeake and Atlantic Coastal Bays, and that additional zoning, land use, and resource protection regulations apply in this area. The "Critical Area" generally consists of all land and water areas within 1,000 feet beyond the landward boundaries of state or private wetlands, the Chesapeake Bay, the Atlantic Coastal Bays, and all of their tidal tributaries. The "Critical Area" also includes the waters of and lands under the Chesapeake Bay, the Atlantic Coastal Bays and all of their tidal tributaries to the head of tide. For information as to whether the property is located within the Critical Area, Buyer may contact the local Department of Planning and Zoning, which maintains maps showing the extent of the Critical Area in the jurisdiction. Allegany, Carroll, Frederick, Garrett, Howard, Montgomery and Washington Counties do not include land located in the Critical Area.

**22. WETLANDS NOTICE:** Buyer is advised that if all or a portion of the Property being purchased is wetlands, the approval of the U.S. Army Corps of Engineers will be necessary before a building permit can be issued for the Property. Additionally, the future use of existing buildings may be restricted due to wetlands. The Corps has adopted a broad definition of wetlands which encompasses a large portion of the Chesapeake Bay Region. Other portions of the State may also be considered wetlands. For information as to whether the Property includes wetlands, Buyer may contact the Baltimore District of the U.S. Army Corps of Engineers. Buyer may also elect, at Buyer's expense, to engage the services of a qualified specialist to inspect the Property for the presence of wetlands prior to submitting a written offer to purchase the Property; or Buyer may include in Buyer's written offer a clause making Buyer's purchase of the Property contingent upon a satisfactory wetlands inspection.

Initials
Seller | Buyer

23. **NON-ASSIGNABILITY:** This Contract may not be assigned without the written consent of Buyer and Seller. If Buyer and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until settlement.

24. **PARAGRAPH HEADINGS:** The Paragraph headings of this Contract are for convenience and reference only, and in no way define or limit the intent, rights or obligations of the parties.

25. **COMPUTATION OF DAYS:** As used in this Contract, and in any addendum or addenda to this Contract, the term "days" shall mean consecutive calendar days, including Saturdays, Sundays, and holidays, whether federal, state, local or religious. A day shall be measured from 12:00:01 a.m. to and including 11:59:59 p.m. E.S.T. For the purposes of calculating days, the count of "days" shall begin on the day following the day upon which any act or notice as provided in this Contract, or any addendum or addenda to this Contract, was required to be performed or made.

26. **TIME IS OF THE ESSENCE:** Time is of the essence of this Contract. The failure of Seller or Buyer to perform any act as provided in this Contract by a prescribed date or within a prescribed time period shall be a default under this Contract.

27. **ENTIRE AGREEMENT:** This Contract and any addenda thereto contain the final and entire agreement between the parties, and neither they nor their agents shall be bound by any terms, conditions, statements, warranties or representations, oral or written, not herein contained. The parties to this Contract mutually agree that it is binding upon them, their heirs, executors, administrators, personal representatives, successors and, if permitted as herein provided, assigns. Once signed, the terms of this Contract can only be changed by a document executed by all parties. This Contract shall be interpreted and construed in accordance with the laws of the State of Maryland. It is further agreed that this Contract may be executed in counterparts, each of which when considered together shall constitute the original Contract.

28. **ELECTRONIC DELIVERY:** The parties agree that this Contract offer shall be deemed validly executed and delivered by a party if a party executes this Contract and delivers a copy of the executed Contract to the other party by telefax or telecopier transmittal, or delivers a digital image of the executed document by email transmittal.

29. **MISCELLANEOUS:** The parties hereto agree that this Agreement shall be binding upon their respective heirs and personal representatives. **ALSO THE PARTIES RECOGNIZE THAT THIS AGREEMENT IS LEGALLY ENFORCEABLE AND ARE HEREBY ADVISED TO SEEK LEGAL ADVICE IF NOT UNDERSTOOD. BUYER MAY SELECT HIS OWN TITLE INSURANCE, SETTLEMENT OR ESCROW COMPANY OR TITLE ATTORNEY. NOTICE.** You may be entitled to receive compensation from the real estate guaranty fund of the Maryland Real Estate Commission, an amount not to exceed $50,000.00, for any loss arising out of the transaction resulting from the unlawful act of a real estate licensee.

