# LIMITED LIABILITY COMPANY OPERATING AGREEMENT FOR CANNAMED PHARMACEUTICALS, LLC, A MARYLAND LIMITED LIABILITY COMPANY

In order to establish and operate a medical cannabis growing facility which will afford safe and efficient production of medical cannabis, this Limited Liability Company Operating Agreement is entered into and shall become effective as of the effective date by and among **CannaMED Pharmaceuticals, LLC** (the "Company"), and the person executing this Agreement as Managing Member. It is the Managing Member's express intention to create a limited liability company in accordance with the laws of the State of Maryland, as currently written or subsequently amended or redrafted. Therefore, all provisions of this document shall be construed consistent with the aforedescribed intent of the Managing Member. Accordingly, in consideration of the conditions contained herein, it is hereby agreed as follows:

## ARTICLE I

### Company Formation, Effective Date

Section 1.01 **FORMATION.** The undersigned Managing Member hereby forms a Limited Liability Company subject to the provisions of Maryland state law as currently in effect as of the effective date hereof. The Effective Date shall be that date on which the Articles of Organization of the Company are filed with the Maryland Department of Assessments and Taxation.

Section 1.02 **REGISTERED OFFICE AND AGENT.** The location and name of the registered agent shall be as stated in the Articles of Organization.

Section 1.03 **TERM.** The Company shall continue for a perpetual period except in the event that: (a) Members whose capital interest as defined in Article 2.2 exceeds 50 percent vote for dissolution; or (b) the occurrence of any event which makes it unlawful for the business of the Company to be carried on by the Members; or (c) any other event causing dissolution of this Limited Liability Company under applicable state laws.

Section 1.04 **CONTINUANCE OF COMPANY.** Notwithstanding the provisions of ARTICLE 1.3, in the event of an occurrence described in ARTICLE 1.3(c), if there are at least one remaining Member(s), said remaining Member(s) shall have the right to continue the business of the Company.

Section 1.05 **BUSINESS PURPOSE.** The Company is formed to establish and operate a medical cannabis cultivation center in the State of Maryland and to conduct any and all lawful business deemed appropriate to execute the company's objectives.

Section 1.06 **PRINCIPAL PLACE OF BUSINESS.** The location of the principal place of business of the Company shall be 27120 Ocean Gateway, Hebron, Maryland 21830.

PLAINTIFF'S TRIAL EXHIBIT T-32

Section 1.07 **THE MEMBERS.** Only those persons and/or entities so designated by the Managing Member shall be deemed to be the owners of this company.

Section 1.08 **ADMISSION OF ADDITIONAL MEMBERS.** Except as otherwise expressly provided in the Agreement, no additional members may be admitted to the Company through issuance by the company of a new interest in the Company without the prior written consent of a majority of the Members.

## ARTICLE II

### Governance by Officers and Active Boards of Advisors

Section 2.01 **ADVISORY BOARDS.** The Members may choose to establish one or more advisory boards and to have day-to-day operations carried out by a Chief Executive Officer and senior management team. In such event, the managing member shall act as Managing Director and may, if deemed necessary by the managing member in its sole discretion, cause bylaws to be adopted and amended from time to time as necessary to spell out the roles, responsibilities, and oversight of officers and the boards of advisors.

Section 2.02 **OPERATING DECISIONS.** Operating decisions shall be executed by the senior management team following mission and policy directives of a Managing Director, who shall issue same after considering comment from the boards of advisors, and which shall ensure that the mission of the Company is preserved and that Company operations are consistent with Maryland law and regulations.

Section 2.03 **COMPANY OVERSIGHT.** The Chief Executive Officer, who shall hold ultimate operational oversight of the corporation, shall report directly to the Managing Director. Additional senior level management personnel shall report directly to the Chief Executive Officer and shall have management oversight for most departments and managers of various aspects of the Company's operation. Security, Finance, and Quality/Product Testing Departments shall report directly to the Chief Executive Officer, except in the event that a Chief Operating Officer is chosen, in which case these departments shall report to the Chief Operating Officer. All management team members shall work collaboratively with Maryland regulatory authorities.

