| | |
|---|---|
| CANNAMED PHARMACEUTICALS, LLC. *<br>*Plaintiff,* | IN THE |
| | CIRCUIT COURT |
| v. | |
| | FOR |
| NATALIE M. LAPRADE MARYLAND<br>MEDICAL CANNABIS COMMISSION.<br>*et al.,* | BALTIMORE CITY |
| *Defendants.* | Case No.:  24-C-17004230 |

\*          \*          \*          \*          \*          \*          \*          \*          \*

## DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants, the Natalie M. LaPrade Maryland Medical Cannabis Commission (the "Commission") and the Department of Health[1] ("the Department" formerly the Maryland Department of Health and Mental Hygiene), by and through their undersigned counsel, move for dismissal or, in the alternative, for summary judgment on the following grounds:

1.      The complaint filed by plaintiff CannaMED Pharmaceuticals, LLC ("CannaMED") should be dismissed in its entirety pursuant to Maryland Rules 2-322(b)(2) for failure to state a claim upon which relief may be granted.

2.      If the Court does not entirely dismiss the complaint, then alternatively, the Court should grant summary judgment in favor of the Commission and the Department as their sovereign immunity bars the Plaintiff's claim.

A proposed Orders accompany this motion.

Respectfully submitted,

---

[1] Md. Code Ann., Health – General § 2-101 as amended July 1, 2017.

**PLAINTIFF'S TRIAL EXHIBIT T-87**

BRIAN E. FROSH
Attorney General of Maryland

HEATHER B. NELSON
Assistant Attorney General
300 W. Preston Street, Suite 302
Baltimore, Maryland 21201
Office: (410) 767-1877
Fax: (410) 333-7894
heather.nelson1@maryland.gov

October 30, 2017

Attorneys for Defendants

CANNAMED PHARMACEUTICALS, LLC,   *   IN THE

        *Plaintiff,*

                            *   CIRCUIT COURT

v.

                            *   FOR

NATALIE M. LAPRADE MARYLAND
MEDICAL CANNABIS COMMISSION,    *   BALTIMORE CITY
*et al.*,

        *Defendants.*   *   Case No.: 24-C-17004230

                            *

   *    *    *    *    *    *    *    *    *

## DEFENDANTS' MEMORANDOM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

    The Complaint filed by CannaMED Pharmaceuticals, LLC must be dismissed for its failure to state a claim upon which relief can be granted. Plaintiff brings "allegations of damages due to breach of contract." Complaint at page 3.[1] In doing so, it asserts that the application materials submitted for a medical cannabis license "constituted an offer to enter into a contract, which offer was extended to prospective applicants and formed an enforceable contract with those Applicants who submitted completed applications and paid the required application fees." Complaint at page 4. CannaMED suggests that it "reasonably interpreted" application materials to favor identification of operating premises, despite clear instruction to the contrary, and that CannaMED was "unfairly induced by Defendants into acquiring an operating premises." Complaint at pages 6, 7.

---

[1] Contrary to the requirements of Rule 2-303(a), the Complaint does not include numbered paragraphs, and so reference must be made to page numbers.

Defendants, the Natalie M. LaPrade Maryland Medical Cannabis Commission (the "Commission") and the Department of Health[2] ("the Department" formerly the Maryland Department of Health and Mental Hygiene), ask this Court to dismiss the Complaint filed by CannaMED in its entirety for failure to state a claim upon which relief could be granted where Plaintiff brings only a breach of contract claim and yet has failed to plead the existence of a valid written contract between the parties. Further, because no claim is raised against the Department of Health, the Department should be dismissed. In the alternative, should the Court decline to dismiss this Complaint, judgment should enter in favor of the State where sovereign immunity bars the Plaintiff's efforts to seek damages from the State on a theory of breach of contract.

## Introduction

The General Assembly created the Natalie M. LaPrade Maryland Medical Cannabis Commission (the "Commission") as an independent commission, Md. Code Ann., Health-Gen. § 13-3302, and by statute has authorized the Commission to issue licenses to no more than 15 medical cannabis growers, which will then be authorized to supply medical cannabis for use in Maryland, Health-Gen. § 13-3306(a)(2)(i), as amended by 2015 Md. Laws, ch. 251.

