Filing # 48670062 E-Filed 11/08/2016 06:02:05 PM

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

CASE NO.:

NEW WAVE LENDERS, (2015-B) LP,
a Delaware limited partnership,

    Plaintiff,

v.

CHANCE & ANTHEM, LLC., a Florida
limited liability Company, JEFFREY M.
SISKIND, ABK SOUTH PROPERTIES, LLC.,
a Florida limited liability Company, 3GEN VC, LLC.
a Florida limited liability Company, N & P CONSTRUCTION
AND DEVELOPMENT, INC., a Florida corporation,
PTM ELECTRIC, INC., a Florida corporation, and
DAVID FIORE,

    Defendants.

_____/

## COMPLAINT FOR MORTGAGE FORECLOSURE AND DAMAGES

Plaintiff NEW WAVE LENDERS (2015-B) LP, through its undersigned counsel, sues

Defendants CHANCE & ANTHEM, LLC, JEFFREY M. SISKIND, ABK SOUTH PROPERTIES,

LLC., 3GEN VC, LLC., N & P CONSTRUCTION AND DEVELOPMENT, INC., PTM

ELECTRIC, INC. and UNKNOWN PARTIES OR TENANTS IN POSSESSION, alleges:

### Parties, Jurisdiction and Venue

1.    This action to foreclose a mortgage on real property located in Walton County,

Florida, and for an action damages more than $15,000.00, exclusive of costs, prejudgment interest and

attorney's fees.

2.    Plaintiff NEW WAVE LENDERS, LP ("Plaintiff" or "NEW WAVE") is a Delaware

limited partnership authorized to do business in the State of Florida which maintains an office for

the regular and customary transaction of its business in Miami-Dade County, Florida..

3.    Defendant CHANCE & ANTHEM, LLC., ("CHANCE") is a Florida limited liability

company which maintains as office for the regular and customary transaction of its business in Palm

Beach County, Florida.

LAW OFFICE OF KEITH D. DIAMOND, P.A.
3440 HOLLYWOOD BLVD., SUITE 415, HOLLYWOOD, FL 33021 ● (954) 618-1008

NOT A CERTIFIED COPY

**PLAINTIFF'S**
TRIAL EXHIBIT
**T-125(A)**

4.      Defendant JEFFREY M. SISKIND ("SISKIND") is a resident of Palm Beach County, Florida and *sui juris.*

5.      Defendant ABK SOUTH PROPERTIES, LLC. ("ABK") is a Florida limited liability company who acted as a lender on a property located in Palm Beach  County, Florida.

6.      Defendant 3GEN VC, LLC., ("3GEN") is a Florida limited liability company who acted as a lender on a property located in Palm Beach  County, Florida..

7.      Defendant N & P CONSTRUCTION AND DEVELOPMENT, INC. ("N & P") is a Florida corporation which maintains as office  for the regular and customary transaction of its business in Palm Beach  County, Florida.

8.      Defendant PTM ELECTRIC, INC , ("PTM") is a Florida corporation which maintains as office in Loxahatchee, Florida and conducts business in Palm Beach County, Florida.

9.      Defendant DAVID FIORE  is a resident of Florida and *sui juris.*

10.      Venue is proper in Palm Beach County, Florida because the real property on which the subject mortgage is sought to be foreclosed located in Palm Beach County, and all causes of action alleged herein accrued in Palm Beach County, Florida.

#### General Allegations

11.      On or about November 6, 2015, Defendants CHANCE and SISKIND (hereinafter also collectively referred to as "Borrowers") executed and delivered a Promissory Note in the original principal sum of $ 1,200 (the "Note") to New Wave Loans Residential, LLC. (SERIES-SISKIND) (hereinafter collectively referred to as "NEW WAVE RESIDENTIAL"), along with a Mortgage securing repayment of the Note. A true and correct copy of the  Note is attached hereto as Exhibit "A." A true and correct copy of the Mortgage, which was recorded in Official Records Book 2 5926 Page 1809 of the Public Records of Palm Beach  County, Florida, is attached hereto as Exhibit "B."

12.      The  parcel of Palm Beach County real property secured by the Mortgage (the "Subject Property")  is legally described as follows:

> Lot 2, Southfields - Phase I of Palm Beach Polo and County Club- Wellington
> Country Place - P.U.D., according to the map or plat thereof, as recorded in Plat

Book 39, Pages 19 through 22, inclusive, of the Public Records of Palm Beach County, Florida.

Parcel ID# 73-41-44-21-03-000-0020.

13.    On or about November 6, 2015 the Defendant, CHANCE executed and delivered to the NEW WAVE RESIDENTIAL an Assignment of Rents, Leases and Profits, which was recorded in OR Book 27926, Page 1833 of the Public Records of Palm Beach County, Florida. A copy of the Assignment of Rents, Leases and Profits is attached hereto as Exhibit "C".

14.    On or about November 6, 2015 the Defendant, CHANCE executed and delivered to the NEW WAVE RESIDENTIAL an Adjustable Rate Rider. A copy of the Adjustable Rate Rider is attached hereto as Exhibit "D".

15.    On or about November 6, 2015 the Defendant, Chance, executed and delivered to the NEW WAVE RESIDENTIAL an 1-4 Family Rider (Assignment of Rents). A copy of the 1-4 Family Rider (Assignment of Rents) is attached hereto as Exhibit "E".

16.    On or about November 6, 2015 the Defendant, CHANCE executed and delivered to the NEW WAVE RESIDENTIAL a Planned Unit Development Rider. A copy of the Planned Unit Development Rider is attached hereto as Exhibit "F".

17.    On or about November 23, 2015, NEW WAVE RESIDENTIAL executed and delivered to NEW WAVE an Assignment of Mortgage and Other Loan Documents (the "Assignment"), which was recorded in Official Records Book 28011, Page 1154, of the Public Records of Palm Beach County, Florida, and is attached hereto as Exhibit "G".

18.    As at the time of commencement of this proceeding, NEW WAVE owns and is the holder of the Note and the Mortgage.

NEW WAVE has retained the undersigned law firm to enforce his rights in this action and Plaintiff is obligated to pay the firm a reasonable fee for its services.

20.    All conditions precedent to bringing this action, if any, have occurred, been satisfied or otherwise waived.

## COUNT I
## MORTGAGE FORECLOSURE

21.     NEW WAVE realleges Paragraphs 1 through 20 of this Complaint as if fully stated herein.

22.     The Note and the Mortgage are in default due to, among other things, allowing secondary financing on the property in violation of the mortgage. A true and correct copy of the Notice of Default and Acceleration on Mortgage is attached hereto as Exhibit "H".

23.     The Note and the Mortgage are in default due to, among other things, the ~~ure of CHANCE to make payments due on August 6, 2016 and all subsequent payment~ ~s doing major construction at the property in violation of the mortgage.

24.     Despite demand, Borrowers have failed and refuse~ ~ve the secondary financing.

25.     Borrowers have also failed and refused to pay t~ ~in~ the sums due under the Note and the Mortgage and to restore the property under con~ ~cceptable to NEW WAVE.

26.     As a result of the Default Notice ar~ ~rowers' failure to cure same, Plaintiff has accelerated all sums due under the note~ ~rtgage and has declared, and herein again declares, the full amount payable under ~ne~ ~and the Mortgage to be due.

27.     Borrowers owe Pla~ ~the principal sum of $812,500 under the Note and the Mortgage, plus interest in the a~ ~o~ $55,808.59 as of November 7, 2016, per diem $558.59, late fees, all advances there~ ~id by the Plaintiff, and all attorneys fees and costs incurred by Plaintiff, along wit~ ~ch expenses for ascertaining the necessary parties to this suit and any and all other e~ en~ ~ith regard to the Subject Property as well as the cost of collection, all of which su~ ~s ~ured by the Mortgage and Note..

28.     The Note and the Mortgage provide that Plaintiff is entitled to recover his attorneys' fees inc~rred in collecting this debt.

29.     The Subject Property is now owned by Defendant CHANCE, who acquired ownership of the Subject Property pursuant to that certain Special Warranty Deed recorded in Official Records Book 27898, Page 740, of the Public Records of Palm Beach County, Florida. However, any claim or interest of Defendant CHANCE in and to the Subject Property is subordinate

and inferior to Plaintiff's interest in and to the Subject Property.

30.    The Defendant, 3GEN, may claim some interest in the Subject Property by virtue of a Mortgage dated August 2, 2016 which was recorded on August 3, 2016 in O.R. Book 28480, Page 844 of the Public Records of Palm Beach County, Florida. However, any claim or interest of Defendant 3GEN is subordinate and inferior to Plaintiff's interest in and to the Subject Property.

31.    The Defendant, ABK may claim some interest in the Subject Property ~~~ 'ue of a Mortgage dated March 23, 2016 which was recorded on March 30, 2016 in O~ ) ~28193, Page 103 of the Public Records of Palm Beach County, Florida. However, ~~ ~~~ ~or interest of Defendant ABK is subordinate and inferior to Plaintiff's interest in ar ~~~ ~ubject Property.

32.    The Defendant, N&P may claim some interest in ~~~ ~~~ct Property by virtue of a Notice of Commencement dated November 23, 2015 which ~~ ~rded on November 25, 2015 in O.R. Book 27949, Page 1158 of the Public Records o~ ~m Beach County, Florida. However, any claim or interest of Defendant N&P is subord'~~~ ~ inferior to Plaintiff's interest in and to the Subject Property.

33.    The Defendant, PTM m~~~ ~ some interest in the Subject Property by virtue of a Notice of Commencement dated J~ ~, 2016 which was recorded on January 5, 2016 in O.R. Book 28025, Page 1088 of the ~~ Records of Palm Beach County, Florida. However, any claim or interest of Defendant ~~~ ~ subordinate and inferior to Plaintiff's interest in and to the Subject Property.

34.    The D~ ~ant, DAVID FIORE may claim some interest in the Subject Property by virtue of ~~~ ~~~~ Lis Pendens dated August 5, 2016 which was recorded on August 9, 2016 in O.R. Boo~ ~92, Page 344 of the Public Records of Palm Beach County, Florida. However, any claim o~ interest of Defendant DAVID FIORE is subordinate and inferior to Plaintiff's interest in and to the Subject Property.

35.    Defendants, All Unknown Parties Claiming Interest By, Through, Under or Against A Named Defendant To This Action, Or Having or Claiming To Have, Any Right, Title or Interest in the Property Herein Described or Tenants in Possession, being in possession of the Subject

Property, may claim some interest in and to the Subject Property by virtue of their occupancy therein, but any such claim or interest is subordinate and inferior to Plaintiff's interest in and to the Subject Property.