Initials
Seller | Buyer

30. **WITNESS** the hands and seals of the parties hereto, the day and year first above written.

Witness:                                Buyer: Sovereign Gaming & Entertainment LLC

_____            _____

Witness Buyer's Signature

Name: _____

Title: _____

Date: _____


Witness                                 Seller: Machining Technologies, Inc.

_____            _____

Witness Seller's Signature

Name: _____

Title: _____

Date: _____


Date of Contract Acceptance: _____

Initials
Seller | Buyer

EXHIBIT A

ALL that lot, tract or parcel of land situate, lying and being in Hebron Election District of Wicomico County and State of Maryland, and on the Northeasterly side of and binding upon U. S. Route 50 leading from Salisbury to Cambridge and more particularly described as follows: BEGINNING for the same at a point on the Northeasterly right-of-way line of U. S. Route 50, said point of beginning being at Maryland State Roads Commission Station 146+25 as shown and designated on plat entitled AFive Star Farms,@ made by P. J. Hannon Associates, dated June 3, 1969, and recorded among the Land Records of Wicomico County, Maryland, in Liber J.W.T.S. No. 678, Folio 85, said point of beginning being also designated by the letter AA@ as shown on said plat, (1) thence by and with the Northeasterly right-of-way line of U. S. Route 50 aforesaid, South 24 degrees 28 minutes 55 seconds East 394 feet, (2) thence North 65 degrees 31 minutes 5 seconds East 200 feet, (3) thence South 24 degrees 28 minutes 55 seconds East 325 feet, (4) thence North 35 degrees 27 minutes 5 seconds East 703.40 feet to the center line of Rewastico Creek, (5) thence by and with the center line of said Rewastico Creek the following four courses: (a) North 78 degrees 6 minutes 55 seconds West 552.14 feet, (b) North 81 degrees 50 minutes 55 seconds West 48.80 feet, (c) South 83 degrees 13 minutes 5 seconds West 108.21 feet, (d) South 65 degrees 31 minutes 5 seconds West 208 feet to a point on the Northeasterly right-of-way line of said U. S. Route 50, (6) thence South 24 degrees 28 minutes 55 seconds East a distance of 20 feet, (7) thence South 65 degrees 31 minutes 5 seconds West a distance of 12 feet to the place of beginning, containing 7.4 acres, more or less, and being more particularly shown and designated on the aforesaid plat.

Initials
Seller | Buyer

EXHIBIT B

1. Subject to the terms and conditions set forth in a Deed of Easement by and between the Chesapeake and Potomac Telephone Company of Maryland and H. Milton Hearn and wife, dated April 4, 1979, and recorded among the aforesaid Land Records in Liber A.J.S. No. 930, Folio 90.

2. Subject to the terms and conditions set forth in a Right-of-Way to Delmarva Power & Light Company of Maryland, from H. Milton Hearne and wife, dated July 18, 1969, and recorded among the aforesaid Land Records in Liber J.W.T.S. No. 663, Folio 431.

3. Subject to Easement shown on Property Survey for Five Star Farms, made by P. J. Hannon Associates, dated June 3, 1969, and recorded among the aforesaid Land Records in Liber J.W.T.S. No. 678, Folio 85.

4. Subject to the terms and conditions set forth in Deeds to the State of Maryland to the use of the State Roads Commission of Maryland from H. Milton Hearne, et ux., dated May 18, 1966, and recorded among the aforesaid Land Records in Liber J.W.T.S. No.630, Folio 109; June 8, 1951, and recorded in Liber J.W.T.S. No. 295, Folio 389; dated June 23, 1950, and recorded in Liber J.W.T.S. No. 295, Folio 336; dated June 23, 1950, and recorded in Liber J.W.T.S. No. 295, Folio 337, and subject to the easement more particularly shown on State Roads Commission of Maryland Plat No. 8282, recorded in the State Road Commission Plat Book No. 1, Folio 195.