Section 2.04 **ACCOUNTING/COMPLIANCE.** Fiscal controls shall be maintained in order to ensure proper record keeping of accounts and funds, and all books and records shall be audited by a certified public accountant in accordance with good accounting principles. All senior management team members and employees shall be subject to a rigorous background check (state and federal) and shall be thoroughly vetted to ensure that only the highest caliber of candidate is working in this new industry in the State of Maryland. Every Member or manager, or other employee at least twenty-one years of age.

Section 2.05 **ADVISORY BOARD MEMBERS**.  Number and Residency of Advisory Board Members. The number of advisory board members may vary, but shall not be less than one (1) nor more than seven (7), except by action of a majority vote of the Members. Advisory board members shall be residents of the State of Maryland.

Section 2.06 **APPOINTMENT AND TERM OF ADVISOR BOARD MEMBERS.** The initial advisory boards shall be comprised of individuals selected by the Managing Director in consultation with the Chief Executive Officer and Chief Operating Officer.  Said advisory board members shall continue to serve upon good behavior.

Section 2.07 **NEWLY-CREATED ADVISORY BOARDS AND VACANCY.** The Company shall have two separate advisory boards; one to advise on all matters financial, and another to advise on matters pertaining to scientific endeavor.  Vacancies occurring in the advisory boards shall be filled by the Managing Director upon advise and recommendation of the Chief Executive Officer and the Chief Operating Officer.

Advisory board members may propose to the Managing Director one or more successors whose appointment may be effective immediately or upon the occurrence of some future event. In the event of the death of an advisory board member, the executor, administrator or legal representative of the deceased board member may appoint one or more successors.

Section 2.08 **RESIGNATION.** Any advisory board member may resign at any time by delivering a resignation in writing to the Managing Director. Such resignation shall take effect at the time specified therein, and unless otherwise specified, no acceptance of such resignation shall be necessary to make it effective.

Section 2.09 **REMOVAL OF ADVISORY BOARD MEMBERS**. Any one or more of the advisory board members may be removed with or without cause at any time by the Managing Director upon advise of the Chief Executive Officer and/or Chief Operating Officer.

Section 2.10 **MEETINGS OF THE ADVISORY BOARDS.** A combined annual meeting of the advisory boards shall be held each year at such time and place as may be fixed by the Managing Director, for the transaction of such business as may properly come before the meeting.  Regular monthly meetings of the advisory boards may be held at such times as may be fixed by the Managing Director.  Special meetings of the advisory boards may be called by or at the direction of the Managing Director.

No notice need be given of regular meetings of the advisory boards for which the time and place have been fixed. Written, oral, or any other mode of notice of the time and place shall be given for special meetings in sufficient time for the convenient assembly of the members. Notice need not be given to any advisory board member who submits a written waiver of notice signed by him before or after the time stated therein.  Attendance of any such person at a meeting shall constitute a waiver of notice of such meeting,

except when he or she attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

Neither the business to be transacted at, nor the purpose of, any regular or special meeting of an advisory board need be specified in any written waiver or notice.

A majority of the advisory board members present, whether or not a quorum is present, may adjourn any meeting to another time and place. Notice of any adjournment of a meeting to another time or place shall be given in the manner described above to the members who were not present at the time of the adjournment and, unless such time and place are announced at the meeting, to other members.

The Managing Director shall preside at all meetings. Otherwise, any other advisory board member chosen by the Managing Director shall preside.

Section 2.11 **QUORUM AND VOTING.** Unless a greater proportion is required by law, by the Operating Agreement, or as otherwise adopted by a unanimous vote of the boards of advisors, a majority of the entire membership of the boards of advisors shall constitute a quorum for the transaction of business or of a specified item of business

Section 2.12 **WRITTEN CONSENT; MEETING BY CONFERENCE TELEPHONE OR BY COMPARABLE MEDIUM.** Any action required or permitted to be taken may be taken without a meeting if all members consent thereto in writing. Each consent so adopted by advisory board members shall be filed with the minutes of the proceedings.