This lawsuit arises from dissatisfaction on the part of the plaintiff, CannaMED Pharmaceuticals, LLC ("CannaMED"), because it applied for but was not granted one of the 15 stage one pre-approvals for medical cannabis grower license issued by the Commission. Based on that dissatisfaction, CannaMED comes before this Court a full

---

[2] Md. Code Ann., Health – General § 2-101 as amended July 1, 2017.

2

year after learning it was not awarded a stage one pre-approval for medical cannabis grower license and belatedly presents a complaint that quite simply fails to present a cognizable claim.   The Complaint does not present as a claim for administrative mandamus, as it likely should.[3]  Instead, the Complaint presents claims for breach of contract, despite the fact that the Complaint fails to plead a proper written contract

---

[3]      If anything, the allegations raised in the Complaint should have been brought in an action for administrative mandamus.  The administrative mandamus rules "govern actions for judicial review of a quasi-judicial order or action of an administrative agency where review is not expressly authorized by law."  Md. Rule 7-401(a).  That is the case here.  The case of *Carriage Hill Cabin John, Inc. v. Maryland Health Resources Planning Commission*, 125 Md.App. 183 (1999) is very closely on point.  In Carriage Hill, an agency was required to review competing applications for nursing homes certificates of need.  The Court held that the review process was quasi-judicial, because individual rights, duties, entitlements, or privileges were at issue.  *Id.* at 194.

Under COMAR and the facts alleged in the Complaint, MMCC was an administrative body performing a quasi-judicial action when it evaluated and made a decision on the selection of applicants for medical cannabis licenses. COMAR 10.62.08.05.  The regulations required applications to contain information on certain enumerated criteria upon which applications were then evaluated and ranked.  The commissioners evaluated the applications and received recommendations from RESI. Commissioners then deliberated and voted upon which applicants had established that they best satisfied the evaluation criteria set forth in COMAR 10.62.08.05.  The action was quasi-judicial.  Thus, the administrative mandamus rule provides the only route to judicial review.

An action for administrative mandamus, "and [its] timing" shall comply with the judicial review rules, Rules 7-202 and 7-203.  Rule 7-203(a) provides that "a petition for judicial review shall be filed within 30 days after the latest of: (1) the date of the order or action of which review is sought; (2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or (3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner."  That limitation clearly was not met here.

The Commission notified the public and each applicant of its selections for grower license pre-approvals on its website on August 15, 2016.  Plaintiff received a debriefing from the Commission, referenced in the Complaint, on or about November 29, 2016. Nevertheless, Plaintiff did not file this action until August 15, 2017, exactly one year after the administrative action it seeks to challenge.

between the Commission or Department and the Plaintiff. Plaintiff is not entitled to pursue litigation where it has failed to state a claim upon which relief can be granted.

Even if the Complaint did not suffer from that defect, the Court should dismiss all claims against the Department of Health (the "Department") for failure to state a claim upon which relief may be granted. CannaMED does not allege facts that would entitle it to relief against the Department, which had no role in the process employed to evaluate applications and award stage one preapprovals for medical cannabis grower licenses. In fact, CannaMED does not raise any allegation about the Department beyond that it operates out of Baltimore, Maryland. If any part of the plaintiff's action survives this motion, the Court should issue an order pursuant to Rule 2-213 directing that the Department be dropped from the pleading due to its misjoinder.

In addition, any suggestion of a claim for injunctive relief should be dismissed as plaintiff does not make any effort to establish the elements necessary to sustain a claim for such action. Even if Plaintiff presented a specific request for injunctive relief, which it hasn't, the allegations fail to establish any meaningful injury to CannaMED, fail to meet the standard for the balancing of harms among the parties, fail to support any likelihood of success on the merits, and fail to show that the requested injunction would be in the public interest.

If the Court declines to dismiss the Complaint, then, in the alternative, it should enter summary judgment in favor of the Commission, and issue a declaration making clear that the Commission's sovereign immunity bars Plaintiff's claim for damages.

4

## STATEMENT OF FACTS

### Maryland's Statutory and Regulatory Scheme for Medical Cannabis

The Commission is an independent commission that functions within the Department of Health and Mental Hygiene. Md. Code Ann., Health-Gen. § 13-3302(b). Although the Commission functions within the Department, neither the Department nor the Secretary of the Department has any authority in licensing medical cannabis growers. Md. Code Ann., Health-Gen. §§ 2-102(a), 2-106(c), 13-3306.