        **WHEREFORE**, Plaintiff demands judgment:

(a)     foreclosing the Mortgage;

(b)     providing that if the sum due and owing to Plaintiff is not paid within the ___ set by the Court, that the Subject Property be sold to satisfy Plaintiff's claim and, if the pro___ e ___ the sale are insufficient to pay Plaintiff's claim, that a deficiency judgment be enter___ fa___ or of Plaintiff and against Borrower/Defendant CHANCE & ANTHEM, LLC. ;

(c)     providing that Defendants, and all parties claiming by, ___ gh or under Defendants, be forever barred and foreclosed of any right, title, claim or i___ ___ ___ and to the Subject Property;

(d)     awarding Plaintiff his costs, expenses a___d ___ ___ys' fees; and

(e)     for such other and further relief as ___ ___ ___ proper under the circumstances.

## COUNT ___
## BREACH O___ ___ ___SSORY NOTE

36.     Plaintiff realleges Par___ ___ns 1 through 20 of this Complaint as if fully stated herein.

37.     This is an actio___ ___or ___ ___ages against the Borrowers/Defendants CHANCE and SISKIND, jointly and seve___ ___ ___reach of the Note.

38.     Plainti___ ow___ ___d holds the Note.

39.     B___ ___ ___have breached and are in default under the Note by their failure to make payments d___ ___ ___gust 6, 2016 and all payments thereafter.

___     ___s a direct and proximate result of Borrowers' default under the Note, Plaintiff has susta___ ___amages.

41.     Borrowers owe Plaintiff the principal sum of $812,500 due under the Note, plus interest in the amount of $55,808.59 as of November 7, 2016, per diem $558.59, late fees, title search expenses for ascertaining the necessary parties to this suit and any and all other expenses with regard to the Subject Property.

**WHEREFORE,** Plaintiff demands judgment against Borrowers/Defendants CHANCE & ANTHEM, llc. and JEFFREY SISKIND, jointly and severally, for:

(a)     compensatory damages;

(b)     prejudgment interest;

(c)     attorneys' fees, costs and expenses; and

(d)     for such other and further relief as is just and proper under the circums...

Dated this 8th day of November, 2016.

KEITH D. DIAMOND, P.A.
Attorneys for Plaintiff
3440 Hollywood Boulevard, S...
Hollywood, Florida 33021
Telephone:     (954) 618-...
Telefax:     (954) 3...

By:     /s/ Kei... ...mond
Keith D. ... ...ond
Fl... ... N... 7086150

NOT A CERTIFIED COPY

## INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
### (One-Year-Treasury-Index---Rate-Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

November 6, 2015                                3445 Santa Barbara Drive, Wellington, ____ __4__

[Pr___ __A__ __s]

### 1.     BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $812,___ (this amount is called "Principal"), plus interest, to the order of Lender. Lender is New Wave Loans R____ __al, LLC (Series: Siskind), a Delaware limited liability company. I will make all payments under this ___ in t__ Form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or a___ ___e w__ takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note ____der.

### 2.     INTEREST

Interest will be charged on unpaid principal u___ th__ ___ll amount of Principal has been paid. I will pay interest at a yearly rate of 9.000%. The interest rate I w___ ___iay change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 ___ ___ection 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of th__ Not__

### 3.     PAYMENTS
#### (A) Time and Place of Payn___ ts

I will make a paymen___ n___ ___ day of every month, beginning on January 1, 2016. Before the Maturity Date (as hereinafter defined__ ___ayment will consist only of the interest due on the unpaid principal balance of this Note.

Each mont__ ___ will be applied as of its scheduled due date. If, on December 1, 2018, I still owe amounts under thi__ ___ill pay those amounts in full on that date, which is called the "Maturity Date."

I will ___ ___y monthly payments at New Wave Loans Residential LLC, 1835 NE Miami Gardens Drive, #451, N___ ___an ___each, FL 33179 or at a different place if required by the Note Holder.

#### ___ Amount of My Initial Monthly Payments

Ea___ ___y initial monthly payments will be in the amount of U.S. $6,093.75. This amount may change.

#### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

### 4.     ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

NMLS# 994227

Exhibit "A"

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of December, 2016, and the adjustable interest rate I will pay may change on that day every 3rd month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The Index is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 6? days b. each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is ed upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding 8.740 percentage points (8.740%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in (D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.000% or less than 9.000%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 3.00%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those

changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note . . may choose to make this refund by reducing the Principal I owe under this Note or by making a direct p . . . . me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment b . . . . . . en (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The ar . . . o . . . . charge will be five percent (5%) of my overdue payment of interest, during the period when m . p . . . . . . . . interest only, and of principal and interest thereafter. I will pay this late charge promptly but only o . . . . . . ca . . . . ate payment.

(B) Default
If I do not pay the full amount of each monthly payment o . . . . . . it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send . . . . . . it . . . notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may req . . . m . . . . y immediately the full amount of Principal that has not been paid and all the interest that I owe on . . . . . u . . . That date must be at least 30 days after the date on which the notice is mailed to me or delivered b . . . . . . . . . is.

(D) No Waiver By Note Holde . .

Even if, at a time when I . . . . . . . . . . . . fault, the Note Holder does not require me to pay immediately in full as described above, the Note Hold . . . . . . . . ave the right to do so if I am in default at a later time.

(E) Payment . . . . Note . . . . . . er's Costs and Expenses

If the N . . . . . . . . . . . . . has required me to pay immediately in full as described above, the Note Holder will have the right . . . be . . . . . . back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited b . . . . . . . ble law. Those expenses include, for example, reasonable attorneys' fees.

(F . . . . . . . ult Rate

h . . . ddition to all other rights contained in this Note, if a default occurs and as long as a default continues, al . . . . . . . . nding obligations shall bear interest at the maximum legal rate of interest imposed on all principal in defau . . . In Florida, the maximum lawful rate of interest is eighteen percent (18%) per annum simple interest for loans of $500,000 or less and twenty five percent (25%) per annum for loans in excess of $500,000 (Florida Statutes Sections 687.03 and 687.071) ("Default Rate"). The Default Rate shall also apply from acceleration until the Obligations or any judgment thereon is paid in full.

8.    GIVING OF NOTICES

NMLS# 994227

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address..

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

NOT A CERTIFIED COPY

NMLS# 994227

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Chance & Anthem LLC, a Florida limited liability company

By: _____

Jeffrey M. Siskind, Manager / Vice                    Borrower

_____

Jeffrey M. Siskind                                      Borrower

NOT A CERTIFIED COPY

NOT ACCEPTED

NMLS# 994227

CFN 20150417806
OR BK 27926 PG 1809
RECORDED 11/13/2015 10:56:39
Palm Beach County, Florida
AMT 812,500.00
MTG DOC 2,843.75
INTANGIBLE 1,625.00
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 1809-1832; (24Pgs)

RECORD AND RETURN TO:

New Wave Loans Residential, LLC
1835 NE Miami Gardens Drive, Suite 451
North Miami Beach, Florida 33179

THIS INSTRUMENT PREPARED BY:
Staci J. Rutman, Esq.
Law Office of Staci J. Rutman P.A.
500 South Pointe Drive, Suite 230
Miami Beach, FL 33139

$2.6.15-0689A$

[Space above line reserved for recording office use]

## MORTGAGE

Balloon Mortgage – This Mortgage has a Balloon Payment. The ~~lo~~ ~~ayment~~ will be due on December 1, 2018 in the amount of $812,500.00 plus accum~~...~~ ~~est.~~

DEFINITIONS

Words in multiple sections of this document are defined ~~...~~ ~~...~~ ~~...er~~ words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words ~~...~~ ~~...~~ ~~...document~~ are also provided in Section 16.

(A) "Security Instrument" means this document, w~~...~~ ~~is~~ ~~...~~ November 6, 2015, together with all Riders to this document.
(B) "Borrower" is Chance & Anthem LLC, ~~...~~ ~~...ited~~ liability company. Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is New Wave Loans Res ~~...~~ LLC (Series: Siskind), a Delaware limited liability company. Lender's address is 1835 NE Miami ~~...~~ ~~...rde~~ ~~...~~ ~~...ve~~, Suite 451, North Miami Beach, Florida 33179. Lender is the mortgagee under this Security Inst~~...~~
(D) "Note" means the promis~~...~~ ~~...ed~~ by Borrower and dated of even date herewith. The Note states that Borrower owes Lender EIG~~...~~ ~~...UN...ED~~ TWELVE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($812,500.00) plus intere~~...~~ ~~...~~ ~~...has~~ promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than Dece~~...~~ ~~...er~~ 1~~...~~ ~~...~~.
(E) "Property" m~~...~~ ~~...erty~~ that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" mea~~...~~ ~~...videnced~~ by the Note, plus interest, any prepayment charges and late charges due under the Note, and all s~~...~~ns ~~...~~ ~~...er~~ this Security Instrument, plus interest.
(G) "Ride~~...~~ ~~...ns...~~ Riders to this Security Instrument that are executed by Borrower. The following Riders are to be exec~~...~~ ~~...~~ ~~...by~~ ~~...~~ ~~...wer~~ [check box as applicable]:

| | | |
|---|---|---|
| ☐ Ad~~...~~able Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ ~~...~~loon Rider | X Planned Unit Development Rider | ☐ Other(s)-Service of Process |
| ☐ ~~...~~-4 Family Rider | ☐ Biweekly Payment Rider | |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENTForm 3010   1/01  *(page 1 of 12pages)* NMLS# 994227

NOT CERTIFIED COPY

Exhibit "B"

(I) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "**Escrow Items**" means those items that are described in Section 3.

(L) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in "⋯⋯ of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on ⋯⋯ ⋯an.

(N) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under ⋯ N ⋯ lus (ii) any amounts under Section 3 of this Security Instrument.

(O) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) ⋯ ⋯'s ⋯ lementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to t⋯ ⋯ ⋯dditional or successor legislation or regulation that governs the same subject matter. As used in this Se⋯ ⋯strument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally rel⋯ d ⋯ ⋯ loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Pr⋯ ⋯ whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instr⋯⋯.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment ⋯ th⋯ ⋯an, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borro⋯ ⋯ ⋯nants and agreements under this Security Instrument and the Note. For this purpose, Borrower does he⋯ ⋯m⋯ ⋯ge, grant and convey to Lender, the following described property located in the County of Palm Beach:

3445 Santa P ⋯ ⋯ra ⋯ ⋯/e, Wellington, FL 33414
- See Exhibl⋯ "A⋯ ⋯d hereto for Legal Description.

TOGETHER WITH all the impr⋯ ⋯ent ⋯ow or hereafter erected on the property, and all easements, appurtenances, and fixtures now or herea⋯te ⋯ ⋯ f the property. All replacements and additions shall also be covered by this Security Instrument. All of ⋯⋯ ⋯go. ⋯ is referred to in this Security Instrument as the "Property."