5. Subject to the terms and conditions set forth in a Right-of-Way to The Eastern Shore Public Service Co. of Maryland, and The C & P Telephone Company of Maryland, from H. Milton Hearne, et ux., dated June 22, 1965, and recorded among the aforesaid Land Records in Liber J.W.T.S. No. 542, Folio 505.

6. Subject to the terms and conditions set forth in a Right-of-Way to The Eastern Shore Public Service Co. of Maryland, from H. Milton Hearne, et ux., dated December 31, 1953, and recorded among the aforesaid Land Records in Liber J.W.T.S. No. 358, Folio 273.

7. Subject to the terms and conditions set forth in a Right-of-Way to The Eastern Shore Public Service Co. of Maryland, from H. Milton Hearne, et ux., dated August 25, 1952, and recorded among the aforesaid Land Records in Liber J.W.T.S. No. 331, Folio 447.

Initials
Seller | Buyer

8. Subject to the terms and conditions set forth in a Right-of-Way to The Eastern Shore Public Service Co. of Maryland, from H. Milton Hearne, et ux., dated August 9, 1948, and recorded among the aforesaid Land Records in Liber J.W.T.S. No. 303, Folio 37.

9. Subject to the terms and conditions set forth in a Quitclaim Deed to the Vestry of Spring Hill Church from H. Milton Hearne, et ux., dated March 9, 1964, and recorded among the aforesaid Land Records in Liber J.W.T.S. No. 580, Folio 123.

10. Subject to the terms and conditions set forth in a Deed of Easement to the County Commissioners of Wicomico County from H. Milton Hearne, et al., dated October 31, 1935, and recorded among the aforesaid Land Records in Liber I.D.T. No. 193, Folio 457, for Rewastico Ditch.

11. Subject to ingress, egress and regress Right-of-Way contained in the Deed to James A. Waller, et al., from Ebenezer White, et ux., dated January 4, 1910, and recorded among the aforesaid Land Records in Liber E.A.T. No. 67, Folio 309.

12. Subject to the following matters:

(a) that portion of land or improvements included within the bounds of the land described in Schedule A and lying seaward of any bulkhead line established by the Army Corps of Engineers and that comprises filled land, accretions thereto, or improvements into the bed of navigable waters (to include land created by the deposit of dredge spoil and improvements thereto) being subject to the navigational servitude and regulatory power of the U.S. government, including the power to cause removal of such filled land and/or improvements without payment of compensation;

(b) any portion of said land filled subsequent to July 1, 1970, or lying below the mean high water line on or after said date being subject to the regulatory power of the State of Maryland over wetlands, including the power, in the event that a violation of state law is found to exist, to require restoration of said land to its former condition without payment of compensation;

(c) public rights to use so much of the land described in Schedule A as lies between the mean natural high water line and the mean natural low water line of any tidal waters located adjacent to or within said land; and

(d) title to so much of the land described in Schedule A as may have been created by the deposit of dredge spoil by the United State of America, any agency or instrumentality thereof or any political subdivision.

Initials
Seller | Buyer

13. Subject to the terms and conditions set forth in a Maintenance and Inspection Agreement of Private Stormwater Management Facilities dated July 6, 1994, between Machining Technologies, Incorporated and Wicomico County, Maryland, and recorded among the aforesaid Land Records in Liber No. 1399, Folio 667.

14. Subject to a Lease Agreement between Machining Technologies, Inc. and Sharpgas, Inc. dated October 14, 2013.

C:\Users\Donna\Documents\WP51\DBD\MATECH\Sale of Hebron Property 2015\Sovereign Contract rev8-18-15.doc

Initials
Seller | Buyer