To the extent permitted by law, any one or more members may participate in a meeting of an advisory board by means of a conference telephone, Internet chat room or similar communications equipment allowing all persons participating in the meeting to hear or to otherwise communicate with each other at the same time. Participation by such means shall constitute presence in person at a meeting.

Section 2.13 **COMPENSATION OF ADVISORY BOARD MEMBERS**. Advisory board members shall not receive any stated salaries for their services, providing that nothing herein contained shall be construed to preclude any such member from serving the Company in any other legally permitted capacity and receiving reasonable compensation therefore. At all times, such compensation shall not exceed what is ordinarily considered to be reasonable compensation for services rendered. For the avoidance of doubt, advisory board members may be reimbursed for reasonable expenses incurred in the performance of their duties to the Corporation.

Section 2.14 **RECORDS OF MEETINGS.** Minutes shall be kept of each meeting of the advisory boards. Copies of the minutes of each meeting shall be filed with the records of the Company.

# ARTICLE III

## Officers, Agents and Employees

Section 3.01 **GENERAL PROVISIONS.** The officers of the Corporation shall be governed by one (1) President who shall serve as the Chief Executive Officer and such other officers as may be required by the President in order to execute his or her duties, but not less than one (1) Secretary and one (1) Treasurer, one of whom may also serve as Vice-President.

Section 3.02 **TERM OF OFFICE OF PRESIDENT.** The President shall be appointed by the Managing Director and shall hold office until his or her successor has been elected or appointed and qualified or until his or her earlier resignation or removal.

Section 3.03 **TERM OF OFFICE OF VICE-PRESIDENT.** A Vice-President may be may be appointed by the President and shall hold office until his or her successor has been appointed and qualified or until his or her earlier resignation or removal.

Section 3.04 **TERM OF OFFICE OF SECRETARY**. The Secretary shall be selected by the President and shall hold office until his or her successor has been selected or appointed and qualified or until his or her earlier resignation or removal.

Section 3.05 **TERM OF OFFICE OF TREASURER.** The Treasurer shall be selected by the President and shall hold office until his or her successor has been selected or appointed and qualified or until his or her earlier resignation or removal.

Section 3.06 **VACANCIES AND REMOVAL OF THE PRESIDENT**. If the office of President becomes vacant for any reason, the Managing Director shall promptly fill such vacancy. The President selected to fill a may be removed by the Managing Director with or without cause at any time.

Section 3.07 **VACANCIES AND REMOVAL OF A VICE-PRESIDENT.** If the office of Vice-President becomes vacant for any reason, the President may fill such vacancy. A Vice-President may be removed by the President with or without cause at any time.

Section 3.08 **VACANCIES AND REMOVAL OF THE SECRETARY.** If the office of Secretary becomes vacant for any reason, the President shall promptly fill such vacancy. The Secretary so appointed may be removed by the President with or without cause at any time.

Section 3.09 **VACANCIES AND REMOVAL OF THE TREASURER.** If the office of Treasurer becomes vacant for any reason, the President shall promptly fill such vacancy. The Treasurer so appointed may be removed by the President with or without cause at any time.

Section 3.10 **RESIGNATION.** Any officer may resign from office at any time by delivering a resignation in writing to the President, or in the case of the President to the Managing Director. Unless otherwise specified in the written resignation, such resignation shall be effective upon delivery and receipt.

Section 3.11 **POWER AND DUTIES OF OFFICERS.** Subject to the control of the President, and in the case of the President, of the Managing Director, all officers as between themselves and the Corporation shall have such authority and perform such duties in the management of the property and affairs of the Corporation as may be provided herein and, to the extent not so provided, as generally pertain to their respective offices.

If at any time the President shall resign or be removed, the office of President shall be deemed vacant and the Managing Director shall promptly fill such vacancy pursuant to the terms of Section 4.06 hereof.

The President shall serve as Chief Executive Officer of the Company. The President shall perform all duties customary to that office and shall supervise and control all of the affairs of the Company in accordance with the policies and directives received from the Managing Director.

Unless otherwise directed, the President may, in his or her sole discretion and at any time and from time to time, delegate (subject to his or her revocation of such delegation) authority to one or more of the other officers of the Company.