The Commission consists of 16[4] members: one designee of the Secretary of Health and Mental Hygiene and 15 members appointed by the Governor. Md. Code Ann., Health-Gen. § 13-3302. The Commission's purpose is to "develop policies, procedures, guidelines, and regulations to implement programs to make medical cannabis available to qualifying patients in a safe and effective manner." Md. Code Ann., Health-Gen. § 13-3302(c). The statute provides that the Commission "shall license medical cannabis growers that meet all requirements established by the Commission to operate in the State."[5] Md. Code Ann., Health-Gen. § 13-3306(a)(1). The Commission has statutory authority to issue a maximum of 15 licenses to medical cannabis growers. Md. Code Ann., Health-Gen. § 13-3306(a)(2)(i). All authority is assigned to the Commission as an entity; no commissioner holds individual authority to license any medical cannabis grower. Md. Code Ann., Health-Gen. § 13-3306. In order to exercise its licensing

---

4 Due to a vacancy, there are currently 15 members of the Commission.
5 The Commission is also responsible for issuing licenses for medical cannabis processors and medical cannabis dispensaries. Md. Code Ann., Health-Gen. §§ 13-3307, 13-3309. These types of licenses do not appear to be at issue in this action.

authority, the Commission was statutorily required to "establish an application review process for granting medical cannabis grower licenses in which applications are reviewed, evaluated, and ranked based on criteria established by the Commission." Md. Code Ann., Health-Gen. § 13-3306(a)(2)(iii).

The Commission fulfilled these statutory mandates by promulgating regulations governing the criteria by which applications for medical cannabis grower licenses would be reviewed and the weight afforded to each of the criteria. COMAR 10.62.08.05. The first collection of criteria set out in the regulations was expressly intended to be used by "the Commission or a Commission independent contractor" in reviewing applications. COMAR 10.62.08.05I. The regulations expressly state, "For scoring purposes, the Commission *may* take into account the geographic location of the growing operation to ensure there is geographic diversity in the award of the licenses." COMAR 10.62.08.05J (emphasis added).

### The Stage One Application and Pre-Approval Process

The Commission determined that it would pursue medical cannabis grower licensing in two stages. In stage one, the Commission would issue pre-approvals to up to 15 applicants for medical cannabis grower licenses "in consideration of the ranking of the applications in accordance with Regulation .05." COMAR 10.62.08.06A.(1)(b).[6]

The Commission entered into an agreement with the Regional Economic Studies Institute ("RESI") at Towson University to assist the Commission with the medical

---

[6] In stage two, the Commission would perform due diligence with respect to the pre-approved applicants in accordance with COMAR 10.62.08.07.

6

cannabis grower license application review process. The Commission released the Application for Medical Cannabis Grower License (the "application") on or about September 28, 2015. Application attached hereto as Exhibit 1. The application did not require applicants to identify the proposed location in which they intended to operate. Exhibit 1. The Commission did inform the public, however, that it would require information on the general location of the intended operations so that it could consider geographic diversity.

During the application period, the Commission frequently posted questions and answers on its website in an effort to respond to inquiries about the process and the application. Exhibit 1. Certain of these FAQs directly informed applicants that the Commission was not requiring applicants to know the precise location of their intended operations at the stage one application process:

56e. In the application section requesting company information, do you want where the company is incorporated, or the physical address of the potential business?

The address of the potential business may not be known in Stage 1, and is not required to be disclosed until Stage 2. The applicant should provide the location of the business entity applying for a license.

73e. Should applicants redact the location of their proposed facilities on their site plan submitted to RESI? While the location does not identify the Applicant's name or the company name of the Applicant it could be used to infer the identity of involved parties.

The specific address of the location is not required to be included in the application, and, therefore, should the applicant chose to redact the information, they may do so. However, the Commission will still require general location information of the proposed facility, e.g., Senatorial District.

Exhibit 1.  The Commission also received a question relating to the role of RESI in the ultimate decision and stated:

> **90e. What is the selection process after RESI returns the scores?**
>
> The final determination of the award of any pre-approval licenses will be made by the Commissioners.  The identity of the applicants will remain confidential to the Commissioners until the final selection is made.  The process is intended to be fair, impartial, and balanced, and will reflect the best interests of the Commission and the State of Maryland.