BORROWER COVF⋯ N⋯ ⋯ ⋯ Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and conve⋯ ⋯⋯⋯ ⋯y and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and ⋯ ll ⋯⋯ ⋯enerally the title to the Property against all claims and demands, subject to any encumbrances of recr⋯⋯

THIS ⋯ ⋯C ⋯ ⋯NSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited ⋯ ⋯ne ⋯⋯ jurisdiction to constitute a uniform security instrument covering real property.

⋯ ⋯ R ⋯ COVENANTS. Borrower and Lender covenant and agree as follows:

⋯ ⋯ Pa⋯ment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall ⋯av when ⋯ ⋯ the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late ch⋯ ⋯ ⋯ ⋯c under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the N ⋯te and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

NOT A CERTIFIED COPY

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instru___ or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, ___ accepted and applied by Lender shall be applied in the following order of priority: (a) interest due un___ (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applie___ Payment in the order in which it became due. Any remaining amounts shall be applied first to late ___ paid to any other amounts due under this Security Instrument, and then to reduce the principal balance of ___

If Lender receives a payment from Borrower for a delinquent Periodic Payment ___ includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent paym___ ___ charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received f___ borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To ___ at that any excess exists after the payment is applied to the full payment of one or more Periodic Payment, ___ is may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment ___ then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneou___ is to principal due under the Note shall not extend or postpone the due date, or change the amount, of the ___ ayments.

3. **Funds for Escrow Items.** Borrower shall pay to Lende___ ___ Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to pro___ ___ ayment of amounts due for: (a) taxes and assessments and other items which can attain priority over ___ Sec___ instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Pro___ ___; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance p___ ___, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premium ___ ___ance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time ___ the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if a___, ___ escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptl___ ___ Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Es___ ___ ___ ms unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may ___ Bo___ ___wer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may ___ ___ing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts d___ ___ ___row Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furni___ ___ receipts evidencing such payment within such time period as Lender may require. Borrower's obligation t___ ___ ___ ayments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contai___ ___ ___ Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is oblig___ ___ ___ scrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, L___ ___ ___ay exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated un___ ___ion ___ to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at a___ ___ ime ___ notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender ___ ___ ___ and in such amounts, that are then required under this Section 3.

___ ___nde___ may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds ___ the time ___ pecified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. L___ ___ ll estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of futur___ Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010   1/01  *(page 3 of 12 pages)* NMLS# 994227

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributab... Property which can attain priority over this Security Instrument, leasehold payments or ground rents on th... ..., any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are ... .ns, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrumen... 'ess  rower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to  en...  only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defend...  st enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforc... n...  lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secu...  om ...  holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If L... etermines that any part of the Property is subject to a lien which can attain priority over this Security Instr... nt,  .nder may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice ...  en,  .rower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a r...  'tat...  verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the im...  .ts now existing or hereafter erected on the Property insured against loss by fire, hazards included with...  'e ...  'extended coverage," and any other hazards including, but not limited to, earthquakes and floods, fo...  'hi... ...pder requires insurance. This insurance shall be maintained in the amounts (including deductible levels) a...  the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change d...  in...  .m of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to ,...  'ight to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may requ...  .ow...  'to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, cer... 'on. .d tracking services; or (b) a one-time charge for flood zone determination and certification services an...  s... .uent charges each time remappings or similar changes occur which reasonably might affect such determi... 'o... .tification. Borrower shall also be responsible for the payment of any fees imposed by the Federal E...  'anagement Agency in connection with the review of any flood zone determination resulting from ...  bje...  by Borrower.

If Borrower fails ...  ...y of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Bo...  .wer...  ense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore...  ' ...  .ge shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or th...  ....t the Property, against any risk, hazard or liability and might provide greater or lesser coverage than ...  'as... ...sly in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might signif...  'ex...  .d the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under thi...  'do...  .all become additional debt of Borrower secured by this Security Instrument. These amounts shall bear i...  .n...  .t. Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Le...  Bor...wer requesting payment. All insurance policies required by Lender and renewals of such policies shall be subject to ...  .nder's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as n...  .e and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lend... requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010   1/01  *(page 4 of 12 pages)* NMLS# 994227

Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance c____ ha_ offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin whe_ ___ __ is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrowe_ __ _by ____ns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts un___ __no _ _ie Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refu_ o_ __ _d premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights a_ _____able to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Pro __ __ _ _y amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borro _____principal residence within 60 days after the execution of this Security Instrument and shall continue to occ_oy __ __rty as Borrower's principal residence for at least one year after the date of occupancy, unless Lender othe___ __agi__ __ in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist wh_ h _ _eyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Prop__ In__ __tions.** Borrower shall not destroy, damage or impair the Property, allow the Prop __ __ deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Prope_ _\ __ower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in valu_ __ _to __ondition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feas__ __ _b_ __wer shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or c__ __nation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be r __ __ble __ repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may __disb __ __oceeds for the repairs and restoration in a single payment or in a series of progress payments as the work i_ __om_ __lete__ _f the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower i_ __ __ __liev__ __ of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may m___ __ __ son __ le entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the in__el __ _ improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an int___ __ins_ __ion specifying such reasonable cause.

8. **Borrower's L___ __ _ ___tion.** Borrower shall be in default if, during the Loan application process, Borrower or any person _r enti__ __ting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, mis! __ _ __accurate information or statements to Lender (or failed to provide Lender with material information) in c___ _ __ __an the Loan. Material representations include, but are not limited to, representations concerning Bor __we_ __upancy of the Property as Borrower's principal residence.

9. __ __tio_ of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borr_ _ _fail_ perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proce__ __in_ __ght significantly affect Lender's interest in the Property and/or rights under this Security Instrument (s_ __ __oceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain __ _ _ __ __nority ov__ this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Le __ __ _ __ay do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights unde/ this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENTForm 3010   1/01   *(page 5 of 12pages)* NMLS# 994227

have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has -- if any -- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010  1/01  *(page 6 of 12 pages)* NMLS# 994227

to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds s  be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, p  Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair ma    the Property immediately before the partial taking, destruction, or loss in value is equal to or greater tha     of the sums secured by this Security Instrument immediately before the partial taking, destruction, o    , unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrumer       uced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total     of   sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fa  n       e of the Property immediately before the partial taking, destruction, or loss in value. Any balance sha     Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in v       fair market value of the Property immediately before the partial taking, destruction, or loss in value is less      mount of the sums secured immediately before the partial taking, destruction, or loss in value, unless        id Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by       rity Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice     Le     to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a cl          amages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is au    ize      ollect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums   ur     this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borro       ellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proc

Borrower shall be in default if any action or      ding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Prope     or oth  material impairment of Lender's interest in the Property or rights under this Security Instrument. Bor          re such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the act        ceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property c  b     ial impairment of Lender's interest in the Property or rights under this Security Instrument. The proceed          d or claim for damages that are attributable to the impairment of Lender's interest in the Property are her    as     and shall be paid to Lender.

All Miscellaneous          that are not applied to restoration or repair of the Property shall be applied in the order provided for in Se    on

**12. Borrow         eleased; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of am         the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Intere        ower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.          tha    not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to e    nd f     or payment or otherwise modify amortization of the sums secured by this Security Instrument by reason   t        m  ad made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Len     exe   sing any right or remedy including, without limitation, Lender's acceptance of payments from third persons, e    es or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver o        ide the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010   1/01 *(page 7 of 12 pages)* NMLS# 994227

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be constru~~~ ~ a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this ~~~~ Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpre~~ ~~ ~he interest or other loan charges collected or to be collected in connection with the Loan exceed the per~~~~ ~h~, then: (a) such loan charge shall be reduced by the amount necessary to reduce the charge to the perm~~ ~lim~ ~~d (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to~ ~o~ ~ender may choose to make this refund by reducing the principal owed under the Note or by making a di~~ ~~~~~ment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without ~ ~ ~ ~t charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance ~ ~ ~ su~~ ~efund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have~ ~ ~ out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection wit~ ~ ~ S ~~rity Instrument must be in writing. Any notice to Borrower shall be served upon Borrower's appointed a~ ~ ~r ~ower's Agent") as set forth in that certain Appointment of Agent dated of even date herewith ("Appoin~ ~ ~ ~Agent"), in connection with this Security Instrument shall be deemed to have been given to Borrower's ~ ~ ~n mailed by first class mail or when actually delivered to Borrower's Agent notice address as set forth in ~ ~A~ ~~nment of Agent, if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowe~ ~ ~ ~pplicable Law expressly requires otherwise. The notice address shall be the address as set forth in the ~ ~nt~ of Agent unless Borrower has designated a substitute notice address by notice to Lender. Borrower sh ~ ~ro~ ~ly notify Lender of change to the Borrower's Agent or the Borrower's Agent's address. If Lender specifies ~ ~ ~ure for reporting Borrower's change of address, then Borrower shall only report a change of address thr~ ~ ~ha~ ~cified procedure. There may be only one designated notice address under this Security Instrument at ~o~ o~ ~ ~ Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's addre~ s~ ~d he~~in unless Lender has designated another address by notice to Borrower. Any notice in connection with thi~ ~~rit~ ~strument shall not be deemed to have been given to Lender until actually received by Lender. If any noti~e ~ ~ by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will ~~ ~ ~h~ corresponding requirement under this Security Instrument.

16. **Governing Law; S ~ ~ ~ Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the ' ~ di~ ~ ~ which the Property is located. All rights and obligations contained in this Security Instrument are sub~ ~ ~ ~uirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the ~ ~ies ~ ~ce by contract or it might be silent, but such silence shall not be construed as a prohibition against a~ ~ ~ ~y contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with ~ ~ ~ ~aw, such conflict shall not affect other provisions of this Security Instrument or the Note which can be gi~en ~ ~~~ithout the conflicting provision.

As ~ ~ th~ ~ecurity Instrument: (a) words of the masculine gender shall mean and include corresponding neuter wo~ ~ ~ w ~ ~of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c~ ~h~ ~ ~ ~ ~ay" gives sole discretion without any obligation to take any action.