The Vice-President shall perform such duties and have such powers as the President or as may from time to time provide, subject to the powers and supervision of the Managing Director in the absence of the President, or in the event of his or her or their inability or refusal to act.

The Secretary shall perform such duties and have such powers as the President may from time to time provide, subject to the powers and the supervision of the Managing Director in the event of his or her inability or refusal to act. The Secretary shall be responsible for the keeping of an accurate record of the proceedings of all meetings, shall give or cause to be given all notices as prescribed herein and in accordance with or as required by law.

The Treasurer shall perform such duties and have such powers as the President may from time to time provide, subject to the powers and the supervision of the Managing Director in the absence of the President or in the event of his or her inability or refusal to act. In addition, the Treasurer shall have the custody of, and shall be responsible for, all funds and securities of the Company. He or she shall keep or cause to be kept complete and accurate accounts of receipts and disbursements, and shall deposit all monies and other valuable property of the Company in the name and to the credit of the Company in such banks or depositories as the Managing Director may designate.

Whenever required by the President, the Treasurer shall render a statement of accounts. He or she shall at all reasonable times exhibit the books and accounts to any officer of the Company, and shall perform all duties incident to the office of Treasurer, subject to the supervision of the Managing Director, and such other duties as shall from time to time be assigned. The Treasurer shall, if required by the Managing Director, give such bond or security for the faithful performance of his or her duties as the Managing Director may require, for which he or she shall be reimbursed.

The Treasurer shall such have investment authority and discretion concerning the Company's assets as directed by the Managing Director, and shall not delegate his or her investment authority concerning the Company's assets any given time.

Section 3.12 **AGENTS AND EMPLOYEES.** The Managing Director may appoint agents and employees who shall have such authority and perform such duties as may be prescribed, and who may be removed with or without cause. Removal without cause shall be without prejudice to such person's contract rights, if any, and the appointment of such person shall not itself create contract rights.

Section 3.13 **COMPENSATION OF OFFICERS, AGENTS AND EMPLOYEES**. The Company may pay compensation in reasonable amounts to agents and employees for services rendered, in such amount to be fixed by the Managing Director, or, if the Managing Director delegates power to any officer or officers, then by such officer or officers. Officers, agents or employees may be required to give security for the faithful performance of their duties.

## ARTICLE IV

### Management and Limited Liability Company Membership Interests

Section 4.01 **MANAGEMENT OF THE LIMITED LIABILITY COMPANY.** The Limited Liability Company (LLC) shall be manager-managed.

Section 4.02 **MEMBERS.** Members shall not take part in the operation of the Company's affairs, unless they are elected as Managers.

Section 4.03 **POWERS OF MANAGERS.** The Managers, as authorized by Members, will make decisions as to (a) the sale, development, lease or other disposition of the Company's assets; (b) the purchase or other acquisition of other assets of all kinds; (c) the management of all or any part of the Company's assets; (d) the borrowing of money and the granting of security interests in the Company's assets; (e) the pre-payment, refinancing or extension of any loan affecting the Company's assets; (f) the compromise or release of any of the Company's claims or debts; and, (g) the employment of persons, firms or corporations for the operation and management of the company's business. In the exercise of their management powers, the Managers are authorized to execute and deliver (a) all contracts, conveyances, assignments leases, sub-leases, franchise agreements, licensing agreements, management contracts and maintenance

contracts covering or affecting the Company's assets; (b) all checks, drafts and other orders for the payment of the Company's funds; (c) all promissory notes, loans, security agreements and other similar documents; and, (d) all other instruments of any other kind relating to the Company's affairs, whether like or unlike the foregoing.

Section 4.04 **NOMINEE.** Title to the Company's assets shall be held in the Company's name.

Section 4.05 **COMPANY INFORMATION.** Upon request, the Managers shall supply to any member information regarding the Company or its activities. Each Member or his or her authorized representative shall have access to and may inspect and copy all books, records and materials in the Manager's possession regarding the Company or its activities.