Exhibit 1.  CannaMED submitted an application for a medical cannabis grower license. Complaint at page 1.  After the timely applications were received and logged by the Commission staff, the electronic files containing the application materials to be evaluated were delivered to RESI for its staff and subcontractors to move forward with its scope of work.  Exhibit 1.  RESI then undertook its work to provide the Commission with the ranking recommendations for commissioners, informing the Commission that it could provide its written ranking recommendations on or about July 13, 2016.  *Id.*  RESI's scope of work included assigning coded identification numbers to the application materials.  *Id.*

On or about July 13, 2016, RESI provided to the commissioners its recommended scoring and ranking report and the redacted application materials for the commissioners to review in support of their deliberations.  Exhibit 1.  These materials did not include reference to applicant names, but identified applicants only by coded identification number.  Exhibit 1.  On July 27, 2016, RESI presented supplemental information to the Grower Evaluation Subcommittee, which subsequently prepared recommendations for the full Commission.

**The Commission's Consideration and Determination of Stage One Pre-Approvals**

On August 5, 2016, the Commission met in open session to consider issuing stage one pre-approvals to applicants for medical cannabis grower and processor license. Exhibit 1. The Subcommittee verbally presented its recommendations at the meeting and responded to questions from commissioners. Exhibit 1. The Subcommittee took into account the RESI recommendations, but also needed to consider geographic diversity. Exhibit 1.

The full Commission then voted on the recommendations put forward by the Subcommittee. Exhibit 1. The Commission voted on a ranking of the top twenty applicants for medical cannabis grower licenses. Exhibit 1. It then voted to issue pre-approvals to the top fifteen applicants for medical cannabis grower licenses, conditioned on satisfactory background checks of those applicants, sufficient to show that there was no evidence to indicate a lack of good moral character, or evidence of tax arrears. Exhibit 1. During all of the deliberations and through the time of the August 5, 2015 Commission vote, the Commission worked with redacted application materials and voted on the pre-approvals for medical cannabis grower license with the applicants identified by coded identification number only. Exhibit 1.

**ARGUMENT**

**I.     Standard and Scope of Review**

The Court properly grants a motion to dismiss pursuant to Rule 2-322(b) if "the allegations [in the complaint] and permissible inferences, if true, would not afford relief

9

to the plaintiff, *i.e.*, the allegations do not state a cause of action for which relief may be granted." *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 496-97 (2014) (citation omitted). "In Maryland, . . . dismissals for failure to state a claim are *not* limited to those cases in which 'it appears beyond doubt that the plaintiff can prove no state of facts in support of his claim which would entitle him to relief.'" *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 343 (2000) [quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), abrogated by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (other citations omitted)]; *see Twombly*, 550 U.S. at 554-61 (adopting "plausibility" as minimum requirement for factual allegations in a complaint). Instead, Maryland's pleading standard requires, at a minimum, "a concise statement of facts that will identify for the professional reader, be it adverse counsel or the court, the cause of action that is being asserted." *Manikhi*, 360 Md. at 343. On the other hand, "[t]he well-pleaded facts setting forth the cause of action must be pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice." *State Ctr., LLC*, 438 Md. at 497.

"[T]he court's analysis of the motion [to dismiss is] limited generally to the four corners of the complaint and its incorporated supporting exhibits, if any." *Id.* Although "a court must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them," *id.* at 496, "any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action

must be construed against the pleader." *Sharrow v. State Farm Mut. Auto Ins. Co.*, 306 Md. 754, 768 (1986).

If, on a motion to dismiss for failure to state a claim, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.  Rule 2-322(c); *see Converge Servs. Group, LLC v. Curran*, 383 Md. 462, 475-76 (2004).  Under Maryland Rule 2-501, the grant of a motion for summary judgment is appropriate "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." *Barclay v. Briscoe*, 427 Md. 270, 281 (2012) [quoting Rule 2-501(f)].  "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *Matthews v. Howell*, 359 Md. 152, 161, 753 A.2d 69, 73 (2000).

## II.   The Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted.

The Complaint fails to state a claim upon which relief can be granted in a number of ways.  First, the Complaint fails to articulate a justiciable claim for breach of contract, because it fails to identify any contract between the State defendants and the Plaintiff. Second, the Complaint fails to allege that the Department of Health had any role in the underlying actions at all, and therefore fails to state any claim against that named defendant.  Finally, the Complaint fails to state a claim upon which relief can be granted as to injunctive relief, only mentioned in passing in the Prayer for Relief because the Complaint fails to set forth any of the necessary elements for such relief.