~ ~. ~orrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

~ ~. ~ransfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in th~ ~ ~.~y" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests trans.~red in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010 1/01 *(page 8 of 12pages)* NMLS# 994227

must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

  19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenant or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

  20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

  Neither Lender nor Borrower may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

  21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products):

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit o~ her action by any governmental or regulatory agency or private party involving the Property and any Hazardous Subs. Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, inclu.... .... .... limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (s).... ..... ion caused by the presence, use or release of a Hazardous Substance which adversely affects the value .... P..... .cy. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party .... a.... .emoval or other remediation of any Hazardous Substance affecting the Property is necessary, Borrowe th.... .p.tly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall cre..... .'obn.ation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further coven.....t a.... .. as follows:

22. Acceleration; Remedies. Lender shall give notice to Borra.....r.....dr.... .o acceleration following Borrower's breach of any covenant or agreement in this Security Instrum.... .(b..... .t prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice sh..... ...... y: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from.... .d..... .he notice is given to Borrower, by which the default must be cured; and (d) that failure to cure t.... .de..... .n or before the date specified in the notice may result in acceleration of the sums secured by.... .....rity Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall f..... .ev..... .a Borrower of the right to reinstate after acceleration and the right to assert in the foreclosur.....ro.....ng the non-existence of a default or any other defense of Borrower to acceleration and foreclosure..... .de..ult is not cured on or before the date specified in the notice, Lender at its option may require im.....la.....ment in full of all sums secured by this Security Instrument without further demand and may for..... .his Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incur..... .n p..... .ing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys'..... .ne.....sts of title evidence.

23. Release. Upon payment of a.....b..... .ured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any r.....rda..... costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is p.....d party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' F..... .used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate 'ou..... .y attorneys' fees incurred in a bankruptcy proceeding.

25. Jury 'T.....'iver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim.....claim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Sec.....trument or the Note.

**Balloon Mortgage – This Mortgage has a Balloon Payment. The Balloon Payment will be due on December 1, 2018 in the amount of $812,500.00 plus accumulated interest.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered, in the presence of:

WITNESSES:

Print name: NICole HUIST

Print name: M. A. MCDANIEL

BORROWER:

Chance & Anthem LLC, a Flor~~~~ ~~~~ ~~~~liability company

By:
Jeffrey M. Sisk~~~~ ~~~~ing Member

STATE OF FLORIDA )
) SS
COUNTY OF Palm Beach )

The foregoing instrument was acknowledged b~~~~ ~~~~ this 6th day of November, 2015, by Jeffrey M. Sisklud, Managing Member of Chance & Anth~~~~ ~~~~orida limited liability company, who is [ ] personally known to me or [✗] produced FL Drives ~~~~ ~~~~ntification.

M A MCDANIEL
MY COMMISSION #FFC~~~~ ~~~~
My commission expires:
EXPIRES August 1~~~~
(407) 398-0153 FloridaNotarys~~~~ ~~~~

Name: M. A. MCDANIEL
Notary Public, State of FL
Commission No. FFEC(2 473C

NOT A CERTIFIED COPY

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENTForm 3010   1/01   *(page 11 of 12pages)* NMLS# 994227

## EXHIBIT A

Lot 2, Southfields – Phase I of Palm Beach Polo and Country Club- Wellington Country Place – P.U.D., according to the map or plat thereof, as recorded in Plat Book 39, Page(s) 19 through 22, inclusive, of the Public Records of Palm Beach County, Florida.

Parcel ID#: 73-41-44-21-03-000-0020

# 1-4 FAMILY RIDER
(Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[the "Property Address"]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B.    USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C.    SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D.    RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

E.    "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F.    BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G.    ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H.    ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3170    1/01 *(page 1 of 2 pages)*

applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and         performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take         or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's         or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents         Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I.    CROSS-DEFAULT PROVISION. Borrower's default or breach under any         ement in which Lender has an interest shall be a breach under the Security Instrument and Lender r        any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants         this 1-4 Family Rider.

Chance & Anthem LLC, a Florida         liability company           -Borrower

By:
Jeffrey M. Siskind,         Member

NOT A CERTIFIED COPY

## ADJUSTABLE RATE RIDER
### (1 Year Treasury Index -- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by Chance & Anthem LLC, a Florida limited liability company (the "Borrower") to ___ re Borrower's Adjustable Rate Note (the "Note") to New Wave Loans Residential, LLC (Series: Siskind), a Delaw. limited liability company (the "Lender") of the same date and covering the property described in the Security n ___ ___ and located at:

### 3445 Santa Barbara Drive, Wellington, FL 33414
[the "Property Address"]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES ___ ___ TEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS ___ MOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ___ E AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and ___ ___ ts made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT C ___ ___ 'G ___

The Note provides for an initial interest rate of 9.000% ___ ___ provides for changes in the interest rate and the monthly payments as follows:

INTEREST RATE AND MONTHLY PAYM ___ 'T ___ NGES

(A) Change Dates

The interest rate I will pay may change or ___ ___ st ___ of December 1, 2016 and on that day every 3rd month thereafter. Each date on which my interest rate ___ ___ e is called a "Change Date."

(B) The Index

Beginning with the first Change ___ ___ ___ ___ rest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury se ___ ___ ljusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most r ___ ___ ___ de ___ gure available as of the date 60 days before each Change Date is called the "Current Index."

If the Index is no lor ___ ___ va. ___ , the Note Holder will choose a new Index which is based upon comparable information. The Note Hr ___ ___ ___ me notice of this choice.

(C) Calculatir ___ of C. ___ s

Before eacl ___ ___ ___ ___ ite, the Note Holder will calculate my new interest rate by adding 8.740 percentage points (8.740%) t ___ ___ Index. The Note Holder will then round the result of this addition to the nearest 0.125%, Subject to the li ___ 'ts ___ ___ ___ n Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

T ___ Not ___ ___ ___ ider will then determine the amount of the monthly payment that would be sufficient to repay the unpair ___ ___ ___ ___ at I am expected to owe at the Change Date in full on the maturity date at my new interest rate in su ___ ___ lly equal payments. The result of this calculation will be the new amount of my monthly payment.

(i ___ ___ Limits on Interest Rate Changes

___ he interest rate I am required to pay at the first Change Date will not be greater than 11.000% or less than 9.000%. Thereafter, my interest rate will never be increased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 13.000%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

NMLS# 994227

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:
Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

BORROWER:

Chance & Anthem, LLC, Florida limited liability company

By: _____
Jeffrey Siskind, Managing Member

NOT A CERTIFIED COPY

NMLS# 994227

PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, ~~~~~ with other such parcels and certain common areas and facilities, as described in the Declaration of Co~~in~~ ~~~~ .rictions & Easements for the Planned Unit Development filed in the Public Records of Pal~~~~~~ ~~~~~ County, (the "Declaration").

The Property is a part of a planned unit development know
SOUTHFIELDS PALM BEACH POLO and COUNTRY CLUB HOMEO~~~~~ ~~~~. ~~~~ASSOCIATION, INC.
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the ~~~~~~ ~~~ association or equivalent entity owning or managing the common areas and facilities of the PUD (~~~~ ~~~~~ Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agree~~~~~ ~~.de in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform ~~~~~ ~~rrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are ~~~~ ~~~~~.laration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the ~~~~~~ Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower sh~~~~ ~~~~~~ntly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So lon~~ a~ ~~~~~ers Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" polic~~ ~~~rin~ ~~e Property which is satisfactory to Lender and which provides insurance coverage in the amounts ~~~~~~~~~~~ ~~ductible levels), for the periods, and against loss by fire, hazards included within the term "exten~~~~ ~~cov~~~~~" and any other hazards, including, but not limited to, earthquakes and floods, for which Lender re~~~~ ~~~~nce, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yea~~~ ~~~~~~m installments for property insurance on the Property; and (ii) Borrower's obligation under Section ~~ 'o ~~~~~~~ property insurance coverage on the Property is deemed satisfied to the extent that the required co~~~~~ ~~provided by the Owners Association policy.

What~~ ~~~~~~~ ~~ .res as a condition of this waiver can change during the term of the loan.
Be~~~~~ ~~a~ give Lender prompt notice of any lapse in required property insurance coverage provided by the master or ~~nket policy.

In th~ event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of prof management and assumption of self-management of the Owners Association; or (iv) any action which if hav the effect of rendering the public liability insurance coverage maintained by the Owners Association u to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender p them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Br o ed by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these a ts bear interest from the date of disbursement at the Note rate and shall be payable, with interest, from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenant ta in this PUD Rider.

Chance & Anthem LLC, a Florida limited liability company

By: _____
    Jeffrey M. Siskind, Managing Member

NOT A CERTIFIED COPY

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01 *(page 2 of 2 pages)*
NMLS# 994227

PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of Palm Beach County, (the "Declaration").

The Property is a part of a planned unit development known
PALM BEACH POLO and COUNTRY CLUB PROPERTY OWNERS ASSOCIATION, INC.
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of prof management and assumption of self-management of the Owners Association; or (iv) any action which  ̄ald ha the effect of rendering the public liability insurance coverage maintained by the Owners Association u ̄ ̄ce  ̄o Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender  ̄ ̄v p  ̄ the ̄n. Any amounts disbursed by Lender under this paragraph F shall become additional debt of B ̄ f ̄ ̄ec ̄ ̄ed by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these  ̄ ̄ ̄ts  ̄ ̄ bear interest from the date of disbursement at the Note rate and shall be payable, with interest, ̄ ̄ ̄ from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenan ̄ ̄ ̄nta  ̄ ̄n this PUD Rider.

Chance & Anthem LLC, a Florida limited liability company

By:_____

Jeffrey M. Siskind, Managing Member

NOT A CERTIFIED COPY

PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of Palm Beach County. (the "Declaration").

The Property is a part of a planned unit development know
WELLINGTON COUNTRYPLACE PROPERTY OWNERS ASSOCIATION, INC.
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of prof͏          management and assumption of self-management of the Owners Association; or (iv) any action which ͏          ha the effect of rendering the public liability insurance coverage maintained by the Owners Association u͏      ͏      to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender ͏      p͏      them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of B͏      ͏      ed by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these ͏      nts ͏      l bear interest from the date of disbursement at the Note rate and shall be payable, with interest, ͏      from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenan͏      ͏      ta͏      ͏      n this PUD Rider.

Chance & Anthem LLC, a Florida limited liability company

By:_____

  Jeffrey M. Siskind, Managing Member

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01 *(page 2 of 2 pages)*
NMLS# 994227

PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Sislund), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of Palm Beach County. (the "Declaration").