Section 4.06 **EXCULPATION.** Any act or omission of the Managers, the effect of which may cause or result in loss or damage to the Company or the Members if undertaken in good faith to promote the best interests of the Company, shall not subject the Managers to any liability to the Members

Section 4.07 **INDEMNIFICATION.** The Company shall indemnify any person who was or is a party defendant or is threatened to be made a party defendant, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (other than an action by or in the right of the Company) by reason of the fact that he is or was a Member of the Company, Manager, employee or agent of the Company, or is or was serving at the request of the Company, for instant expenses (including attorney's fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with such action, suit or proceeding if the Members determine that he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Company, and with respect to any criminal action proceeding, has no reasonable cause to believe his/her conduct was unlawful. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of "no lo Contendere" or its equivalent, shall not in itself create a presumption that the person did or did not act in good faith and in a manner which he reasonably believed to be in the best interest of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his/her conduct was lawful.

### ARTICLE V

### Compensation, Profits, Losses and Distributions

Section 5.01 **MANAGEMENT FEE.** Any Manager rendering services to the Company shall be entitled to compensation commensurate with the value of such services as all members agree upon.

Section 5.02 **PROFITS/LOSSES.** For financial accounting and tax purposes the Company's net profits or net losses shall be determined on an annual basis and shall be allocated to the Members in proportion to each Member's relative capital interest in the Company, and as amended from time to time in accordance with Treasury Regulation 1.704-1.

Section 5.03 **DISTRIBUTIONS.** The Members shall determine and distribute available funds annually or at more frequent intervals as they see fit. Available funds, as referred to herein, shall mean the net cash of the Company available after appropriate provision for expenses and liabilities, as determined by the Managers. Distributions in liquidation of the Company or in liquidation of a Member's interest shall be made in accordance with the positive capital account balances pursuant to Treasury Regulation 1.704-l(b)(2)(ii)(b)(2). To the extent a Member shall have a negative capital account balance, there shall be a qualified income offset, as set forth in Treasury Regulation 1.704-l(b)(2)(ii)(d).

Section 5.04 **REIMBURSEMENT.** The Company shall reimburse the Managers or Members for all direct out-of-pocket expenses incurred by them in managing the Company.

Section 5.05 **CAPITAL CONTRIBUTIONS.** The Members initially shall initially contribute to the Company such capital as is consistent with their relative interests and the company shall keep record of the amount each contributed. No Member shall be obligated to make any additional contribution to the Company's capital.

## ARTICLE VI

### Member Records, Bookkeeping and Reporting

Section 6.01 **RECORDS.** The Managers shall cause the Company to keep at its principal place of business or at another location as required by applicable State law and regulations, the following:

(a) A current list in alphabetical order of the full name and the last known street address of each Member;

(b) A copy of the Certificate of Formation and the Company Operating Agreement and all amendments;

(c) Copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years;

(d) Copies of any financial statements of the limited liability company for the three most recent years.

(e) Copies of all records required to be maintained by the State of Maryland.

Section 6.02 **MEMBER'S ACCOUNTS.** The Managers shall maintain separate capital and distribution accounts for each member. Each member's capital account shall be determined and maintained in the manner set forth in Treasury Regulation 1.704-l(b)(2)(iv) and shall consist of his initial capital contribution increased by:

(a) Any additional capital contribution made by him/her;

(b) Credit balances transferred from his distribution account to his capital account;

and decreased by:

(a) Distributions to him/her in reduction of Company capital;

(b) The Member's share of Company losses if charged to his/her capital account.

Section 6.03 **BOOKS.** The Managers shall maintain complete and accurate books of account of the Company's affairs at the Company's principal place of business and at another location as required by State law. Such books shall be kept on such method of accounting as the Managers shall select. The company's accounting period shall be the calendar year.

Section 6.04 **REPORTS.** The Managers shall close the books of account after the close of each calendar year, and shall prepare and send to each member a statement of such Member's distributive share of income and expense for income tax reporting purposes.

## ARTICLE VII

### Transfers of Member Interests

Section 7.01 **ASSIGNMENT.** If at any time a Member proposes to sell, assign or otherwise dispose of all or any part of its interest in the Limited Liability Company (LLC), that Member shall comply with the following procedures:

(a) First make a written offer to sell such interest to the other Member(s) at a price determined in writing. At this point exiting member may not make this intention publicly known. If such other Members decline or fail to elect such interest within sixty (60) days, the exiting member may advertise its membership interest for sale as it sees fit.