To determine whether CannaMED has established a claim upon which relief can be granted, the Court should consider "allegations of fact and inferences deducible therefrom, not merely conclusory charges," *Faya v. Almaraz*, 329 Md. 435, 444 (1993) (quoting *Berman v. Karvounis*, 308 Md. 259 (1987)). Any "'ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader.'" *Faya*, 329 Md. at 444 (citations omitted).

## A.  Plaintiff Failed to State a Claim for Breach of Contract.

To maintain an action for breach of contract, the plaintiff must allege the existence of a contractual obligation owed by the defendant to the plaintiff and a material breach of that obligation by the defendant. *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 655 (2010) ("It is well-established in Maryland that a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" (emphasis in original) (quoting *Continental Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977)).

Mutual assent is an integral component of every contract. *Md. Supreme Corp. v. Blake Co.*, 279 Md. 531, 539, 369 A.2d 1017 (1977). It is equally well established that an enforceable contract must express with definiteness and certainty the nature and extent of the parties' obligations. *Canaras v. Lift Truck Services*, 272 Md. 337, 346, 322 A.2d 866 (1974); *Robinson v. Gardiner*, 196 Md. 213, 217, 76 A.2d 354 (1950); *Reiser Co. v. Baltimore Radio Show, Inc.*, 169 Md. 306, 312, 181 A. 465 (1935). If the contract omits a term or is too vague with respect to essential terms, the contract may be invalid. *L & L*

12

*Corp. v. Ammendale*, 248 Md. 380, 385, 236 A.2d 734 (1967); *see also, Schloss v. Davis*, 213 Md. 119, 123, 131 A.2d 287 (1956) (a "contract may be so vague and uncertain as to price or amount as to be unenforceable.").

CannaMED alleges that the application for a medical cannabis grower license constitutes an offer to enter into a contract, and the applicants for licenses accepted the offers by returning and submitting the applications for medical cannabis grower licenses. At the outset, it must be noted that the Plaintiff's pleading is deficient to establish the existence of a contract. An application in a competitive licensing scheme cannot be considered an offer to enter into a contract. Plaintiff fails to identify any written agreement, any agreed upon terms, any consideration for the contract, and any party who could have bound the State to this agreement. The pleading is deficient.

Lest there be any confusion however, the application itself makes clear that it was not a contract or offer for contract, but rather an application to compete for a medical cannabis grower license. Page 11 of the Application for Medical Cannabis Grower License, attached hereto within Exhibit 1 provides:

## SECTION I: IMPORTANT NOTICES/DISCLAIMERS

This Application form is an **OFFICIAL DOCUMENT** of the Maryland Medical Cannabis Commission. It **MAY NOT** be altered or changed in any fashion except to fill-in the areas provided with the information that is required. Should any alteration or revision of a question occur, the Commission reserves the right to deny the Application in its entirety, or may determine to attribute no weight to the response.

- The license to operate as a grower is a privilege.
- The burden of proving an Applicant's qualifications at all times rests on the Applicant. The Applicant accepts any and all risk of adverse public notice, criticism, emotional distress, or financial loss that may result from any action with respect to this Application. The Applicant expressly waives any and all claims for damages as a result thereof.
- The Commission may deny an Application that contains a misstatement, omission, misrepresentation, or untruth.
- An Application shall be complete in every material detail, including all of the mandatory sections that are marked with an asterisk (*).

This application form cannot be construed as inviting a meeting of the minds, and no contract could develop from an applicant's submission of same. This was plainly an application for a license to which Plaintiff was not entitled. The Complaint fails to plead a claim for breach of contract; had Plaintiff properly lead it, Defendants would be entitled to summary judgment thereon.

### B.  Plaintiff Failed to State a Claim Against the Department

The Complaint fails to state a claim upon which relief may be granted against the Department, because, as a matter of law, the Department has no independent authority or responsibility in licensing medical cannabis growers.

State law established the Commission as an independent unit of the State Government functioning within the Department, and conferred upon the Commission specific powers and duties that are unaffected by the Commission's placement within the Department. The Department of Health and Mental Hygiene is a principal department of

14

the Executive Branch of the State Government.  Md. Code Ann., State Gov't § 8-201.
The powers and duties assigned by law to a unit, such as the Commission, are not
changed by placement of a unit in a principal department.  Md. Code Ann., State Gov't §
8-202.