The Property is a part of a planned unit development know
SECOND WELLINGTON INC.
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of prof        l management and assumption of self-management of the Owners Association; or (iv) any action which would n   the effect of rendering the public liability insurance coverage maintained by the Owners Association u cc         to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may         h  .  . Any amounts disbursed by Lender under this paragraph F shall become additional debt of Bo           se    ed by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these a         n       ll bear interest from the date of disbursement at the Note rate and shall be payable, with interest, of              from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants cont         n this PUD Rider.


Chance & Anthem LLC, a Florida limited liability company

By: _____
     Jeffrey M. Siskind, Managing Member

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mae UNIFORM INSTRUMENT Form 3150 1/01 *(page 2 of 2 pages)*
NMLSII 994227

CFN 20150417807
OR BK 27926 PG 1833
RECORDED 11/13/2015 10:56:39
Palm Beach County, Florida
AMT
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 1833-1841; (9Pgs)

RECORD AND RETURN TO:

New Wave Loans Residential, LLC
1835 NE Miami Gardens Drive, Suite 451
North Miami Beach, Florida 33179

THIS INSTRUMENT PREPARED BY:

Staci J. Rutman, Esq.
Law Office of Staci J. Rutman P.A.
500 South Pointe Drive, Suite 230
Miami Beach, FL 33139

26-15-0689A

[Space above line reserved for recording office use]

## ASSIGNMENT OF RENTS, LEASES AND PROFITS
(IMPROVED PROPERTY LOCATED IN THE STATE OF ___ .)

THIS ASSIGNMENT OF RENTS, LEASES AND PROFITS (th___ ___ ___ent") is made as of the 6th day of November, 2015 by and between Chance & Anthem LLC, a Florid___ ___ted ___lity company (the "Borrower"), having an address of 525 S. Flagler Drive, Suite 501, West Palm Bea___ Fl___ 401 and New Wave Loans Residential, LLC (Series: Sistina), a Delaware limited liability company, havir___ ___ess of 1835 NE Miami Gardens Drive, Suite 451, North Miami Beach, FL 33179 (the "Lender" such term ___ ___ ___equent holders, if any, of the Promissory Note which this Assignment secures).

Re___als

A.    Borrower is obtaining financi___ ___on ___ ___r on this date and is encumbering the real property legally described in Exhibit "A" attached hereto and ___de ___ ___art hereof, the improvements thereon, and all personal property used in connection therewith (hereinafter ___ ___ ___ly ___e "Property").

B.    Borrower, in conn___th ___her___ith, has executed (a) a Promissory Note (hereinafter the "Note") on this same date, payable to the order of ___ ___ the principal amount of EIGHT HUNDRED TWELVE THOUSAND FIVE HUNDRED AND NO/___ D___ ___RS ($812,500.00); (b) a Mortgage (hereinafter the "Mortgage") encumbering the Property; and (c) cert___ ___ ___cuments creating liens, granting security interests, or otherwise evidencing or securing the loan (herei___ ___er ___ ___n") by Lender to Borrower (all of which such documents, whether or not listed in the preceding senten___ ___reinafter collectively referred to as the "Loan Documents").

C.    ___ ___ induce Lender to make the Loan, Borrower has agreed to make the assignment herein as primary and ___ ___ ___se___ ___ary security for the Note.

Agreement

___ ___der to induce Lender to make the Loan, and as a condition to the making of the Loan and in consideration ___reof B___rrower hereby agrees that the foregoing recitals are true and correct, and incorporated herein by reference, and b___ ___er covenants, warrants and agrees as follows:

a.    Assignment. Borrower, as assignor, hereby unconditionally grants unto the Lender, as assignee, a lien upon the rents and does further assign, transfer and set over unto Lender, as assignee, all of its right, title and interest in any and all of the following, whether now or hereafter acquired:

1

NMLS# 994227

i.      All leases and tenancies of all or any portions of the Property, whether written, oral or implied and whether now or hereafter entered into; all rights to use, possess, sell, rent, operate, lease, sublease or otherwise dispose of all or any part of the property rights and leasehold estates under the leases and tenancies; all security deposits and other deposits held by Borrower pursuant to terms of the leases and tenancies; and any full or partial guaranties of any lease obligations by any person or entity, together with all of the rights of the Borrower to modify, terminate or accept a surrender of any of the leases and tenancies (collectively the "Leases"); and

ii.      All rents and other payments which are due or which become due under any of the Leases, including any and all percentage rents, additional rents, payments of tenants' shares of common expenses, taxes and insurance, and all rights of Borrower to reduce, abate or accept a prepayment of all or any of the rents or other p̶̶  ̶ts payable by the tenants under the Leases (collectively the "Rents"); and

iii.      All management contracts, service contracts, maintenance contracts, insuranc̶̶   p̶̶      ̶and other contract rights which now exist or which may hereafter come into existence relating to the P̶̶    ̶̶ y̶  ̶y part thereof, together with any and all sales, assignments and proceeds thereof and all modifications, e̶̶    ̶̶on̶   ̶renewals thereof (collectively the "Contracts"); and

iv.      All of the sales proceeds, rents, issues, profits, and other pr̶̶   ̶ee̶    ̶ ̶ue and which may hereafter become due under or by virtue of any sale or sale agreement, whether writt̶̶    ̶̶al̶, o̶  ̶any letting or subletting or any agreement for the use of or occupancy of any part of the Property whic̶̶ may̶̶      ̶at any time between the Borrower and any purchaser, tenant or occupant of any part of the Property or ̶̶ny̶       ̶on̶  ̶ entity regarding the use or rental of personalty or improvements which may be or become a part of t̶̶ ̶̶  ̶ne̶   ̶ and all other income, profits, assessments and other fees and charges arising from the Leases or the Prop̶̶ ̶,̶ ̶ ̶ benefits of any and all guaranties thereof (collectively the "Profits"); and

All rights to use and possess, sell, rent, let, leas̶̶    ̶ ̶wise dispose of or deal with any or all of the Property or other rights or interests pledged pursuant to the ̶̶  ̶Do̶  ̶ nts, which may now or hereafter be available for the use of purchasers, such tenants as may be approve̶̶  ̶̶y̶  ̶ ̶r, or the operations of the Property. The Leases, Rents, Contracts and Profits, together with all other matt̶̶     ̶̶ibed in this Section 1, are hereinafter collectively the "Collateral."

2.      Term of Assignment.  This Assign̶̶  ̶̶ ̶ ̶hall remain in effect until (a) the Note is paid in full and all other obligations contained in any of the Loa̶̶    ̶̶ ̶ne̶ ̶ ̶ are fully and completely satisfied; or (b) this Assignment is voluntarily released by Lender (withou̶̶ ̶the̶ ̶̶  ̶̶ ̶ ̶fying any intention of Lender to do so prior to payment in full of the Note). If at any time payment of any̶̶ ̶̶ ̶̶ ̶ts̶ ̶ ̶d under any of the Loan Documents is rescinded or must otherwise be restored or returned by Lender ̶̶ ̶p̶̶   ̶̶  ̶olvency, bankruptcy or reorganization of Borrower or under any other circumstances, this Assignme̶̶  ̶̶ll̶̶   ̶̶ ̶ ̶ue to be effective or shall (if previously terminated) be reinstated, as the case may be, as if such payme̶̶   ̶̶ ̶̶   ̶̶ ̶n made, notwithstanding the release of this Assignment of public record. No judgment or decree wh̶̶ ̶may̶̶    ̶̶ered on any debt secured or intended to be secured by the Mortgage or any other Loan Documents sh̶̶   ̶̶ ̶e̶ effect of this instrument.  This Assignment shall remain in full effect during the pendency of any f̶̶     ̶̶ ̶roceedings under the Mortgage or any of the other Loan Documents, both before and after the sale, until t̶̶ ̶iss̶̶   ̶̶ ̶ of a certificate of title to the foreclosure sale purchaser.

3.      ̶̶ ̶̶so̶̶ ̶ ̶rrower Prior to Default. As of the execution of this Assignment and until Lender notifies Borrower or oth̶̶   ̶pa̶̶ ̶ ̶ provided herein, and further makes demand upon and provided that no Event of Default has occurred w̶̶  ̶̶ ̶ains uncured, Lender elects not to collect the Rents or Profits, or the amounts payable under the Leases or ̶̶ontracts,̶  ̶rectly from the tenants and other parties making such payments, but rather shall have a lien against same in a̶̶  ̶̶ ̶ce with Florida Statutes. Lender agrees that Borrower may collect the Rents and Profits, and the amounts paya̶̶ ̶e under the Leases and Contracts, upon, but not prior to, the times such payments accrue. Borrower shall hold all such amounts received by it in trust, however, for the benefit of Lender. Borrower covenants to apply the amounts so collected first to the payment of the Note as payments become due thereon, and second to other obligations of Borrower under the Loan Documents as such obligations become payable, and third to the payment of all taxes, assessments and reasonable operating expenses of the Property. However, if a default occurs in the making of any payments due under the Note or such other Event of Default (as that term is defined in the Note or the Mortgage) occurs, then Lender shall have the rights specified below.

2                                          NMLS# 994227

4.    Borrower's Covenants.  Borrower covenants and agrees as follows:

    a.    Lender shall not in any way be responsible for the condition or maintenance of the Collateral or any failure to do any or all of the actions for which rights, interests, powers and authority are herein granted. Lender will be liable only for such payments and proceeds as it actually receives under the terms hereof. Borrower will make no claim against Lender respecting the Collateral and shall defend and indemnify Lender against any claims by third parties against Lender alleging any liability of Lender for any of the matters described in this Section 4. The failure of Lender to take any of the actions or exercise any of the rights, interest, powers and/or authority granted to Lender hereunder, shall not be construed to be a waiver of any of the rights, interest, powers, or authority granted to Lender hereunder.

    b.    Borrower will execute upon the request of Lender any and all further documents, a____s o___ instruments which Lender deems appropriate or necessary to evidence or effectuate this Assignment or er_____ ___ __rm the right and authority assigned to Lender hereunder.

    c.    During the term of this Assignment, Borrower will not remove or cause or __ _____ removed from the Property any of the personalty or improvements on or used in connection with the ____ ___ except as may be permitted in the Mortgage.

    d.    Borrower specifically gives its consent and authorization to any co____ __ ____competent jurisdiction to issue, by ex parte hearing, such order or orders as may be appropriate or __ec____ ___y _ enforce the terms of this Assignment, granting to Lender such powers, orders or authority as L____ __a_ _eed to desire to enforce this Assignment. Any such Court is directed not to require any bond of Lender, i_ __ __ __ agreeing that time is of the essence to protect the interests of Lender and Borrower.

    e.    Borrower will, at Borrower's sole cost and expe__ __ ____ __r in and defend any action growing out of or in any manner connected with any of the Leases, Rents, Cont____ __ __ __s, or any of the obligations or liabilities of the Borrower or any persons in connection therewith.

    f.    Borrower will fulfill and perfor_ __ __ a__ ___very obligation which is incumbent upon Borrower as lessor or other contracting party under all Lease____ ___ ___cts.

    g.    Borrower will enforce___ __ __ol___ ___ost and expense, short of termination of any of the Leases or Contracts, the performance and obse___an__ __ _ _h and every covenant and condition required under the Leases or Contracts.