(b) If a member has a buyer of a members interest, the other current member(s) have first right of refusal to purchase the exiting members interest for the agreed purchase price. If there are more than one current remaining members, remaining members may combine funds to purchase the exiting members interest. Exiting member must show that potential purchaser has full certified funds, or the ability to get full certified funds before

the first right of refusal period starts. Current members have 60 days to buy an exiting member's interest if they so desire.

(c) Pursuant to the applicable law, current members may unanimously approve the sale of exiting members' interests to grant full membership benefits and functionality to the new member. The current remaining members must unanimously approve the sale, or the purchaser or assignee will have no right to participate in the management of the business, affairs of the Company, or member voting rights. The purchaser or assignee shall only be entitled to receive the share of the profits or other compensation by way of income and the return of contributions to which that Member would otherwise be entitled. Exiting member must disclose to buyer or assignee if current members will not approve the sale.

Section 7.02 **VALUATION OF EXITING MEMBERS INTEREST.** If a member wants to exit the LLC, and does not have a buyer of its membership interest, exiting member will assign its interest to current members according to the following set forth procedures:

(a) A value must be placed upon this membership interest before assigned.

(b) If exiting member and current members do not agree on the value of this membership interest, exiting member must pay for a certified appraiser to appraise the LLC company value, and the exiting members' value will be assigned a value according to the exiting members' interest percentage.

(c) The current members must approve the certified appraiser used by exiting member. Current members have 30 days to approve the exiting members certified appraiser. If current members disapprove the certified appraiser, they must show evidence to support their disapproval of the certified appraiser as a vendor qualified to make the LLC business appraisal. Current members may not stall the process by disapproving all certified appraisers.

(d) Upon completion of a certified appraiser placing a value on the LLC, a value will be placed on exiting members' interest according to exiting members' percentage of membership interest.

(e) If current members disagree with the value placed on exiting members' interest, current members must pay for a certified appraiser to value the LLC and exiting members' interest according to the same terms.

(f) Current members' appraiser must be completed within 60 days or right of current members to dispute the value of exiting members interest expires.

(g) Upon completion of current members certified appraiser, the exiting member must approve the value placed on exiting members' interest. Exiting member has 30 days to approve this value.

(h) If exiting member does not approve current members' appraiser value, the value of the LLC will be determined by adding both parties' values, then dividing that value in half, then creating the value of the exiting members' interest according to the exiting members' percentage of membership interest.

Section 7.03 **DISTRIBUTION OF EXITING MEMBER'S INTEREST.** Upon determination of exiting members' interest value, the value will be a debt of the LLC. The exiting member will only be able to demand payment of this debt at dissolution of the LLC or the following method:

(a) LLC will make timely payments.

(b) LLC will only be required to make payments towards exiting members' debt if LLC is profitable and passed income to current members.

(c) LLC must make a debt payment to exiting member if LLC passed income of 50% of the total determined value of the exiting members' interest in one taxable year. (Example: If exiting members' value was $100,000 and current member(s) received $50,000 taxable income in the taxable year, the LLC would owe a debt payment to exiting member. If current member(s) only received $90,000 in passed income, there would be no payment due.)

(d) Debt payment must be at least 10% of the value of the passed income to current LLC members.

(e) LLC must make payment to exiting member within 60 days of the end of the taxable year for the LLC.

(f) Payment schedule will continue until exiting member's debt is paid by LLC.

(g) If LLC dissolves, exiting member will be a regular debtor and payment will follow normal LLC dissolution payment statutes.

(h) Exiting members' value of membership interest it assigned current members may NOT accrue interest.

(i) LLC can pay off amount owed to exiting member at any time if it so desires.

Dated this 27th day of October, 2015 at Salisbury, Wicomico County, Maryland.


_____*/s/ Jeffrey M. Siskind*_____
Jeffrey M. Siskind, Esquire
Managing Member/Managing Director