The Secretary of Health and Mental Hygiene (the "Secretary) heads the
Department.  Md. Code Ann., Health-Gen. § 2-102(a).  The Secretary has the authority
and powers specifically granted to him/her by law, but powers not granted to the
Secretary belong to the units of the Department, free of the control the Secretary.  Md.
Code Ann., Health-Gen. § 2-106(c).  The Secretary may designate a member of the
Commission.  Md. Code Ann., Health-Gen § 13-3303(a)(1).  No other specific grants of
power or authority to the Secretary or the Department exist with respect to the
Commission.  All other responsibilities and powers belong to the Commission, e.g.,
licensing medical cannabis growers and processors, and licensing dispensaries.  Md.
Code. Ann., Health-Gen §§ 13-3306, 13-3307, 13-3309.  Indeed, the Complaint does not
allege any act or omission attributable to the Department.

Because the Department has no authority to create standards for or to award
medical cannabis grower licenses, it is not a proper defendant to this action.  *See Glover
v. Glendening*, 376 Md. 142, 148 (2003); *Jackson v. Millstone*, 369 Md. 575, 590-91
(2002); *Davis v. State*, 183 Md. 385, 393 (1944); *see also Police Comm'n v. Siegel*, 223
Md. 110, 115 (1960) (book store owner seeking injunction and declaratory judgment that
State's criminal comic book statute was unconstitutional sued defendants "charged with

the enforcement of the criminal laws of [Maryland] in the City of Baltimore"). Therefore, any claim against the Department should be dismissed.

### C. Plaintiff Failed to State a Claim for Injunctive Relief

To determine whether CannaMED has stated a claim for injunctive relief, the Court should consider "allegations of fact and inferences deducible therefrom, not merely conclusory charges," *Faya v. Almaraz*, 329 Md. 435, 444 (1993) (quoting *Berman v. Karvounis*, 308 Md. 259 (1987)). Any "ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Faya*, 329 Md. at 444 (citations omitted). A complaint for injunctive relief must allege and demonstrate the following: (1) the likelihood that the plaintiff will succeed on the merits; (2) the "balance of convenience" determined by whether greater injury would be inflicted upon the defendant by granting the injunction than would result from its refusal; (3) whether the plaintiff will suffer irreparable injury unless the injunction is granted; and (4) when appropriate, that the public interest is best served by granting the injunction. *Fogle v. H & G Restaurant, Inc.*, 337 Md. 441, 452-53 (1995). Plaintiff has failed to plead even one of the four required factors. No prayer for injunctive relief can be entertained.

### III.   If the Court Does Not Dismiss the Case, Summary Judgment Should be Granted for Defendants on Sovereign Immunity.

If the Court determines to consider and not exclude matters beyond the pleadings, then sovereign immunity requires the entry of summary judgment for the defendant because the complaint brings a claim for relief based upon an agreement that does not

satisfy the requirements of Maryland's limited waiver of sovereign immunity from suits alleging a contract with the State or one of its officers or units. *See* Md. Code Ann., State Government § 12-201. The Complaint brings "allegations of damages due to breach of contract." Complaint at page 4. While the Commission respectfully contends that the Complaint should be dismissed for failure to plead the existence of a contract, should the Court determine otherwise, the State's sovereign immunity bars Plaintiff from pursuing damages due to breach of "contract."

The Court of Appeals has long held that "when a governmental agency or actor can, and does, avail itself of the doctrine of sovereign immunity, no contract ... suit can be maintained thereafter ... unless the General Assembly has specifically waived the doctrine." *Stern v. Bd. of Regents*, 380 Md. 691, 701 (2004). Whether an agency "can" assert sovereign immunity is determined by (1) whether the entity "qualifies for its protection," and (2) "whether the legislature has waived immunity" in a way that "would render the defense of immunity unavailable." *ARA Health Servs. v. Dep't of Pub. Safety & Correctional Servs.*, 344 Md. 85, 92 (1996)(citations omitted).

As to the first question, both the Commission and the Department of Health are State agencies that "qualify for [the] protection" of sovereign immunity. As a "principal department of the State government," Md. Code Ann., State Gov't § 8-201, the Department of Health unquestionably "enjoys the protective cloak of sovereign immunity" to the full extent that generally applies to State agencies. *ARA Health Servs. v. Dep't of Pub. Safety & Correctional Servs.*, 344 Md. 85, 92 (1996) (interpreting the same statutory language to mean that a "principal department of the State government" is

17

entitled to sovereign immunity). As an independent commission that functions within the Department, the Commission also qualifies for sovereign immunity. *See Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766. 780 (1984) (holding that MTA, under its prior name, was entitled to sovereign immunity from a contractor's claim for additional compensation).