5.    Representations and ___ran___ __Additional Covenants.. Borrower makes the following representations and warranties to Lender, and _g____g___ _ following additional covenants, with the intention and expectation that Lender will rely upon the same __ ent___g __nto this Assignment:

    a.    ___ ___ ___ows of no present material defaults in the performance of any of the terms and conditions contained in th_ L___ ___Contracts.

    ___ ___ ___rrower has not executed any prior assignments of any of the Leases, Contracts, Rents, or Profits or any p__ __e__ __ __ _e hereunder and will not in the future execute any assignments of the same or any payments thereunder, o_ ____ __this Assignment.

    c.    Borrower has not performed any acts or executed any other documents, and will not take any action or execute any other documents, which might prevent, limit or restrict Lender from enforcing any of the terms or conditions of this Assignment, exercising any of its rights or remedies hereunder, functioning as the successor to Borrower under the Leases or Contracts, or collecting the Rents and Profits in the event of default, as provided herein.

    d.    Borrower has not executed or granted any modification or amendment to any of the Leases or Contracts, or Lease guaranties and will not amend or modify the same in any way which limits or eliminates any rights to payments or performance thereunder.

NMLS# 994227

e.    Borrower will not enter into any new Leases without having first obtained Lender's prior written consent, which may be withhold subject to Lender's sole discretion.

f.    No security deposits made by any tenants or lessees under any of the Leases have been transferred to the Lender. Borrower agrees that Lender shall not be liable for any security so deposited unless and until Lender actually receives the deposit amounts.

g.    Borrower has not collected or anticipated any rentals or other payments under any of the Leases and Contracts, except for security deposits, for a period of time in excess of one (1) month prior to the accrual of suc̲    ̲al or payment.

h.    Borrower will not grant any rent concessions or discount any future accruing rents, ⁀xc̲.    ̲y be expressly approved in writing by Lender, subject, however, to Lender's sole discretion.

i.    All Leases and the tenants' rights thereunder are subject to, subordinate an̲    ̲fe̲.    ̲.us Mortgage and the Loan Documents.

Borrower will, upon request, promptly furnish Lender with a current rent roll of ⁀    ̲oer̲ and annual operating statements of income and expenses, including rent schedules, in such detail as m̲⁀v̲ be̲.    ̲ably required by Lender.

j.    Borrower agrees to furnish Lender with copies of all sig̲⁀^    ̲se̲.̲ immediately upon request.

k.    Borrower will not consent to any assignment or subi̲.    ̲q̲ h̲.̲ ̲er the Leases without Lender's prior written consent.

l.    Borrower will not enforce the Leases, ex̲⁀.    ̲n c̲ ̲lance with all applicable laws. Furthermore, Borrower will not initiate any litigation, file pleadings o̲.  ̲the̲.̲ ̲e engage in any suit or proceedings without first obtaining Lender's written consent.

6.    Events of Default. An event of default s̲^ll̲    ̲der this Assignment upon the happening of any one or more of the following events (each an "Event of D̲⁀fau̲.̲ ̲):

a.    Failure of Borrower ⁀o p̲./̲.  ̲ncipal or interest on or other amount due under the Note within no later than ten (10) days from when t̲^^̲    ̲e ̲ ̲de, whether at maturity, by acceleration or otherwise.

b.    An Event c̲^    ̲fau̲.̲ defined in the Note or the Mortgage, occurs.

c.    Brea̲^ ̲of an̲.̲=̲g̲ of Borrower's covenants, obligations, warranties or representations under this Assignment.

7.    Lend̲⁀^ ̲Iu̲    ̲%s Upon Default.

on the occurrence of an Event of Default as defined above, and after written demand by the Lender, Borr̲    ̲r ̲    ̲) ̲u̲ collect and retain the Rents and Profits shall immediately terminate, and Lender's rights under the ass̲⁀    ̲ts created by this Assignment shall become fully effective. Lender will have the right at its option to enforce ⁀nd to exe̲.̲ .se any or all of its rights under this Assignment or otherwise, and all rights under law, including, without lin̲.̲ ̲., the remedies afforded under Section §697.07, Florida Statutes, but Borrower expressly agrees that Lender's exerc̲̲se of any rights hereunder or Lender's affirmative act to collect the Rents, Profits or other income shall not be a prerequisite or precondition to the full effectiveness and enforceability of Lender's rights hereunder.

b.    In such event, and upon Lender's election, Borrower shall deliver to Lender all of the Leases and Contracts. Any oral Leases or Contracts shall be described in a writing delivered by Borrower to Lender, although Lender, at its sole option, may elect not to be bound by any such oral agreements.

4                    NMLS# 994227

     c.    Lender, at its option, after complying with Section §697.07, Florida Statutes, shall have the right and is hereby authorized to: (a) take possession and control of the Property; (b) manage and operate the Property; (c) preserve and maintain the Property; (d) make repairs and improvements to the Property which Lender at its sole discretion deems necessary; (e) collect all Rents and Profits from the Property; (f) eject tenants or repossess personal property, as provided by law, for breaches of the conditions of the Leases or other Contracts; (g) in the name of either Borrower or Lender enter into real or personal property leases or tenancy agreements, or other contracts or agreements, with such third parties as Lender may at its sole discretion select, and upon such terms and conditions as Lender in its sole discretion may determine; (h) sue for unpaid Rents, Profits or other payments or proceeds in the name of Borrower or Lender; (i) maintain actions for possession of property or for Rent; (j) compromise or give acquittance for Rents, Profits or other payments or proceeds that may become due; (k) maintain suits on Leases, Contracts and other agreements; (l) d       te any and all rights and powers given to Lender by this Assignment; (m) have a receiver appointed; and (n) us       measures, legal or equitable, as in its sole discretion may carry out and effectuate the provisions of this Assign        A       such actions shall be taken at the sole expense of the Borrower with interest thereon from the date of ex              the Default Rate stated in the Note, with all such monies due and payable upon demand.

8.    <u>Instructions to Lessees and Other Parties</u>.  This Assignment constitutes an express dir      fo      d ull authority to any lessee, tenant or other contracting party to pay directly to Lender, upon Lender's r             nd compliance with Section §697.07, Florida Statutes, all Rents, Profits and other amounts which may be c       be      e to Borrower. No additional proof of default shall be required. Any lessee, tenant, or other contr              any    is hereby irrevocably authorized to rely upon and comply with any notice or demand by the Lender for the pay            the Lender of any rental or other amounts which may be or become due under its Lease or Contract, or fo        p    ormance of any obligations under such Lease or Contract.  The lessee or other contracting party shall       n h     ie to Borrower, or any person claiming under Borrower, for making any payment or rendering any er      D       to Lender.  The lessee or other contracting party shall have no obligation or right to inquire whether any    ault    is actually occurred or is then existing.  By its execution of this Assignment, Borrower irrevocably joins    on     ts to and makes and delivers the above instructions to all of its tenants and other parties under the Leases    tracts.

9.    <u>Application of Income</u>.  The Rents and Profits co     te        received by Lender may be applied as follows, in whatever order Lender in its sole discretion may determ

     a.    To the payment of the operati    ex       of the Property, including costs of management (which shall include reasonable compensation to the Le   er    d its   agent or agents, if management be delegated to an agent or agents); improvements, alterations, replac        an    pairs to the Property; placing the Property in such condition as will, in the judgment of Lender, make it    ea.  h     ole; premiums on fire, tornado, hurricane, casualty, liability or other insurance if Lender deems such in            ecessary; and any claims for damages arising out of the ownership or management of the Property.

     b.    To the p              actual costs and expenses incurred by Lender in collecting the Rents and Profits, including commissions   d to    s tenants or lessees, and reasonable attorney's fees incurred in connection with the enforcement of this A             nd incurred in recovering the Property or any personal property from any lessee or other contracting party

     c.        th    payment of taxes, special assessments and insurance premiums which become due and which are delinque      the    perty; all obligations contained in the Loan Documents; and any liens or encumbrances on the Prop        o       sonal property of Borrower.

     d.    To the payment of bills for reasonable and necessary repairs and improvements on the Property.

     e.    To the payment of any and all indebtedness, together with interest, evidenced by the Loan Documents or any deficiency which may result from any foreclosure sale.

     f.    If the Rents and Profits are insufficient to fully pay all of the above items, Borrower shall remain liable to Lender for the difference, which shall be payable upon demand. At any time, Lender may seek and obtain a judgment or judgments against Borrower for the amount of the deficiency. Borrower waives any counterclaim to which it may be entitled in any such proceedings (without prejudice to assert the same in a separate cause of action at a later time).

NMLS# 994227

10.    Lien on Property.  If the Rents from the Property are insufficient to reimburse Lender for any expenses incurred by Lender pursuant to this Assignment, any disbursements made by Lender and not so reimbursed may be made as a future advance under the Mortgage with lien priority equal to the lien of the Mortgage.

11.    Lender as Agent.  Lender is and will be acting solely as an agent of Borrower in taking any actions in connection with the Property.  Lender assumes no responsibility or liability in any other capacity.  Lender shall not be obligated to perform any obligation or duty, or discharge any liability under any of the Leases or Contracts, or under or by reason of this Assignment.

12.    Remedies Cumulative.  The remedies provided in this Assignment and in the other Loan Documents cumulative and not mutually exclusive.  The remedies can be exercised successively or concurrently, as m~~~ ~s ~s and whenever the occasion may arise, and the exercise of any one or more remedies shall not be a waiver ~ ~l ~~de the exercise of any one or more remedies at the same or any later time for the same or any later de~~~.