As to whether the sovereign immunity that is otherwise available has been waived by the General Assembly, here that question must be answered in the negative, based on the provisions of State Government § 12-201(a). as it has been interpreted by the Court of Appeals. Section 12-201(a) provides that "[e]xcept as otherwise expressly provided by a law of the State, the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee." As "a legislative limitation on sovereign immunity," § 12-201(a) must be "read in a narrow light" and "must be viewed within the context of an unfavored limitation on a well-recognized and ancient doctrine with a strong public policy to insulate the State from burdensome interference with its governmental functions and [preserve] its control over State agencies and funds.' " *Stern*, 380 Md. at 720, 722 (citations omitted; brackets in original).

The Court of Appeals has construed the statute, with its somewhat challenging syntax, to be only "a partial waiver of sovereign immunity," *ARA Health Servs.*, 344 Md. at 92, that is limited to suits involving "a written contract signed by a person expressly authorized to execute the contract for" the State agency that is to be bound by the

contract. *Stern*, 380 Md. at 722. That is, in construing § 12-201(a), the Court of Appeals has expressly rejected any substitute for an actual signature by an expressly authorized official, *id.*, and has further rejected the notion that a plaintiff may rely on the mere "apparent authority" of an agent to agree to the terms of a contract, if that person lacked "actual authority" to execute the agreement on behalf of the State agency, *ARA Servs.*, 344 Md. at 95 (emphasis in original). Thus, under the "express requirement of § 12-201(a)," sovereign immunity bars a contract action unless the agreement that forms the basis of the suit is both written and "executed within the scope of authority of the State employee or official" who signed it. *Id.*

Here, the Plaintiff has not plead and could not identify any contract executed on behalf of the Commission or the Department because none exists. The proper application of State Government § 12-201(a) requires the conclusion that sovereign immunity is not waived, and that this action for damages due to breach of contract is barred.

## CONCLUSION

Plaintiff did not contract with the State but rather submitted an application to an administrative body tasked with winnowing a field of 145 applicants for medical cannabis grower licenses down to no more than 15 applicants best qualified to receive preapproval for a license. The fact that the process resulted in a large number of disappointed applicants is hardly surprising. Had the Plaintiff wished to challenge the administrative process undertaken to evaluate its application, it was required to file an action for administrative mandamus within thirty days of the administrative decision.

For the reasons stated, the Court should dismiss the Complaint for failure to state a claim upon which relief may be granted. In the alternative, this Court should enter judgment in favor of the sovereign immunity held by the Commission and the Department.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

HEATHER B. NELSON
Assistant Attorney General
300 W. Preston Street, Suite 302
Baltimore, Maryland 21201
Office: (410) 767-1877
Fax: (410) 333-7894
heather.nelson1@maryland.gov

October 30, 2017

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of October 2017, a copy of the foregoing Motion and Memorandum of Law in Support Thereof was mailed, first-class, postage pre-paid, to:

Jeffrey M. Siskind, Esq.
525 S. Flagler Drive, Ste. 500
West Palm Beach, FL 33401
jeffsiskind@msn.com

Counsel for Plaintiff

_____
Heather B. Nelson

CANNAMED PHARMACEUTICALS, LLC.           *        IN THE
                    *Plaintiff.*

                                                  *        CIRCUIT COURT
v.
                                                  *        FOR

NATALIE M. LAPRADE MARYLAND
MEDICAL CANNABIS COMMISSION,              *        BALTIMORE CITY
*et al.,*
                    *Defendants.*                 *        Case No.: 24-C-17004230

                                                  *

        *        *        *        *        *        *        *        *        *

### ORDER

After consideration of the Motion to Dismiss filed by the Natalie M. LaPrade
Maryland Medical Cannabis Commission and the Maryland Department of Health and
any response thereto, it is this _____ day of _____, 2017, by the Circuit Court for
Baltimore City, hereby,

        ORDERED that the Defendant's Motion to Dismiss the Complaint is hereby
GRANTED; and be it further,

        ORDERED that the Complaint filed by CannaMED Pharmaceuticals, LLC is
DISMISSED.

_____

Circuit Court Judge

22