13.    Liability of Lender.

        a.    In Lender's exercise of the powers granted Lender by this Assignmen~ ~o~~ ~ shall be asserted or enforced against Lender, and Borrower expressly waives and releases Lender from ~~h liability.

        b.    Lender shall not be responsible for any failure to perform ~ny ~n ~s in any of the Leases and Contracts, either before or after the exercise of any assignments or remedies~~ ~ne~~ ~n this Assignment.  Lender shall not be responsible for any damage or harm to the Property or any additi~ns, ~~ ~ements or fixtures to the Property.  Lender also shall not be liable to any person or entity for any accidents o~ ~er ~ ~urrences occurring on or with respect to any part of the Property.

        c.    This Assignment, prior to any Event of De~~ ~y ~ ~ower and entry upon the Property by Lender by reason thereof, shall not operate to place responsibility ~ ~he ~ management or repair of the Property upon the Lender.  Lender shall not be responsible or liable for ~ny~ ~ ~ommitted on the Property by the tenant(s) or any other parties, or for any negligence in the management, ~ ~ ~re~ ~r or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stran~~~.

        d.    In accepting the assignm~ ~ ~re~ ~escribed, and in exercising any of the remedies provided herein or taking any of the actions which are auth~r~z ~ ~ ~, Lender will be acting solely and exclusively as agent for Borrower in attempting to realize the maxim~~ ~n ~ ~n the Property and in attempting to obtain payment to Lender of the amounts which Lender is to rece~ ~ ~ ~ ~ ~ to the Note.  The parties acknowledge that in so doing, Lender will not be or be deemed to be an "owner" c ~ ~er~ ~ of the Property under any environmental statute, law, regulation or ordinance, and will not be assuming ~~~~~~~~~~~~~ ~ons of Borrower to fully comply with all such statutes, laws, regulations or ordinances, as more p~ ~ular~ ~ ~ribed in the Mortgage.  Borrower will specifically defend and indemnify Lender against any such liab~ ~ ~ ~ ~ss or expense.

14.    Inden~ ~ty.

        ~ ~ ~rower agrees to defend and indemnify the Lender from and against any and all liability, loss, dama~~ ~an~ ~ ~ ~ses (including all attorneys' fees and expenses through litigation and all appeals) which Lender may or m~ ~ ~r under any of the Leases and Contracts, or under or by reason of this Assignment, from any violation of law ~~~ ~which ~rrower is responsible, and from all claims and demands whatsoever which may be asserted against the L~ ~ ~ connection with the Property or respecting any alleged obligations or undertakings to perform or discharge any term~ ~covenants or agreements contained in any of the Leases or Contracts, except for loss or demand resulting from willful or negligent actions of Lender.  This indemnity shall include specifically, but without limitation, an indemnity against any of the matters described in Section 13 above.

        b.    Should Lender incur any such liability, loss or damage, the amount thereof, including costs, expenses and attorneys' fees, together with interest at the Default Rate stated in the Note from the date the cost or loss was incurred, shall be secured by this Assignment and by the other Loan Documents.  Borrower shall pay all such amounts

6                                    NMLS# 994227

Immediately upon demand.

15.    Bankruptcy.

a.    The parties agree that Borrower has substantial duties of performance apart from its mere financial obligations under this Assignment, the Note, and other Loan Documents, and that parties other than the Borrower could not adequately and fully perform the covenants to be performed by Borrower in this Assignment. The parties also agree that this Assignment is an agreement for the making of loans and for the extending of debt financing or financial accommodations. No assumption of or assignment of this Assignment shall be allowed in bankruptcy. Should an assumption of or assignment of this Assignment be permitted in violation of this covenant, the parties agree that Lender will not have adequate assurance of performance unless and until Lender is allowed access to adequate financial and other information to satisfy itself that the trustee or proposed assignee is fully able to assume the financial and performance covenants of Borrower under this Assignment, in full accordance with its terms, and that sufficient collateral is pledged and sufficient bonds or letters of credit are posted by the bankruptcy trustee or proposed assignee to guarantee performance of such obligations. The parties further agree that the definition of the term "adequate assurance" as set forth in §365(b)(3) of the Bankruptcy Code of 1978, as amended, shall be applicable directly or by analogy to any determination of adequate assurance in connection with this Assignment.

b.    In the event of Borrower's bankruptcy, the debtor in possession or trustee shall not be permitted to use, sell or lease the Property, Leases, Contracts, Rents, or Profits, whether or not in the ordinary course of business, without providing adequate protection to Lender. The parties agree that the language in Section 361 of the Bankruptcy Code of 1978, as amended, shall be the exclusive definition of the term "adequate protection" in connection with any use, sale or lease of the Property, Contracts, Rents or Profits. The cash payment referred to in that section shall mean the full payment required under the Note and payment representing the full replacement value of the Property, Leases, Contracts, Rents or Profits used, sold or leased; the replacement liens referred to in that section shall mean liens on property the actual market value of which is equal to or greater than the replaced value of the Property, Leases, Contracts, Rents or Profits used, sold or leased; and the term "indubitable equivalent" as used in that section shall mean protection afforded by either grants of administrative expense priority, grants to Lender of ownership interests in a continuing business surviving the bankruptcy, or grants to Lender of proceeds securities issued by a continuing business surviving the bankruptcy, which completely compensate Lender for its loss of the present value (computed at the then market rate of interest for commercial loans) of its interest in the Property, Leases, Contracts, Rents, or Profits. For purposes of computation, the value of the Property Leases, Contracts, Rents or Profits is deemed to be the replacement cost.

c.    The parties agree that because of the extreme financial importance to Lender of this transaction, and because of the nature of the Property, Leases, Contracts, Rents, and Profits, and the likelihood that their value will quickly decrease over time, Lender will be irreparably harmed by any stay of its collection effort or the exercise of its remedies under this Assignment.

d.    The parties agree that in the event a plan of reorganization is proposed under Chapter 11 of the Bankruptcy Code of 1978, as amended, the plan will be fair and equitable to Lender, as a secured creditor, only if Lender realizes under the plan the indubitable equivalent of its interests in the Property, Leases, Contracts, Rents, or Profits. The term "indubitable equivalent" in such context shall have the same meaning as that given in Section 15b of this Assignment.

16.    WAIVER OF JURY TRIAL. BORROWER HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS ASSIGNMENT, ANY COURSE OF DEALING OR ANY OF THE LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREBY.

17.    Notices. The notice provisions of the Mortgage shall be deemed a part hereof and incorporated herein as though fully stated in this Assignment.

18.    Miscellaneous. This Assignment shall be binding upon Borrower and its heirs, successors, and assigns, and shall inure to the benefit of Lender and its successors, transferees and assigns, and all parties who may become holders of the Note. This Assignment is made and executed under and shall in all respects be governed and enforced by and

7

NOT CERTIFIED COPY

construed in accordance with the laws of the State of Florida, including, without limitation, matters of construction, validity and performance. Each party acknowledges that it has reviewed this Assignment, and the parties hereby agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Assignment. In the event any terms or provisions of this Assignment are held invalid or unenforceable, the remaining terms and conditions of this Assignment shall continue to be fully enforceable without change, and this Assignment shall be interpreted as if the invalid or unenforceable provision had not been a part hereof.

IN WITNESS WHEREOF, Borrower has executed or caused this Assignment to be executed by its duly authorized agents.

WITNESSES:                                    BORROWER:

Print name: Nicole HURST

                                              Chance & Anthem LLC, a Fl_____ ___ __ liability
                                              company

Print name: M. A. MCDANIEL                    By: _____
                                                  Jeffrey M. Sisk____,    ___ing Member


STATE OF FLORIDA          )
                          ) SS
COUNTY OF Palm Beach      )

The foregoing instrument was ack_____ ___ _____ore me this ___6___ day of November, 2015, by Jeffrey M. Siskind, Managing Member of Chance ___ ____ __C, a Florida limited liability company, who is [ ] personally known to me or [✓] produced ___FL___ ___ ___as identification.

Name: _____M. A. MCDANIEL_____
Notary Public, State of ___FL___
Commission No. FF 042736

## EXHIBIT A

Lot 2, Southfields – Phase I of Palm Beach Polo and Country Club- Wellington Country Place – P.U.D., according to the map or plat thereof, as recorded in Plat Book 39, Page(s) 19 through 22, inclusive, of the Public Records of Palm Beach County, Florida.

Parcel ID#: 73-41-44-21-03-000-0020

9

NOT A CERTIFIED COPY

NMLS# 994227

## ADJUSTABLE RATE RIDER
### (1 Year Treasury Index -- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by Chance & Anthem LLC, a Florida limited liability company (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to New Wave Loans Residential, LLC (Series: Siskind), a _____ limited liability company (the "Lender") of the same date and covering the property described in the Security ____ and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[the "Property Address"]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES ___ ___ __EREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS ___ __OUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY __ __ __ __ AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants an__ ____ __ made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CH__ ___ __

The Note provides for an initial interest rate of 9.000%. __he ____ __ovides for changes in the interest rate and the monthly payments as follows:

INTEREST RATE AND MONTHLY PAYME__ __ __A__ _GES

(A) Change Dates

The interest rate I will pay may change on __ __ __ __ay __ December 1, 2016 and on that day every 3rd month thereafter. Each date on which my interest rate ec__ __ __ __ is called a "Change Date."

(B) The Index

Beginning with the first Change Da__ __ __ __erest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury s__ __rit__ __ __usted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recen__ __ __ figure available as of the date 60 days before each Change Date is called the "Current Index."

If the Index is no long__ __ __ __abl__ the Note Holder will choose a new index which is based upon comparable information. The Note Hold__ __ __ __ __ __e notice of this choice.

(C) Calculation __ __ __anges

Before each C__ __ __ __ __ the Note Holder will calculate my new interest rate by adding 8.740 percentage points (8.740%) to t__ __ __ Index. The Note Holder will then round the result of this addition to the nearest 0.125%. Subject to the li__ __ __ta__ __ __ Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

T__ __ __ __ __er will then determine the amount of the monthly payment that would be sufficient to repay the unpaid p__ __ip__ __ __ I am expected to owe at the Change Date in full on the maturity date at my new interest rate in subst__ __ __ __al payments. The result of this calculation will be the new amount of my monthly payment.

__ __ __mits on Interest Rate Changes

__ __ Interest rate I am required to pay at the first Change Date will not be greater than 11.000% or less than 9.000%. Thereafter, my interest rate will never be increased on any single Change Date by more than two percentage points (2.0%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 13.000%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

NMLS# 994227

**Exhibit "D"**

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

BORROWER:

Chance & Anthony LLC, a Florida limited liability company

By: _____

Jeff M. Blund, Managing Member

NOT A CERTIFIED COPY

NMLS# 994227

## 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Sisland), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414<br>
[the "Property Address"]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B.   USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C.   SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D.   RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

E.   "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted.

F.   BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G.   ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H.   ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless

NOT A CERTIFIED COPY

Exhibit "E"

applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take  or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender  or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rent  cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents  rty shall terminate when all the sums secured by the Security Instrument are paid in full.

I.    **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any  ement in which Lender has an interest shall be a breach under the Security Instrument and Lender m  ke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants  ed  this 1-4 Family Rider.

Chance & Anthem LLC, a Fl  lim.  liability company          -Borrower

By:_____

Jeffrey M. Siskind,  an,  Member

NOT A CERTIFIED COPY

MULTISTATE 1-4 FAMILY RIDER--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT          Form 3170    1/01 *(page 2 of 2 pages)*

## ·PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, to        ith other such parcels and certain common areas and facilities, as described in the Declaration of Coverants,   rictions & Easements of the Planned Unit Development filed in the Public Records of Pa'    County.   (the "Declaration").

The Property is a part of a planned unit development know
SOUTHFIELDS PALM BEACH POLO and COUNTRY CLUB HOME WN   S ASSOCIATION, INC.
[Name of Planned Unit Development?

(the "PUD"). The Property also includes Borrower's interest in the  ion,   ners association or equivalent entity owning or managing the common areas and facilities of the PUD (1   wn  Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and ag   em   ide in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform  all  arrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" ar  he  A Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the    A sociation; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower sh ll p.  pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long  he   irs Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy   h Property which is satisfactory to Lender and which provides insurance coverage in the amounts (  clud   ductible levels), for the periods, and against loss by fire, hazards included within the term "extend   ge," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender req"   ice, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the year'y  installments for property insurance on the Property; and (ii) Borrower's obligation under Section    im   property insurance coverage on the Property is deemed satisfied to the extent that the required cov   re i   ided by the Owners Association policy.

What '    rec   res as a condition of this waiver can change during the term of the loan.
Borrower sh   give Lender prompt notice of any lapse in required property insurance coverage provided by the mas.   .ket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

Exhibit "F"

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

Chance & Anthem LLC, a Florida limited liability company

By:_____
    Jeffrey M. Siskind, Managing Member

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01 *(page 2 of 2 pages)*
NMLS# 994227

PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of Palm Beach County. (the "Declaration").

The Property is a part of a planned unit development know
WELLINGTON COUNTRYPLACE PROPERTY OWNERS ASSOCIATION, INC.
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would the effect of rendering the public liability insurance coverage maintained by the Owners Association u        cc,      .o Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender m a             u.      u. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Bor.   er        ed by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these a           ll bear interest from the date of disbursement at the Note rate and shall be payable, with interest, u    n          .rom Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenant  co.      e    n this PUD Rider.

Chance & Anthem LLC, a Florida limited liability company

By: _____
  Jeffrey M. Siskind, Managing Member

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01 *(page 2 of 2 pages)*
NMLS# 994227

PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of P___ County. (the "Declaration").

The Property is a part of a planned unit development know
SECOND WELLINGTON INC.
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

Chance & Anthem LLC, a Florida limited liability company

By: _____

Jeffrey M. Siskind, Managing Member

NOT A CERTIFIED COPY

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 6th day of November, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3445 Santa Barbara Drive, Wellington, FL 33414
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Restrictions & Easements for the Planned Unit Development filed in the Public Records of Palm Beach County, (the "Declaration").

The Property is a part of a planned unit development know
PALM BEACH POLO and COUNTRY CLUB PROPERTY OWNERS, ASSOCIATION, INC.
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casual or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of pro' management and assumption of self-management of the Owners Association; or (iv) any action which the effect of rendering the public liability insurance coverage maintained by the Owners Association Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender amounts disbursed by Lender under this paragraph F shall become additional debt of Bo Security Instrument. Unless Borrower and Lender agree to other terms of payment, these from the date of disbursement at the Note rate and shall be payable, with interest, from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenar ... in this PUD Rider.

Chance & Anthem LLC, a Florida limited liability company

By:_____

    Jeffrey M. Siskind, Managing Member

NOT A CERTIFIED COPY

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01 *(page 2 of 2 pages)*
NMLS# 994227

CFN 20150470068
OR BK 28011 PG 1154
RECORDED 12/29/2015 09:49:58
Palm Beach County, Florida
AMT
Sharon R. Bock
CLERK & COMPTROLLER
Pgs 1154-1155; (2Pgs)

This instrument prepared by
(and after recording return to):

Joel Eidelstein
19950 W Country Club Dr. #904,
Aventura, FL 33180

## ASSIGNMENT OF MORTGAGE AND OTHER LO... ...MENTS

FOR VALUE RECEIVED, New Wave Loans Residen.... ... C (Series: Siskind), a Delaware limited liability company ("Assignor"), whose address is 1835... ... ini Gardens Drive, Suite 451, North Miami Beach, Florida 33179, does hereby grant, sell, assi... ... and convey, unto New Wave Lenders (2015-B) LP, a Delaware limited partnership, ("Assig...ee ... ght, title and interest of Lender in and to the following instruments encumbering the real pro... ... legally described as: **Lot 2, Southfields – Phase I of Palm Beach Polo and Country Club-Well... ...country Place – P.U.D.,** according to the map or plat thereof, as recorded in Plat Book 3... ...ag... 19 through 22, inclusive, of the Public Records of Palm Beach County, Florida.

1.      Mortgage dated No... ...6, 2015 made and executed by **Chance & Anthem LLC,** a Florida limited liability compan... to ... ... favor of Assignor in the original principal amount of **Eight Hundred Twelve Thousand F... ...dred and No./100 Dollars ($812,500.00)** and recorded on Official Records Book 27926, Page ... 0... ... ... Public Records of Palm Beach County.

2.      Assi... ...ents, Lease and Profits dated November 6, 2015 made and executed by **Chance & Anther...** ... Florida limited liability company, to and in favor of Assignor and recorded on Official Reco... ...27926, Page 1833, of the Public Records of Palm Beach County.

T... ... AND TO HOLD, the same unto Assignee, its successors and assigns, forever.

... ...ssignment is made without recourse to, or any representation or warranty by, Assignor in any event ...atsoever.

This Assignment is effective as of November 13, 2015.

Exhibit "G"

CFN 20150470068
BOOK 28011 PAGE 1155
2 OF 2

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed, sealed and delivered this 13 day of November, 2015.

WITNESSES:

Print name: Amanda Nussenbaum

Print name: RYAN POWER

ASSIGNOR:

New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company

By: Alerica, Inc., a Delaware corporation, its Managing Member

By: _____
   Joel Eidelstein, President

STATE OF FLORIDA        )
                        )ss:
COUNTY OF MIAMI-DADE    )

The foregoing instrument was acknowledged before me this 13 day of November, 2015 by Joel Eidelstein, President of Alerica, Inc, a Delaware corporation, the Managing Member of New Wave Loans Residential, LLC (Series: Siskind), a Delaware limited liability company. He is personally known to me or has produced _____ as identification.

Notary Signature
Print Notary Name: Jacobo Sasson
Notary Public, State of Florida
Commission No. FF199333

My commission expires
2/12/19

JACOBO SASSON
MY COMMISSION # FF199333
EXPIRES February 12, 2019
(407) 398-0153   FloridaNotaryService.com

NOT A CERTIFIED COPY

# NEW WAVE LOANS

### NOTICE OF DEFAULT AND POSSIBLE ACCELERATION ON MORTGAGE

Property Located at : 3445 Santa Barbara Drive, Wellington, FL 33414 (the "Property")

Legal Description: Lot 2, Southfields – Phase I of Palm Beach Polo and Country Club-Wellington Country Place – P.U.D., according to the map or plat thereof, as recorded in Plat Book 39, Page(s) 19 through 22, inclusive, of the Public Records of Palm Beach County, Florida. Parcel ID#: 73-41-44-21-03-000-0020

### VIA FEDERAL EXPRESS & EMAIL

August 16, 2016

Chance & Anthem LLC
Jeffrey M. Siskind, Managing Member
Jeffrey M. Siskind, Individually
525 S. Flagler Drive, Suite 501
West Palm Beach, FL 33401

Dear Mr. Siskind:

This notice is to inform you that per the ___ Documents executed on November 6th, 2015 your loan with New Wave Lenders (2015___ ___s and has been in Default. **You are in Default because you have allowed for a ___ ___erior to the Security Instrument to be perfected against the Property without ___ ___rior written permission.** Attached please find copies of a recorded second and thir___ ___ the Property.

This is a notice that yo___ ___ Default and there <u>may be an acceleration</u> of the sums secured by the Mortgage and N___ ___ ___sure by judicial proceeding, and eventual sale of the property. <u>Also, please note, yo___ ___ ___s accruing at the Default interest rate as defined in the Loan Documents</u>.

<u>You mu___ ___ ___s Default by removing all liens on the Property and providing proof of this action ___ ___</u>

S___ ___u fail to cure the Default(s) by September 19th, 2016, there <u>may be an acceleration</u> of the s___ns secured by the Mortgage and Note, foreclosure by judicial proceeding, and eventual sale of the property. In a foreclosure proceeding, you have the right to assert the non-existence of a default or any other defense to acceleration and foreclosure. Again, as per the Loan Documents, interest is currently accruing at the Default rate.

Additionally, on the expiration of the Cure Period, we may exercise the rights detailed in the Assignment of Leases, Profits, and Rents, including specifically the right to collect all rents derived from the Property, if applicable, as they become payable.



LIC# MLD875, NMLS# 994227



New Wave Loans Residential, LLC * 1835 NE Miami Gardens Drive, #451 *North Miami Beach, FL 33179

Exhibit "H"

# NEW WAVE LOANS

*Please note that you have the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a Default or any other defense of Borrower to acceleration and foreclosure. If the Default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by the Loan Documents without further demand and may foreclose by judicial proceeding. As Lender we shall be entitled to collect all expenses incurred in pursuing the remedies detailed above, including, but not limited to, reasonable attorneys' fees and costs of title evidence.*

Thank you in advance for your attention to this matter.

Joel Eidelstein
New Wave Lenders (2015-B), LP
305.528.6857

NOT A CERTIFIED COPY

CC: New Wave Loans Residential, LLC, as servicer of New Wave Lenders (2015-B), LP.



LIC# MLD875, NMLS# 594227

New Wave Loans Residential, LLC * 1835 NE Miami Gardens Drive, #451 *North Miami Beach, FL 33179