UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                  Case No. 18-16248-BKC-MAM
                                                        Chapter 7
CHANCE & ANTHEM, LLC

     Debtor.
_____/

ROBERT C. FURR not individually but              ADV. NO. 19-01301-MAM
As Chapter 7 Trustee of the estate of the
Debtor, Chance & Anthem, LLC,

     Plaintiff,

v.

ADVANCED AVIONICS, LLC,

     Defendant.
_____/

### AFFIDAVIT OF ALAN R. BARBEE, CPA/ABV

Before the undersigned officer duly authorized to administer oaths came Alan R.

Barbee, Accountant to Plaintiff Chapter 7 Trustee Robert C. Furr, who after being duly sworn,

deposes and states under oath as follows:

    1.    I am over twenty-one (21) years of age and competent to give testimony as to

the following matters based on my personal knowledge.

    2.    I am a principal with GlassRatner Advisory & Capital Group, LLC.

    3.    I have over 25 years' experience providing forensic accounting and litigation

support services primarily concentrated in the areas of bankruptcy and insolvency consulting,

business valuation, fraud investigations and quantification of economic damages.



4.    I was retained by the Chapter 7 Trustee as the Accountant for the estate.

5.    I have conducted a financial examination of the Debtor's[1] books and records, including the business and financial affairs between the Debtor and the Defendant in this adversary proceeding. I have become personally familiar with the Debtor's books and records, and the affairs resulting in the Debtor's insolvency.

6.    Pursuant to the attached Expert Report dated April 20, 2020, it is my opinion that Chance & Anthem, LLC (Chance) was insolvent in November 2015 when the subject transfer was made.

7.    Pursuant to the attached Exhibit A, on November 11, 2015, a payment in the amount of $100,000 (Check No. 1026) was disbursed from the Debtor's SunTrust account ending in xx6688 to Defendant, Advanced Avionics. The funds cleared the Debtors bank account on November 13, 2015 and the check memo indicated the payment was for "Panel Equipment & Initial Labor Deposit."

8.    The records we have reviewed and the 2004 examination of Jeffrey Siskind does not reveal that Chance owned or leased any aircraft. There were no aircraft related assets or liabilities reflected within the Debtor's records or bankruptcy schedules. I also researched the Federal Aviation Administration (FAA) registry database and confirmed that Chance is not shown as an owner of any type of aircraft and is not listed under the FAA list of cancelled registrations either. In my opinion, Chance did not receive reasonably equivalent value in exchange for this payment.

9.    Pursuant to the attached Exhibit B, the source of the funds for the $100,000 transfer were traced back to the refinancing of real estate owned by Chance located at 3445

---

[1] **Debtor: Chance & Anthem, LLC ("Chance")**

Santa Barbara Drive, Wellington, FL 33144 ("Santa Barbara House" or "Wellington Home").

On November 13, 2015, Jeffrey Siskind, the managing member of Chance, refinanced the Santa

Barbara House and Chance received proceeds of approximately $704,000. As demonstrated in

the bank statement in Exhibit A and flowchart in Exhibit B, $117,000 from the refinance

proceeds was used to pay aircraft related payment, including $100,000 to pay Advanced

Avionics.

      10.    In reviewing the financial activity subsequent to the $100,000 payment to

Advanced Avionics, we found no evidence that Chance was repaid or reimbursed the $100,000

by Advanced Avionics, William Siskind or other entities related to Chance, including Sovereign

Gaming & Entertainment, LLC and Florida's Association of Community Banks and Credit

Unions, Inc.

###

FURTHER AFFIANT SAYETH NOT.

Dated this 24th day of April 2020.

               By _____

                          Alan R. Barbee, CPA/ ABV

STATE OF FLORIDA        )

PALM BEACH COUNTY   )

Sworn to and subscribed before me this 24th day of April 2020, by ALAN BARBEE, who is
personally known to me, or _____ produced identification and took an oath.

_Janet J. Pritchard_

Signature of Notary Public                       (SEAL)

_____
Printed Name of Notary Public
Commission No.
Commission Expires



JANET J. PRITCHARD
MY COMMISSION # GG 927500
EXPIRES: October 28, 2023
Bonded Thru Notary Public Underwriters

3

# EXPERT REPORT



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 19-01298-MAM**

In re:

CHANCE & ANTHEM, LLC,

          Debtor.

_____/

ROBERT FURR, as Chapter 7 Trustee of the Debtor,

CHANCE & ANTHEM, LLC,

**EXPERT REPORT OF ALAN R. BARBEE, CPA/ABV**

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC**

**APRIL 20, 2020**



# Contents

I.      Introduction and Summary of Conclusion ............................................................. 1

II.     About the Litigation.................................................................................................. 3

III.    Scope of Review and Limiting Conditions............................................................... 4

IV.     Relevant History of the Debtor............................................................................... 4

V.      The National, State, and Local Economy................................................................ 9

VI.     Financial Analysis of Chance & the Related Entities............................................. 9

VII.    Financial Tracing Analysis and Evaluation of Corporate Formalities................................16

VIII.   Valuation Analysis ................................................................................................21

IX.     Solvency Analysis of Chance & the Related Entities ...........................................28

X.      Summary Conclusion ...........................................................................................31

XI.     Alan Barbee Professional Background .................................................................31

Appendix 1...................................................................................................................33

Documents Considered................................................................................................33

Appendix 2...................................................................................................................34

Barbee CV and Prior Testimony..................................................................................34

I.    **INTRODUCTION AND SUMMARY OF CONCLUSION**

    ***Introduction***

1.    GlassRatner Advisory & Capital Group, LLC ("GlassRatner") was retained on July 20, 2018 by Robert Furr (the "Trustee"), the Chapter 7 Trustee of Chance & Anthem, LLC ("Chance" or the "Debtor"), to provide forensic accounting and litigation support services in connection with the Debtors Bankruptcy Case.

2.    In connection with the litigation described below in **Section II**, the Trustee requested that we evaluate the financial condition of the Debtor during the four-year period preceding the bankruptcy filing date of January 29, 2018 (the "Petition Date"). We therefore evaluated the financial condition of the Debtor as of December 31 each year from 2014 through 2017 (the "Valuation Dates") and opine on whether the Debtor was solvent or insolvent as of each of the Valuation Dates.

3.    Additionally, in connection with the litigation described below in **Section II**, the Trustee requested that we evaluate the consolidated financial condition of Chance combined with the following related entities during the four year period preceding the Petition Date: Florida's Association of Community Banks and Credit Unions, Inc. ("FLACC"), Siskind Legal Services, LLC ("Siskind Legal"), Sovereign Gaming & Entertainment, LLC ("Sovereign"), and Sympatico Equine Rescue, Inc. ("Sympatico") (collectively referred to as the "Related Entities"). We therefore evaluated the consolidated financial condition of Chance and the Related Entities as of the Valuation Dates and opine on whether the they were collectively solvent or insolvent as of each of the Valuation Dates.

4.    In order to perform this engagement, I relied on other GlassRatner professionals with extensive experience in financial analysis, solvency analysis, economic damages, business valuation and forensic accounting, all of whom worked under my direct supervision and control.  I have relied on the work of this team to support my analysis of information related to this matter, and references to "our" and "we" recognize this reliance.  Any differences in the amounts calculated or referenced in this report to the underlying supporting documentation are due to rounding.

5.    GlassRatner's fees for professional services provided are based on hours actually expended by each assigned staff member extended by the standard hourly billing rate for that individual.  The hourly billing rates for professional staff working on this matter range from $150 to $515 for staff and my time has been billed at $450 per hour.

6.    Our analysis was performed solely for the purpose stated above.  This analysis is not intended for general circulation or publication, nor is it to be referred to or used for any purpose other than that outlined above, or without our prior written consent in each specific instance.

### *Summary of Conclusions*

7.    Regarding the Debtor as a stand-alone entity, it is my opinion that:

- The Debtor was insolvent based on the balance sheet test as of December 31, 2014 and remained insolvent as of each Valuation Date through the Petition Date, and

- The Debtor was not adequately capitalized as of December 31, 2014 and remained inadequately capitalized as of each Valuation Date through the Petition Date, and

- The Debtor was not able to meet its debt obligations as they became due, beginning no later than December 31, 2014 and continued to not be able to meet its debt obligations as they became due as of each of the Valuation Dates and through the Petition Date.

8.    Regarding the consolidated financial condition of Chance and the Related Entities, it is my opinion that:

- Chance and the Related Entities were insolvent based on the balance sheet test as of December 31, 2014 and remained insolvent as of each of the Valuation Dates and through the Petition Date, and

- Chance and the Related Entities were not adequately capitalized as of December 31, 2014 and remained inadequately capitalized as of each of the Valuation Dates and through the Petition Date,

- Chance and the Related entities generally did not follow corporate formalities as summarized at paragraph 59, and

- Chance and the Related Entities were not able to meet their debt obligations as they became due, beginning no later than December 31, 2014 and continued to not be able to meet their debt obligations as they became due as of each of the Valuation Dates and through the Petition Date.

## II.    ABOUT THE LITIGATION

9.    This report has been prepared in connection with the amended adversary complaint filed by the Trustee, which is generally described below.

10.    On August 6, 2019, the Trustee filed an Adversary Complaint To Avoid and To Recover Fraudulent Transfers, For Turnover, For An Accounting, Alter-Ego, Substantive Consolidation, Injunctive Relief and For Other Relief (Case No.: 18-16248-BKC-MAM). On November 1, 2019, the Trustee filed the First Amended Adversary Complaint to Avoid and to Recover Fraudulent Transfers, For Turnover, For An Accounting, Substantive Consolidation, Injunctive Relief and for Other Relief (the "Amended Complaint" or "Amended Adversary Complaint").

11.    The Amended Complaint was filed against the following Defendants:
- Jeffrey Siskind – Individually
- Jeffrey Siskind doing business as Siskind Legal Services
- Tanya Siskind – Individually
- Jeffrey Siskind as Trustee of the Second Siskind Family Trust
- CannaMED Pharmaceuticals, LLC
- OB Real Estate Holdings 1732, LLC
- Siskind Legal Services, LLC
- Sovereign Gaming & Entertainment, LLC
- Florida's Association of Community Banks and Credit Unions, Inc.
- Sympatico Equine Rescue, Inc.
- Wellington 3445, LP
- Zokaites Properties, LP
- Robert Gibson – Individually

12. Additionally, the Trustee filed a four separate Adversary Complaints To Avoid And Recover Avoidable Transfers And For Other Relief in connection with fraudulent transfers disbursed to: 1) Advanced Avionics, LLC (the "Advanced Avionics Complaint"), 2) Air Center, Inc. (the "Air Center Complaint"), 3) New Country Motor Cars of Palm Beach, LLC d/b/a Mercedes Benz of Palm Beach (the "New Country Complaint"), and 4) Ocean Reef Club, Inc. (the "Ocean Reef Complaint").

## III.   SCOPE OF REVIEW AND LIMITING CONDITIONS

### Scope and Limiting Conditions

13. My analysis was based on documents and information enumerated in **Appendix 1** of this report and discussed throughout the report and attachments.

14. Part of my analysis included the preparation of various valuation analysis, calculations and conclusions.  All of the valuation work performed in this engagement has been prepared in accordance with the business valuation standards of the American Institute of Certified Public Accountants ("AICPA") Statement of Standards for Valuation Services No. 1 ("SSVS").  Furthermore, all of the valuation analyses and methodologies applied herein are consistent with the generally accepted body of knowledge in the area of business valuation.

## IV.   RELEVANT HISTORY OF THE DEBTOR

15. On February 11, 2013, Jeffery Siskind ("Siskind") filed personal Chapter 11 bankruptcy with the U.S. Bankruptcy Court in the Southern District of Florida – West Palm Beach Division under Case No.: 13-13096-MAM (the "Siskind Chapter 11"). Siskind's Plan of Reorganization was approved on October 22, 2014 and the Siskind Chapter 11 was dismissed on June 11, 2018 for failure to comply with required payment of US Trustee fees and reporting requirements.  During the pendency of the Siskind Chapter 11, Siskind was involved in significant business transactions that ultimately led up to the filing of the Debtor's bankruptcy.

16. Below is an overview of the Debtor's business, operations and relevant key events leading up to the Petition Date.

### *Chance & Anthem, LLC*

17.   Chance was formed as a Limited Liability Company in the State of Florida on October 9, 2014. Siskind was the sole member and control person. Siskind also served as the primary attorney for the Debtor.

18.   According to Siskind[1], the Debtor's two primary business purposes were to: 1) fund the start-up and operation of CannaMED Pharmaceuticals, LLC ("CannaMED"), a medical cannabis growing venture located in Hebron, Maryland in which the Debtor held a 70% membership interest, described by Siskind as a non-controlling interest, and 2) to renovate a large mansion-type home located at 3445 Santa Barbara Drive, Wellington, FL 33144 (the "Wellington Home").

### **CannaMED Pharmaceuticals, LLC**

19.   CannaMED was formed on October 27, 2015 by Siskind, per Maryland corporate search records. According to the CannaMED Operating Agreement dated same, Siskind is listed as the Managing Member and Managing Director. The Operating Agreement reflects ultimate power and authority on all corporate matters resided with the Managing Member.

20.   CannaMED planned to operate a growing facility in Hebron, Maryland, that included 7.4 acres of land and a 47,000 sq. ft. production warehouse (the "Hebron Property").  Initially, in June 2015, related entity Sovereign entered into an Improved Commercial Sales Contract with Machining Technologies Inc. ("Machining Technologies") to purchase the Hebron Property for the sum of $950,000.  Sovereign did not close under the terms of the contract, but instead entered into a Purchase Option Agreement with Machining Technologies dated August 28, 2015.  Per section 5.4.4 (Site Financing) of CannaMED's company business plan, CannaMED was the third-party beneficiary of the Purchase Option Contract. Lastly, on March 31, 2016, Chance entered into a Commercial Lease with Option to Purchase with 27120 Ocean Gateway LLC for the use of the Hebron Property.

---

[1] **Source**: First Amended Adversary Complaint to Avoid and to Recover Fraudulent Transfers, For Turnover, For An Accounting, Substantive Consolidation, Injunctive Relief and for Other Relief – Filed November 1, 2019 (the "Amended Complaint" or Amended Adversary Complaint")

21.  In order to operate as a medical cannabis growing company in the state of Maryland, CannaMED needed to obtain a grower's license from the Maryland Medical Cannabis Commission (the "MMCC"). According to the MMCC website, the process of obtaining a license requires a potential grower to apply with the MMCC and then go through a two-phase approval process. During phase one of the approval process,  the potential grower's business plan is evaluated and if preliminarily approved the potential grower moves onto phase two, which requires a physical site visit from state officials and approval of growing facilities. Upon approval of both phase one and two by MMCC, the potential grower becomes a pre-approved grower with the MMCC and the State of Maryland.

22.  During the initial round of grower license application[2], CannaMED was one of 146 potential growers to successfully submit an application and supporting business plan (the "CannaMED Business Plan") by the November 6, 2015 deadline[3]. Per the MMCC, only 15 grower licenses would be awarded during the inaugural application period.

23.  The CannaMED Business Plan stated their mission was to" provide medical cannabis processors and dispensaries with safe, affordable medical cannabis of consist and pharmaceutical-grade."   Their first year objectives were as follows:[4]

- Complete and open the facility consistent with representations made to the Commission, and by first utilizing a preliminary 'fast start' which will permit bringing the product to harvest within 5.5 months of licensure;
- Obtain and train employees who can work in a regulatory environment, and are happy and motivated;
- Develop and launch a distribution program which permits ample feedback from licensed medical cannabis processors and dispensaries, and based upon recommendations from a Business Board of Advisors; and
- Devote 5,000 sq. ft. of the facility (on the second floor) and adequate funding to initiate a medical science component, including collaboration with a Scientific Board of Advisors.

---

[2] Debtor applied during inaugural application period. Subsequent application periods have re-opened for new growers to apply.

[3] MMCC Announcement dated December 21, 2015 re: Revised Scoring Timeline for Grower and Processor License Applications

[4] CannaMED Pharmaceuticals, LLC – Company Business Plan

24. The CannaMED Business Plan contemplated three separate stages of build-out projections for the Hebron Property. Based on the CannMED Business Plan, the first stage of the build out, referred to as the 'Fast Start' phase, required capital of approximately $424,000 and would take about two and a half months to complete. The second stage required capital of approximately $985,000 and would take about six and a half months to complete. The third and final stage, referred to as the "full build-out", required capital of approximately $1.6MM and would take about eight and a half months to complete.  The CannaMED Business Plan indicated that the capital required for the business would be funded by Chance through the profits from the Wellington House.

25. Included in the CannaMED Business Plan were three separate Profit & Loss projections related to each stage of the build out of the Hebron Property. During the first stage, CannaMED projected annual revenue of approximately $1.925MM and net profit of approximately $87,000. During the second stage, CannaMED projected annual revenue of approximately $9.625MM and net profit of approximately $4MM. For the last stage 3, the full build-out, CannaMED projected annual revenue of approximately $19.25MM and net profit of approximately $9.5MM.

26. One December 9, 2016, the MMCC announced 10 growers that were granted Phase One license pre-approval and CannaMED was not listed and therefore failed to receive Phase one approval.

27. On August 15, 2017, CannaMED filed a Complaint for Damages and Injunctive Relief against the MMCC with the Circuit Court for Baltimore City (Case No.: 24-C-17-004230) claiming damages associated with MMCC's decision to not grant a license to CannaMED. On January 30, 2018, the court granted the Defendant's Motion to Dismiss, stating there was no contractual relationship between the parties and the Complaint failed to state a claim upon which relief could be granted.  On February 19, 2018, CannMED filed a Motion for Reconsideration, which was denied by the court on April 2, 2018. On May 2, 2018, CannaMED filed a Notice of Appeal, which was denied by the court on January 9, 2019. CannaMED again filed a Motion for Reconsideration on January 22, 2019, but the motion was again denied by the court on February 6, 2019. We have not been provided any information that CannaMED submitted subsequent applications. We believe that from the date CannaMED learned it was not granted the growers license up until the Petition Date, CannaMED did not attempt to re-apply for the grower's license.

### *The Wellington Home*

28.    Pursuant to a deed dated August 25, 2015, the Debtor purchased the Wellington Home for $1.25MM.  The purchase of the Wellington Home was funded by loans from investors. The purpose of this real estate purchase by the Debtor was to renovate the home to sell it for a profit. Our financial reconstruction indicate that after purchasing the Wellington Home, the Debtor did little renovations, never sold the property as a renovated home and in June of 2017 the lender foreclosed on the Wellington Home.

29.    According to an appraisal prepared by Greg Eidson, MAI, CCIM (the "Real Estate Appraiser") of GlassRatner dated February 27, 2020, the Wellington Home had an approximate value between $1.2MM and $1.5MM as of December 31, 2015 and December 31, 2016 (the "Appraisal").

30.    The Real Estate Appraiser reviewed the building permits issued to the Debtor in connection with the Wellington Home. The Appraisal reflects that the only permit the Debtor ever obtained in connection with the Wellington House was a permit to demolish the detached garage.  As discussed above the Debtor's business purpose for purchasing the Wellington House was to renovate the property and sell the property for a profit but from acquisition until the foreclosure sale in June 2017 the Debtor was only permitted to demolish the garage.

### *The Bankruptcy Filing*

31.    On January 29, 2018, the Debtor filed for voluntary Chapter 7 bankruptcy with the U.S. Bankruptcy Court for the District of Maryland. That same day, George W. Liebman was appointed as the Chapter 7 Trustee. On March 17, 2018, the 341 Meeting of Creditors was held and the Debtor failed to appear.

32.    On May 24, 2018, an order was approved transferring the venue to the Bankruptcy Court for the Southern District of Florida – West Palm Beach Division (Case No.: 18-16248-MAM). The next day, on May 25, Robert C. Furr was appoint as the new Chapter 7 Trustee (the "Trustee").

33. Pursuant to the Debtor's amended bankruptcy schedules A & B [ECF 59], the Debtor listed CannaMED with a value of $14MM. The Debtor omitted the Wellington Home from assets on its bankruptcy schedules, due to the foreclosure (discussed below in paragraph 94), however the Debtor included the debts associated with the Wellington House as liabilities on the bankruptcy schedules.  According to the Claims Register, eight claims have been filed against the Debtor in the total amount of $4,114,896.17, of which $42,500 is claimed secured.

V.    THE NATIONAL, STATE, AND LOCAL ECONOMY

34. In preparation of this report, we reviewed and considered the Economic Outlook Update for the 4th Quarter of 2016 prepared by Business Valuation Resources, LLC. This report provides an overall look at the national economy, summarizing both past performance and future predictions.

35. The appraisal includes a discussion regarding local Palm Beach County economy.

VI.    FINANCIAL ANALYSIS OF CHANCE & THE RELATED ENTITIES

36. The analysis of any business includes performing a detailed financial analysis.  Financial analysis is the process of summarizing, synthesizing, comparing and interpreting financial data and other relevant information in order to assess a company's present performance and future prospects.

37.　To our knowledge, the Debtor and the Related Entities did not prepare any financial statements and did not maintain a financial accounting system or ledgers of their financial activity for any period. For purposes of this Expert Report, we prepared a reconstruction of the Debtors cash activity that was used as the primary basis of our evaluation of assets, liabilities, income and expenses. The categorization of the Debtors and Related Entities financial activity was based upon the information available to us, including the bankruptcy schedules of the Debtor and Jeffrey Siskind, documents turned over to the Trustee, filed claims, pleadings, 2004 examinations, etc. The categorization of the financial activity including the amounts Due To (payables) and Due From (receivables) was for the purpose of evaluating solvency or insolvency only and for no other purpose.  Payments made to third parties in exchange for no value (or less than equivalent value) may not represent actual amounts due from Siskind or others. Additionally, we utilized the claims filed against the Debtor and public records for purposes of evaluating assets, liabilities, income and expenses for the period of 2014 through 2017 (the "Analyzed Period").

38.　Below at **Tables 6-1 and 6-2** are the summaries of assets & liabilities and income & expenses of the Debtor as a stand-alone entity and **Tables 6-3 and 6-4** are the summaries of assets & liabilities and income & expenses of the Debtor consolidated with the Related Entities.

### *Summaries of Assets, Liabilities, Income, and Expenses – Chance & Anthem, LLC*

39.　**Table 6-1** summarizes the summary of assets and liabilities prepared for Chance for the calendar years 2014 through 2017.

**Table 6-1**

| Description | 12/31/2014 | 12/31/2015 | 12/31/2016 | 12/31/2017 |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Cash | $ 735,179.97 | $ 54,725.05 | $ 125.48 | $ 770.15 |
| 3445 Santa Barbara | - | 1,405,000.00 | 1,300,000.00 | - |
| 3445 Santa Barbara - Refi | - | - | 1,815.63 | - |
| Due to/from David Merrill | - | 22,618.37 | - | - |
| Due to/from Fiore | - | 43,500.00 | 43,500.00 | 43,500.00 |
| Due to/from FLACC | 100,000.00 | 272,350.00 | 320,685.95 | 321,035.95 |
| Due to/from George Maler | - | - | - | - |
| Due to/from Gibson | - | - | - | 500.00 |
| Due to/from Jeffrey Siskind | 13,233.88 | 296,953.51 | 297,794.91 | 293,748.91 |
| Due to/from Jeffrey Siskind - Aircraft | - | 117,000.00 | 117,091.00 | 117,091.00 |
| Due to/from Jeffrey Siskind - Auto | - | 26,500.00 | - | - |
| Due to/from OB Real Estate | 15,000.00 | 22,500.00 | 37,125.00 | 37,125.00 |
| Due to/from Siskind Legal | - | - | 62,395.00 | 55,810.20 |
| Due to/from Siskind Iota | 100,000.00 | 110,000.00 | - | - |
| Due to/from Sovereign Gaming | 1,000.00 | 56,000.00 | 60,581.00 | 60,581.00 |
| Due to/from Sympatico | - | - | 5,132.50 | 9,442.50 |
| Due to/from Tanya Siskind | - | - | 16,500.00 | 16,500.00 |
| Due to/from Unknown - Santa Barbara Refi. | - | - | 400,000.00 | - |
| Due to/from Volkwein | 193,109.92 | - | - | - |
| Due to/from Wendy Buckingham | - | - | 16,200.00 | 16,200.00 |
| Due to/from Zokaites | - | 62,506.00 | 47,506.00 | 47,506.00 |
| In the Weeds | - | - | 290.00 | 290.00 |
| New Wave Loan | - | - | 32,125.00 | 32,125.00 |
| Transfers between Chance accounts | - | - | 9,720.00 | 9,720.00 |
| **Total Assets** | **$ 1,157,523.77** | **$ 2,489,652.93** | **$ 2,768,587.47** | **$ 1,061,945.71** |
| | | | | |
| **LIABILITIES** | | | | |
| 3445 Santa Barbara | $ - | $ 739,445.74 | $ 739,445.74 | $ - |
| 3445 Santa Barbara - Refi | - | - | 500,000.00 | - |
| Due to/from Carl Sone & David Fiore | - | 770,000.00 | 770,000.00 | 770,000.00 |
| Due to/from George Maler | - | 190,950.00 | 199,200.00 | 204,300.00 |
| Due to/from M&T Bank | - | - | 60,000.00 | 60,000.00 |
| Due to/from Richard Neff | - | 500,000.00 | 500,000.00 | 500,000.00 |
| Due to/from Siskind Iota | - | - | 142,850.00 | 159,666.00 |
| Due to/from Sympatico | - | - | - | 2,441.00 |
| Due to/from Volkwein | 1,157,623.77 | 539,606.25 | 539,606.25 | 539,606.25 |
| Due to/from Zokaites | - | - | - | 1,560.00 |
| In the Weeds | - | - | 50,000.00 | 50,000.00 |
| Sharp Energy | - | - | 1,250.00 | 2,500.00 |
| Transfers between Chance accounts | - | - | 9,720.00 | 9,720.00 |
| Total Liabilities | 1,157,623.77 | 2,740,001.99 | 3,512,071.99 | 2,299,793.25 |
| | | | | |
| **Solvency/Insolvency** | **$ (100.00)** | **$ (250,349.06)** | **$ (743,484.52)** | **$ (1,237,847.54)** |

40.   With regard to the Debtor's assets and liabilities summarized in **Table 6-1** I noted the following:

   a.   The Debtor was over leveraged;

   b.   The Debtor's liabilities exceed its assets every year;

    c.   The Debtor's assets consisted of the Wellington home, an interest in CannaMED, and transfers to or for the benefit of Jeffrey Siskind and Related Entities which, as discussed herein, may be uncollectible;

    d.   The Debtors bank activity included numerous indiscriminate transfers to and from Related Entities, which we have been categorized for evaluating solvency/ insolvency as amounts Due to/Due from the Related Entities in the summary of assets and liabilities; and

    e.   The Debtor made significant transfers to or for the benefit of Jeffrey Siskind, which we have categorized for evaluating solvency/ insolvency as amounts Due to/Due from Siskind.

41.   **Table 6-2** summarizes the income and expenses for Chance for the calendar years 2014 through 2017.

**Table 6-2**

| Description | 12/31/2014 | 12/31/2015 | 12/31/2016 | 12/31/2017 | Total |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Income Received | $         - | $         - | $         - | $         - | $         - |
| | | | | | |
| **Expenses** | | | | | |
| Auto Insurance | - | - | 508.69 | - | 508.69 |
| Bank Fees | 100.00 | 389.00 | 2,026.58 | 1,560.50 | 4,076.08 |
| Cash & Withdrawals [1] | - | 79,500.00 | (46,646.50) | (30,703.20) | 2,150.30 |
| Client Expenses | - | 41,250.00 | (3,500.00) | - | 37,750.00 |
| Closing Costs | - | - | 73,054.26 | | 73,054.26 |
| Commisions | - | 17,812.50 | 18,050.00 | - | 35,862.50 |
| Donations | - | - | 1,000.00 | - | 1,000.00 |
| Employee Related | - | - | 59,660.65 | 100.00 | 59,760.65 |
| Gas & auto | - | 52.23 | 1,884.99 | 2,017.07 | 3,954.29 |
| Maintenance | - | 378.28 | 21,135.70 | 3,001.61 | 24,515.59 |
| Meals | - | 357.85 | 3,666.65 | 3,049.24 | 7,073.74 |
| Miscellaneous | - | 40.00 | 3,957.64 | 8,186.51 | 12,184.15 |
| Office Rent/Mortgage | - | 3,796.72 | 185,290.83 | 22,255.37 | 211,342.92 |
| Property Expense | - | 8,771.90 | | 7,899.82 | 16,671.72 |
| Travel and Entertainment | - | 1,979.74 | 7,236.93 | 4,266.40 | 13,483.07 |
| Utilities | - | 639.21 | 2,911.01 | 159.81 | 3,710.03 |
| | | | | | |
| Total Expenses | 100.00 | 154,967.43 | 330,237.43 | 21,793.13 | 507,097.99 |
| | | | | | |
| **Net Income/(Loss)** | $   (100.00) | $  (154,967.43) | $  (330,237.43) | $  (21,793.13) | $  (507,097.99) |

**FOOTNOTES:**
[1] Although Chance & Anthem reflects net cash deposits in years 2016 & 2017, when reviewing the consolidated Related Entities, including Siskind IOTA, they reflect net checks to cash and withdrawals of approximately $168K over the four year period.

42.   With regard to the Debtor's income and expenses as shown in **Table 6-2** I noted the following:

a. The Debtor had no income from business operations;

b. The Debtors cash activity reflected significant withdrawals and deposits of cash; and

c. The Debtor incurred a net loss every year since it had no income and incurred expenses.

### Summaries of Assets, Liabilities, Income, and Expenses – Debtor Consolidated with Related Entities

43. **Table 6-3** summarizes the consolidated summary of assets and liabilities for the Debtor combined with the Related Entities for the fiscal years 2014 through 2017.

**Table 6-3**

| Description | December 31, 2014 | December 31, 2015 | December 31, 2016 | December 31, 2017 |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Cash | $  735,595.09 | $  59,734.74 | $  896.33 | $  1,308.29 |
| 3445 Santa Barbara | - | 1,405,000.00 | 1,300,000.00 | |
| Due to/from David Merrill | - | 22,618.37 | - | - |
| Due to/from Fiore | 76,000.00 | 119,500.00 | 299,542.65 | 299,542.65 |
| Due to/from Gibson | 2,500.00 | 2,700.00 | 2,700.00 | 3,800.00 |
| Due to/from Jeffrey Siskind | 380,306.34 | 1,070,555.28 | 1,285,669.13 | 1,285,375.18 |
| Due to/from Jeffrey Siskind - Aircraft | 50,462.00 | 241,128.41 | 245,150.92 | 245,150.92 |
| Due to/from Jeffrey Siskind - Auto | - | 26,500.00 | - | - |
| Due to/from OB Real Estate | 1,015,086.25 | 1,000,000.00 | 1,000,000.00 | 1,000,000.00 |
| Due to/from Tanya Siskind | - | 4,000.00 | 20,500.00 | 22,700.00 |
| Due to/from Unknown - Santa Barb. Refi. | - | - | 400,000.00 | - |
| Due to/from Wendy Buckingham | - | - | 16,200.00 | 16,200.00 |
| Due to/from William Siskind | 15,192.77 | 15,325.50 | 15,325.50 | 15,325.50 |
| Due to/from Zokaites | 25,000.00 | 117,506.00 | 102,506.00 | 61,448.40 |
| **Total Assets** | $  2,300,142.45 | $  4,084,568.30 | $  4,690,306.16 | $  2,950,850.94 |
| | | | | |
| **LIABILITIES** | | | | |
| 3445 Santa Barbara Mortgages | $  - | $  739,445.74 | $  739,445.74 | $  - |
| 3445 Santa Barbara - Mortgage Refi | - | - | 500,000.00 | - |
| 3485  Lago de Talavera | - | - | 271,586.55 | 271,586.55 |
| Due to/from Carl Sone & David Fiore | - | 770,000.00 | 770,000.00 | 770,000.00 |
| Due to/from Christopher George | 1,911,000.00 | 1,911,000.00 | 1,911,000.00 | 1,911,000.00 |
| Due to/from George Maler | 76,954.33 | 271,249.81 | 288,421.09 | 292,221.09 |
| Due to/from M&T Bank | - | - | 60,000.00 | 60,000.00 |
| Due to/from OB Real Estate | - | 70,986.78 | 33,071.78 | 33,071.78 |
| Due to/from Richard Neff | - | 500,000.00 | 500,000.00 | 500,000.00 |
| Due to/from Siskind Iota | 72,500.00 | 544,330.00 | 133,280.00 | 161,541.00 |
| Due to/from Volkwein | 904,513.85 | 479,606.25 | 479,606.25 | 479,606.25 |
| Due to/from William Siskind | 266.40 | 266.40 | 266.40 | 766.40 |
| In the Weeds | - | - | 99,710.00 | 99,710.00 |
| Sharp Energy | - | - | 1,250.00 | 3,750.00 |
| Transfers between Chance accounts | - | - | 9,720.00 | - |
| **Total Liabilities** | $  2,965,234.58 | $  5,286,884.98 | $  5,797,357.81 | $  4,583,253.07 |
| | | | | |
| **Solvency/Insolvency** | $  (665,092.13) | $ (1,202,316.68) | $ (1,107,051.65) | $ (1,632,402.13) |

44. With regard to the consolidated summary of assets and liabilities as shown in **Table 6-3** I noted the following:

    a. Similar to the Debtor, the consolidated entities were overleveraged;

    b. The consolidated entities had liabilities that greatly exceed assets every year; and

    c. The largest asset consists of amounts Due from Siskind that are likely uncollectable (as discussed in paragraph 87).

45. **Table 6-4** summarizes the consolidated summary of income and expenses for the Debtor combined with the Related Entities for the fiscal years 2014 through 2017.

### Table 6-4

| Description | December 31, 2014 | December 31, 2015 | December 31, 2016 | December 31, 2017 | Total |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Income Received | $ - | $ - | $ - | $ - | $ - |
| | | | | | |
| **Expenses** | | | | | |
| Auto Insurance | - | - | 508.69 | 570.77 | 1,079.46 |
| Bank Fees | 1,278.50 | 918.00 | 3,114.88 | 2,900.50 | 8,211.88 |
| Cash & Withdrawals [1] | (16,405.92) | 29,123.47 | (55,170.00) | (27,808.33) | (70,260.78) |
| Client Expenses | 1,234.75 | 40,640.29 | (3,500.00) | 1,793.76 | 40,168.80 |
| Closing Costs | - | - | 73,054.26 | | 73,054.26 |
| Credit Card | 400.00 | - | - | - | 400.00 |
| Commisions | 377.98 | 18,030.50 | 23,550.00 | - | 41,958.48 |
| Donations | 2,997.83 | 6,423.59 | 3,288.86 | - | 12,710.28 |
| Employee Related | 4,116.97 | 6,439.57 | 61,673.29 | 100.00 | 72,329.83 |
| Gas & auto | 6,294.38 | 16,710.97 | 5,748.53 | 2,297.90 | 31,051.78 |
| Insurance | 2,508.24 | 10.62 | - | - | 2,518.86 |
| Investment in CannaMED | - | - | - | - | - |
| Maintenance | 14,201.72 | 27,461.59 | 29,690.48 | 4,830.66 | 76,184.45 |
| Meals | 9,925.27 | 7,066.55 | 7,224.22 | 4,126.77 | 28,342.81 |
| Miscellaneous | 45,811.42 | 21,303.48 | 19,518.27 | 34,074.12 | 120,707.29 |
| Office Rent/Mortgage | 104,244.41 | 99,357.07 | 180,403.63 | 23,790.54 | 407,795.65 |
| Property Expense | 16,370.63 | 10,294.85 | 95,651.35 | 17,878.52 | 140,195.35 |
| Taxes | (9,320.43) | 363.50 | - | - | (8,956.93) |
| Travel and Entertainment | 13,732.54 | 25,179.42 | 16,052.86 | 4,872.97 | 59,837.79 |
| Utilities | 1,391.85 | 3,512.73 | 6,115.21 | 977.21 | 11,997.00 |
| | | | | | |
| Total Expenses | 199,160.14 | 312,836.20 | 466,924.53 | 70,405.39 | 1,049,326.26 |
| | | | | | |
| **Net Income/(Loss)** | **$ (199,160.14)** | **$ (312,836.20)** | **$ (466,924.53)** | **$ (70,405.39)** | **$ (1,049,326.26)** |

**FOOTNOTES:**

[1] Related entity Siskind IOTA reflected an additional approximate $238K of net checks to cash and withdrawals that are not included in this consolidation.

46. With regard to the consolidated income statement as shown in **Table 6-4,** I noted the following:

    a. The cash activity of the consolidated entities reflect no income from operations;

    b.   The consolidated activity reflects significant cash activity in the form of cash withdrawals and cash deposits; and

    c.   The consolidated entities incurred a net loss every year since they had no income and incurred expenses.

47. In connection with our evaluation of the assets and liabilities we identified and analyzed significant indiscriminate transfers between the Debtor, Related Entities and Siskind. Although we found no evidence that these transfers were loans and/or were documented by promissory notes with stated terms, we assumed that the net amount of the transfers between the Debtor, Related Entities and Siskind resulted in the amounts we categorized as due to or from asset or liability, for purposes of evaluating solvency/ insolvency. As indicated above in **Table 6-3**, net transfers to or for the benefit of Siskind totaled over $430,000 as of December 31, 2014, $1.3 million as of December 31, 2015 and over $1.5 million as of December 31, 2016 through 2017 and made up approximately 65% of the total assets of the Debtor and Related Entities as of December 31, 2017. The majority of net transfers to or for the benefit of Siskind were made during the period when Siskind's personal bankruptcy was pending.

### Summary of Financial Analysis – Chance & Anthem, LLC

48. Overall, the financial analysis of the Debtor summarized in **Tables 6-1 and 6-2** reflect a company with no income, expenses primarily related to the Wellington Property and CannaMED with net losses, no capital, no earnings, over leveraged, and significant indiscriminate transfers between Related Entities and Siskind.

### Summary of Financial Analysis – Debtor Consolidated with Related Entities

49. Similar to Chance, the financial analysis of the consolidated companies summarized in **Tables 6-3 and 6-4** reflect no income, expenses primarily related to the Wellington Property, CannaMED and payroll and net losses, no capital, lack of retained earnings, over leveraged and significant indiscriminate transfers between the Debtor, Related Entities, and Siskind.

### VII.  FINANCIAL TRACING ANALYSIS AND EVALUATION OF CORPORATE FORMALITIES

#### *Christopher George*

50.  As discussed in the Amended Adversary Complaint, Christopher George, a Siskind client and incarcerated individual, transferred $2MM and his homestead (located at 3485 Lago de Talavera, Lake Worth, FL 33467 ("Talavera House")).  The Talavera House was transferred via quitclaim deed to the Talavera Trust on or around May 8, 2013 while the $2MM was transferred later that same year to the Siskind IOTA account, on or around December 24, 2013.

51.  The $2 million from George was deposited into the Siskind IOTA Trust account and then approximately $1.9MM was transferred to related entity Sovereign. The flow of funds after the $1.9MM transfer to Sovereign is outlined below:

- Two transfers totaling $70,000 to a private membership club;
- Transfer of $1.15MM to FLACC that would be subsequently used to purchase an office condominium;
- Withdrawal of $100,000 in cash;
- Acquisition of a mortgage on the Talavera House;
- Purchasing real estate located at 114000 Torchwood Court, Wellington, FL in the name of David Fiore and Beacon Acquisition; and
- Transfer of $25,000 in cash to Siskind Legal and a transfer $25,000 in cash to Siskind.

52.  **Table 7-1** below shows a summary flowchart of all the transfers:

**Table 7-1**



### Carl Stone & Richard Neff

53.  On or around August 9, 2015, Carl Stone and his associate David Fiore transferred $800,000 to Siskind's trust account. According to Siskind[5], the transfer was for investment purposes to renovate and improve the Wellington Home. Siskind allegedly told Stone he would record the proper instruments to protect Stone's security interest in the property, but we have seen no such instrument recorded.

54.  Instead, below is a summary of the flow of funds:

- Transfer $35,000 to related entity FLACC, then FLACC subsequently transferred $30,000 to Siskind, individually;
- Transfer $750,000 to FLACC and subsequently $725,000 was transferred by FLACC back to the Debtor; and
- The remainder of the proceeds totaling $1.121MM were used to purchase the Wellington Home.

---

[5] **Source**: Amended Adversary Complaint

55. On or around October 6, 2015, Richard Neff transferred $500,000 to Siskind for the same purpose of renovating and improving the Wellington Home. Again, Siskind allegedly did not record any kind of instrument to protect Neff's interest. Instead, Siskind transferred $59,000 from the Debtor to purchase a Mercedes Benz in the name of the Second Siskind Family Trust, which he testified that his wife (Tanya Siskind) drove and the remaining balance was used to fund the purchase of the Wellington Home.

56. **Table 7-2** below shows a summary flowchart of all the transfers:

**Table 7-2**

*Fredrick Volkwein*

57. According to Siskind[6], on or around November 17, 2014, Fredwick Volkwein transferred $1,157,623 to the Debtor to be used for investment purposes, the actual flow of funds follows:

- Transfer $230,000 to related entity FLACC, then FLACC subsequently transferred $188,000 to Siskind, individually and $15,000 to related entity Siskind Legal;
- Transfer $101,500 to Siskind through a series of six separate disbursements;
- Transfer $100,000 to the IOTA Trust account;
- Transfer $58,000 to an entity named "Fenderhooks," which appears to be Volkwein;
- Transfer $45,000 to George Maler satisfy Maler's previous debt;
- Transfer $43,500 to Crystal Title and Equity regarding "Fiore" (from the Carl Stone & David Fiore transfers discussed above);
- Transfer $26,000 to related entity Sovereign; and
- Utilized $535,109 of Volkwein's own funds to repay Volkwein for a prior investment.

58. **Table 7-3** below shows a summary flowchart of all the transfers:

**Table 7-3**



[6] **Source**: Amended Adversary Complaint and Continued 2004 Examination of Jeffrey M. Siskind – December 19, 2019

### *Corporate Formalities*

59.  In connection our analysis of Chance & the Related Entities, we noted the below issues which summarize our analysis regarding the observance of corporate formalities:

  a.  Each Related Entities was a separate legal entity and other than CannaMED each had its own bank account

  b.  The banking activity of FLACC, Siskind Legal and Sympatico do not reflect activity consistent with their stated corporate purposes

  c.  Siskind was a signatory to the bank accounts of the Chance and the Related Entities and substantially all of the available documents evidencing banking transactions were signed by Siskind

  d.  A substantial portion of the banking activity of Chance and the Related Entities is activity on behalf of Siskind, his family and transfers between the Related Entities and other entities controlled by Siskind

  e.  The banking activity of Chance, the Related Entities and other accounts controlled by Siskind reflect checks made payable to cash, deposits of cash and withdrawals in the total amount of hundreds of thousands of dollars and no registers, ledgers or receipts have been provided that document the use of the funds and purpose or nature of the transactions

  f.  The banking activity of FLACC reflect numerous debit card transactions that appear to be consumer purchases, presumably on behalf of Siskind or his family

  g.  There are numerous indiscriminate banking transfers between Chance and the Related Entities and also among the Related Entities and we have not been provided any notes, agreements or other documents evidencing the business purpose or terms of the transactions

  h.  Chance and the Related Entities conducted financial transactions on behalf of each other without agreements, ledgers or other documents evidencing the nature and terms of the transactions

  i.  Chance and the Related Entities did not maintain ledgers or registers of the amounts due to/ due from each entity

  j.  Siskind maintained what he describes as an "online check register" for Chance, however the check register did not cover the whole time period of Chance's existence, was not complete, was not accurate, and did not record deposits

  k.  Other than the "online check register" for Chance, we have not been provided any registers, accounting ledgers or other documents evidencing the nature and business purposes of the financial transactions of Chance and the Related Entities

  l.  Siskind advised that income tax returns were not filed on behalf of Chance and we have not been provided income tax returns for the Related Entities

  m.  GlassRatner has incurred hundreds of hours to reconstruct the banking activity and analyze the available information in an attempt to understand the financial affairs of Chance and the Related Entities

### VIII. VALUATION ANALYSIS

60. As part of the assignment, I performed a valuation of Chance as of the Valuation Dates, which included:

    a. An analysis of the transfers to/ from the Related Entities and Siskind;

    b. an analysis of CannaMED, the efforts and failure to obtain a grower's license from the MMCC; and

    c. the review of an appraisal of the Wellington Home.

#### Valuation Parameters (Standard of Value and Premise of Value)

61. The Standard of Value typically applied in a valuation assignment is "Fair Market Value," which is defined as:

> *The price, expressed in terms of cash equivalents, at which the property would change hands between a hypothetical willing and able buyer and a hypothetical willing and able seller, acting at arm's length in an open and unrestricted market, when neither is under compulsion to buy or sell and when both have reasonable knowledge of the relevant facts.* [7]

62. The Premise of Value is the overall assumption regarding the most likely future business circumstances for the company being valued; for example, going concern or in liquidation.[8]

63. I performed this valuation analysis based on the going concern premise of value because Chance, as a stand-alone entity, was a going concern operating company as of the Valuation Dates.

#### Related Entities and other involved entities

64. In connection with the evaluation of solvency/ insolvency of Chance and Related Entities combined we also evaluated the value of the Related Entities.

---

[7] International Glossary of Business Valuation Terms adopted by the ASA, AICPA and other standard setting business valuation professional associations.

[8] Shannon P. Pratt "*Valuing A Business: The Analysis and Appraisal of Closely Held Companies*" Fifth Edition, p. 41.

65. According to Florida's Division of Corporations[9] ("Sunbiz"), Florida's Association of Community Banks and Credit Unions, Inc. ("FLACC") was formed on October 25, 2012 as a not for profit and filed for Administrative Dissolution on September 22, 2017. Siskind is reflected as the Registered Agent and Director. According to Siskind, this entity provided services to community banks and credit unions. Based on the bank cash activity, FLACC did not receive income for performing services to customers and in fact the majority of the cash activity related to significant transfers to and from other Siskind controlled companies.

66. According to Sunbiz, Siskind Legal Services, LLC ("Siskind Legal") was formed on December 23, 2004 and filed for Administrative Dissolution on September 22, 2017. Siskind is listed as the Registered Agent and Manager. According to Siskind, this entity was occasionally used as a vehicle for Siskind to practice law.  Based on the banking activity this entity had significant transfers to and from other Siskind controlled companies. Additionally, much of the banking activity seems to be to or for the benefit of Siskind personally.

67. According Sunbiz, Sympatico Equine Rescue, Inc. ("Sympatico") was formed on February 6, 2013 and filed for Administrative Dissolution on September 27, 2019. Siskind is reflected as the Registered Agent and President. According to Siskind, this entity is a charity in West Palm Beach, Florida. Based on the banking activity there do not appear to be donations or charity related expenses. The majority of the banking activity is related to significant transfers to and from other Siskind controlled companies. Additionally, much of the banking activity seems to be to or for the benefit of Siskind personally.  The banking activity reflect debit card transactions that appear to be consumer purchases for the benefit of Siskind or Siskind's family members.

---

[9] www.sunbiz.org

68.  According to Sunbiz, Sovereign Gaming & Entertainment, LLC ("Sovereign") was formed on February 3, 2014 and is currently listed as "Inactive" and "Pending Reinstatement" as of February 21, 2020.  William Siskind, Siskind's deceased father, is reflected as the Registered Agent and Manager.  The Amended Complaint alleges that Siskind controls this entity as a nominee of his father.  It is unclear as to what goods or services this entity was to provide.  In reviewing the reconstructed bank activity, it appears Sovereign did not provide goods or service but reflects extensive intercompany activity with other Siskind controlled companies.  Additionally, much of the banking activity seems to be to or for the benefit of Siskind personally or his family.

69.  Additionally, as mentioned in Section IV, Sovereign entered into a Purchase Option Agreement for the Hebron Property that was to be used in the CannaMED venture.  CannaMED was to be the third-party beneficiary of Chance & Anthem's assignment of this Purchase Option Contract entered into by Sovereign.[10] We have found no records reflecting that Sovereign had any interest in CannaMED or has a business purpose related to CannaMED.

70.  In conclusion, in regards to the Related Entities, we assumed these were going concern entities for valuation purposes, but many of them seem to lack a legitimate business purpose or do not seem to operate consistent their stated business purpose.

*Valuation Approaches*

71.  There are numerous techniques and approaches to determine the value of an ongoing business enterprise.  Generally, there are three traditional approaches to value a business interest or asset:

a.  The Asset Approach,

b.  The Income Approach, and

c.  The Market Approach.

---

[10] CannaMED Pharmaceuticals, LLC – Company Business Plan – Section 5.4.4 (Site Financing)

72.  Within these approaches, valuation analysts will use one or more methods when valuing a business and/or its ownership interests.  The objective of using more than one approach or method (if applicable) allows the appraiser to view the target company from different perspectives to form an opinion as to the value conclusion.  The method or methods selected for each valuation will depend upon the appraiser's judgment and experience with similar valuations and upon the quantity and quality of available financial, operational and industry data.

73.  The generally accepted business valuation approaches and accompanying methodologies we considered are discussed briefly below.

### *The Asset Approach*

74.  The underlying Asset or Cost Approach establishes value by netting the fair market value of assets and liabilities to determine the net asset value or net worth of the business.  The value of all of the target company's assets are discretely determined and accumulated.  Therefore, this valuation approach requires a discrete valuation of all of the assets of a company, where the appraiser examines the current cost to purchase or replace each asset.

75.  This valuation approach is typically applied for asset heavy or capital intensive businesses, real estate or security holding companies.  Asset value also constitutes the price determinant of corporate worth where operations have historically been unprofitable, unstable, or earnings are marginal in relation to invested capital.  In the case of a company that does not possess sufficient earnings potential or cash flow to warrant treatment as a going concern, assets can be stated at their liquidation values less a provision for disposal costs and taxes that might arise from their liquidation.  On the other hand, in situations where there are earnings or potential earnings, the business should be considered a going concern and its value should be calculated with reference to its earnings or earnings potential as opposed to the value of the assets.

### *The Income Approach*

76. The application of the Income Approach establishes value by means that capitalize or discount future anticipated benefits, such as cash flows or earnings, by a discount or capitalization rate.[11] Capitalization and discount rates are developed to reflect market rate of return expectations, as well as the relative risk of the investment. This approach is often used to determine the value of a going-concern business whose value is aligned with its ability to generate future earnings and/or cash flows. Valuations under this approach are typically performed through the use of the Discounted Cash Flow ("DCF") Method or a Capitalization of earnings method.

77. Capitalization of earnings method is most appropriate for mature businesses with level income streams versus the discounting which is more appropriate for businesses with varying levels of income in the future.

78. The Capitalized Earnings Method normalizes current after-tax cash flows to represent expected future earnings and divides that by a capitalization rate to arrive at a value indication.

79. The Excess Earnings Method is a hybrid of the Asset Approach and Income Approach in that it considers the value of the assets as well as the expected future cash flows. The process of valuing a business utilizing the Excess Earnings Method involves estimating the company's net tangible asset values and applying a reasonable rate of return to identify the earning related to the net tangible assets. Once the earnings attributable to the net tangible assets are identified they are subtracted from the earnings to arrive at the "excess" earnings to be capitalized to determine the amount of "goodwill." The goodwill is added to the net tangible assets to arrive at the value of the assets.

### *The Market Approach*

80. The Market Approach is a relative valuation approach that assesses a company's value by comparing the company being valued to the market price of similar companies at the valuation date or the historical sales price of similar companies that have been sold. There are two primary methods to apply the Market Approach:

---

[11] Typically, a capitalization rate is a rate of return used to convert a single period income into a value, and a discount rate is a rate applied to a series of future income amounts to convert them into one value. The inverse of the capitalization rate is a multiple of cash flow.

a. The "Guideline Public Company Method" where the value of a business enterprise is determined by comparing the target company to publicly-traded guideline companies in the same or similar lines of business. The guideline firms are also referred to as peers or peer companies ("Peers" or "Peer Companies").

b. The "Mergers and Acquisitions ("M&A") Transaction Method" or "Transactions Method" where the value of a business is determined by comparing the target company to actual M&A sales transactions involving both publicly-traded and privately-held companies in the same industry sector as that target company.

### Valuation Approach – Chance & Anthem, LLC

81.   The only assets of the Debtor, other than the transfers we categorized as amounts Due to/ Due from Siskind, Related Entities and third parties, were the interest in CannaMED and the Wellington Home.  For the Wellington Home and the amounts we categorized as Due to/Due from, we utilized the Net Asset Approach. We obtained an appraisal prepared by Greg Eidson, MAI, CCIM that estimated the value of the Wellington Home between $1.2MM and $1.5MM.   For the Debtor's interest in CannaMED, we also evaluated the income approach combined with a probability analysis, as discussed below in paragraphs 81 to 86.

### Income Approach – Capitalization of Earnings (CannaMED)

82.   As previously discussed in Section IV, CannaMED prepared a business plan that contained three stages of build-out projections and corresponding three stages of profit & loss projections. Their initial build-out phase, named 'Fast Start', would provide CannaMED with their initial ramp-up period. The CannaMED Business Plan estimates capital requirements of approximately $424,000 and a time period of about two and half months to complete. Additionally, after the initial build out, CannaMED would continue with Phases 1, 2, and 3 (Phase 3 being the final phase), which would require an additional $2.585MM in capital and take about 15 months to complete. The CannaMED Business Plan indicated that the capital required to fund the build out would come from the profit related to the Wellington House. As discussed above in Section IV, the Debtor did little renovations to the Wellington House and also refinanced the property in 2016, and then the property was foreclosed upon in June of 2017.

83.  The CannaMED Business Plan profit & loss projections for each phase of the build-out indicate an estimated annual revenue of approximately $1.925MM and net profit of approximately $87,000 during the Fast Start. After Phases 1, 2, & 3 and the Full build-out was completed, they projected an annual revenue of approximately $19.25MM and net profit of approximately $9.5MM.

84.  The CannaMED Business Plan assumes that CannaMED would obtain the license necessary to operate as a grower in Maryland, which assumption is the key to the entire business plan. Obtaining a grower's license from MMCC is not guaranteed and was contingent upon the scoring by the MMCC of the business plan submitted as compared to the other business plans submitted by the additional 146 applicants who were all trying to obtain one of the fifteen grower licenses available.

85.  In connection with evaluating the value of the Debtor's interest in CannaMED we evaluated the probability of CannaMED obtaining one of the fifteen grower licenses from MMC, which licenses were being sought by 146 other applicants.  In evaluating the probability, we considered the CannaMED Business Plan that required capital in the amount of $3MM to do a buildout, which capital was expected to come from a house in Wellington Florida. Additionally, we considered that the managing member of CannaMED was an individual in his own Chapter 11 Bankruptcy.  Based on our evaluation, it is our opinion that the probability of CannaMED obtaining one of the fifteen grower licenses was very low given the fact that there were 145 other applicants, the source of the capital indicated in the CannaMED Business Plan, and that the managing member of the applicant was an individual Chapter 11 Debtor.

86.  In connection with evaluating the Debtor's interest in CannaMED, we also considered the probability that the Debtor had sufficient capital and would overcome the business and litigation risks to be able fund the build out to allow CannaMED to realize operations and the projected revenue and earnings.  Given the limited available capital, risk of litigation from investors & Chris George, Chapter 11 bankruptcy of Siskind and other business risks, it is our opinion is that is very unlikely that Chance would be awarded a license, fulfill the requirements of the build out, become operational and operate profitability as outlined in the business plan given all the risks facing Chance and Siskind.

87.    We also considered that although the Debtor held a 70% ownership interest in CannaMED, according to Siskind, the Debtor had no voting or control rights. In our opinion, a hypothetical willing buyer would place a significant discount on this 70% ownership interest due to the lack of voting rights and control, particularly for such a large interest.

### *Valuation Approach – Debtor Consolidated with Related Entities*

88.    Similar to the Debtor, as evidenced in the banking cash activity, the Debtor and the Related Entities have no income and the only assets were the Wellington Home, interest in CannaMED, and amounts we characterized as due from Siskind, a Chapter 11 Debtor. As discussed earlier in Section VII, most of the Related Entities were not active operating companies. Additionally, in regards to the multitude of significant indiscriminate transfers between the Debtor and the Related Entities, we have found no records evidencing the terms of the transfers between the entities such as promissory notes with stated repayment terms, interest rate, security agreements and maturity date.  As discussed previously in Section VII, Siskind utilized a portion of the loans and investor proceeds of these entities to fund his personal lifestyle. Further we evaluated the monthly operating reports and periodic reports regarding value, operations and profitability of entities in Siskind's Chapter 11.

In evaluating the collectability of the $1M amount Due from OB Real Estate, we reviewed the equity in the Trump Office Suite property. We found it was encumbered with indebtedness to George Maler and others in the amount of $350,000 as of December 31, 2014 and then the debt increased to $750,000 as of December 31, 2015.

Based on our analysis we have determined that it is likely that the amounts we categorized as Due to the Debtor and Due from Siskind and Related Entities are uncollectible. Due to the lack of income and earnings of the Related Entities, we utilized the Net Asset Approach in connection with valuing Chance and the Related Entities. For Chance, see the above discussion in paragraph 80.

### IX.    SOLVENCY ANALYSIS OF CHANCE & THE RELATED ENTITIES

89.    In connection with the adversary proceedings in this matter, I was asked to determine whether the Debtor (and the Debtor consolidated with the Related Entities) was solvent or insolvent during the four year prior to the bankruptcy filing date. Solvency is analyzed by determining if, among other factors, the Debtor:

    a.  was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

    b.  was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor represented an unreasonably small capital; or

    c.  Incurred, intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

90.    In order to determine whether Chance was solvent or insolvent, I performed three tests related to the factors described in the previous paragraph:  the Balance Sheet Test, the Capital Adequacy Test, and the Cash Flow Test.[12]

### Balance Sheet Test

91.    A company's solvency or insolvency can be measured by performing an analysis commonly referred to as the Balance Sheet Test, pursuant to which a debtor is insolvent when the sum of its debts is greater than all of its property "at a fair valuation."  It is generally accepted that "at a fair valuation" for the purpose of a Balance Sheet Test means Fair Market Value.  My valuation analysis presented in **Section VII** above calculated the Fair Market Value of the Company.  I therefore utilized this valuation analysis in performing the Balance Sheet Test.

92.    As indicated above, it is my opinion that beginning as of December 31, 2014, Chance was insolvent, and continued to be insolvent at each Valuation Date and through the bankruptcy filing date under the Balance Sheet Test.

93.    Additionally, it is my opinion that beginning as of the December 31, 2014, Chance consolidated with the Related entities was also insolvent, and continued to be insolvent at each Valuation Date and through the bankruptcy filing date under the Balance Sheet Test.

---

[12] Based on Latham & Watkins presentation "Insolvency" by Christopher Harris dated 5/10/12, there are generally three tests used to determine whether an entity is insolvent, Balance Sheet Test, Cash Flow Test, and Adequate Capital Test.

### *Cash Flow Test[13]*

94. The Cash Flow Test assesses whether a company can meet its operating and debt service obligations as they come due. Sources of cash include (a) cash flow generated by operations and (b) additional borrowing capacity, if any.  In addition to operating expenses, cash needs include (a) capital expenditures required for the future operations of the business, (b) interest on outstanding debt, and (c) repayment of debt principal.  The Cash Flow Test should also consider whether the subject company will be able to repay or refinance existing debt upon maturity.

95. The Debtor had no income. The sources of receipt were loans, deposits from investors, deposit from Chris George and refinancing or mortgages taken on properties. In regards to the Debtor's primary asset the Wellington Home, New Wave lenders filed a Complaint for Mortgage Foreclosure and Damages on November 8, 2016 in the Circuit Court of Palm Beach County (Case No.: 2016-CA-012543). On June 12, 2017, the Wellington Home was foreclosed upon. Had CannaMED obtained a license, it would have required substantial capital to fund the build out.

### *Capital Adequacy Test[14]*

96. In addition, I analyzed the adequacy of Chance's capital as of the Valuation Dates. Chance did not have sufficient cash flow to meet its obligations as they became due. The Capital Adequacy Test assesses solvency by evaluating an entities ability to meet its obligations as they become due while staying within its financial covenants.

97. As discussed above, we evaluated the Balance Sheet Test and Cash Flow Test, which indicated Chance's liabilities exceeded its assets and it did not have sufficient cash flow to meet its obligations as they became due.

---

[13] Based on Willamette Management Associates, Proving or Contesting Debtor Insolvency Under the Balance Sheet Test, by Robert F. Reilly, evidence used to determine insolvency includes, among other things, capital adequacy test documents and data including, cash balance restrictive covenants, details of all working capital account balances, operating budgets, prior year operating budgets, short term capital expenditure commitments.

[14] Based on Willamette Management Associates, Proving or Contesting Debtor Insolvency Under the Balance Sheet Test, by Robert F. Reilly, evidence used to determine insolvency includes, among other things, cash flow test documents and data, including cash balance restrictive covenants, lease repayment schedules, debt repayment schedule, debt covenants and restrictions, debt capacity available, capital expenditures and other uses of cash, asset sales and other sources of cash and intercompany debt obligations.

### *Solvency Test Conclusion*

98.  Based on the solvency analyses discussed above, it is my opinion that Chance was insolvent as of the Valuation Dates because (a) the Company's assets were worth less than its liabilities, (b) the Company was inadequately capitalized, and (c) the Company would not be able to meet its debt obligations as they matured.

99.  Additionally, based on the solvency analysis discussed above, it is my opinion that the Debtor consolidated with the Related Entities was insolvent for the same reasons stated in the above paragraph.

## X.  SUMMARY CONCLUSION

100.  Based on my detailed analysis of the financial and other information cited in this report, my past experience and my training, it is my opinion that both Chance, as a stand-alone entity, and Chance consolidated with the Related Entities was insolvent, inadequately capitalized, was not able to meet its debt obligations, and was unable to manage the various business challenges that it faced by December of 2014 and beyond and through the Petition Date.

## XI.  ALAN BARBEE PROFESSIONAL BACKGROUND

101.  I am a Principal with GlassRatner Advisory & Capital Group LLC.   I am a Certified Public Accountant ("CPA") licensed in the State of Florida.  In addition, I am Accredited in Business Valuation ("ABV") by the American Institute of Certified Public Accountants (AICPA).  I have consistently equaled, or exceeded, the continuing professional education requirements for my areas of specialty and related professional designations.

102.  I have over twenty-five years of experience in financial advisory services in the areas of forensic and general accounting, including investigation of financial and accounting matters, corporate investigations, calculating economic damages, valuation, financial fraud investigations, financial consulting, insolvency matters, and litigation support.

103.  I have testified as an expert at trial, mediation, arbitration and depositions on numerous occasions on behalf of plaintiffs and defendants.

104. My CV is attached hereto as **Appendix 2**, further documenting my education and experience.

_____

Alan R. Barbee, CPA/ABV
GlassRatner Advisory & Capital Group, LLC                    Date: April 20, 2020

**APPENDIX 1**

**DOCUMENTS CONSIDERED**

## Chance & Anthem, LLC (Case No.: 18-16248-MAM)

**Documents Considered**
**Appendix 1**

| Item No. | Documents Considered |
|---|---|
| 1 | Chance & Anthem, LLC - Monthly Bank Statements & Check Copies - Chase xx1866 - October 2015 to June 2018 |
| 2 | Siskind Legal - Monthly Bank Statements & Check Copies - Chase xx0683 - September 2013 to August 2018 |
| 3 | Jeffrey Siskind Personal DIP - Monthly Bank Statements & Check Copies - Chase xx2061 - September 2013 to August 2018 |
| 4 | Sympatico Equine Rescue, Inc. - Monthly Bank Statements & Check Copies - Chase xx3506 - February 2013 to August 2018 |
| 5 | Florida Association of Community Banks - Monthly Bank Statements & Check Copies - Chase xx6890 - January 2013 to July 2018 |
| 6 | Chance & Anthem, LLC - Monthly Bank Statements & Check Copies - Suntrust xx6688 - November 2014 to February 2017 |
| 7 | Sovereign Gaming & Entertainment LLC - Monthly Bank Statements & Check Copies - Suntrust xx1472 - January 2013 to January 2017 |
| 8 | Siskind Legal Services- Check Copies - PNC Bank xx7373 - July 2017 to July 2018 |
| 9 | OB Real Estate Holdings 1732, LLC - Monthly Bank Statements & Check Copies - Suntrust xx1451 - April 2014 to June 2017 |
| 10 | Siskind Legal Services, LLC - Monthly Bank Statements & Check Copies - Suntrust xx9840 - January 2013 to March 2013 |
| 11 | Siskind Legal Services, LLC (Escrow) - Monthly Bank Statements & Check Copies - Suntrust xx3254 - January 2013 to March 2013 |
| 12 | Tanya Siskind - Monthly Bank Statements - Suntrust xx1505 - March 2015 to June 2018 |
| 13 | Tanya Siskind - Monthly Bank Statements & Check Copies - Suntrust xx7764 - February 2013 to August 2018 |
| 14 | William & Jeffrey Siskind - Monthly Bank Statements & Check Copies - Wells Fargo xx1063 - May 2018 to July 2018 |
| 15 | Samantha & Tanya Siskind - Monthly Bank Statements - Wells Fargo xx1549 - November 2015 to July 2018 |
| 16 | Jack & Tanya Siskind - Monthly Bank Statements - Wells Fargo xx4415 - July 2018 |
| 17 | Samantha & Tanya Siskind - Monthly Bank Statements - Wells Fargo xx7382 - November 2015 to March 2016 |
| 18 | Jack & Tanya Siskind - Monthly Bank Statements - Wells Fargo xx7516 - December 2015 to June 2016 |
| 19 | Tanya Siskind - Monthly Bank Statements & Check Copies - Wells Fargo xx8067 - February 2013 to July 2018 |
| 20 | Jack & Tanya Siskind - Monthly Bank Statements - Wells Fargo xx8423 - December 2015 to April 2017 |
| 21 | Tanya Siskind - Monthly Bank Statements - Wells Fargo xx8850 - January 2013 to July 2018 |
| 22 | Tanya Siskind Campaign Account - Monthly Bank Statements & Check Copies - Wells Fargo xx9229 - August 2017 to June 2018 |
| 23 | Siskind IOTA Attorney Trust Account - Monthly Bank Statements & Check Copies - Wells Fargo xx9721 - January 2013 to July 2018 |
| 24 | Chapter 11 Monthly Operating Reports - Jeffrey Siskind - February 2013 to December 2017 |
| 25 | Warranty Deed - 11400 Torchwood Acquisition by Beacon & Fiore - February 25, 2014 |
| 26 | Warranty Deed - 11400 Torchwood Sale by Beacon & Fiore - June 24, 2014 |
| 27 | Assignment of Mortgage - Talavera property - August 23, 2017 |
| 28 | Late Rent Letters to J. Siskind re: rent at Hebron, MD property |
| 29 | Rental Agreement for Hebron, MD property dated March 31, 2016 |
| 30 | Complaint for Damages filed by CannaMED against Maryland Medical Cannabis Commission - August 15, 2017 |
| 31 | Motion to Dismiss Complaint against MMCC - October 30, 2017 |
| 32 | Order dismissing Complaint against MMCC - January 30, 2018 |
| 33 | Motion for Reconsideration of Complaint against MMCC - February 19, 2018 |
| 34 | Order Denying Motion for Reconsideration of Complaint against MMCC - April 2, 2018 |
| 35 | Notice of Appeal filed by CannaMED - May 1, 2018 |
| 36 | Cross Creek- Assignment of Mortgage from Maler - December 2, 2015 |
| 37 | Cross Creek- Assignment of Mortgage to Zokaites - October 12, 2017 |
| 38 | Cross Creek- Mohammed foreclosure complaint |
| 39 | Cross Creek- Notice of Lis Pendens |
| 40 | Deed between Sovereign and Talavera Trust - January 9, 2015 |
| 41 | Indemnity Mortgage - Talavera Trust - February 6, 2014 |
| 42 | Lis Pendens - Talavera trust - November 14, 2014 |
| 43 | Assignment of Second Mortgage - Talavera property - July 19, 2016 |
| 44 | Santa Barbara- ABK Mortgage |
| 45 | Santa Barbara deed from Chase - August 25, 2015 |
| 46 | Santa Barbara- Foreclosure Deed - June 12, 2017 |
| 47 | Santa Barbara- New Wave foreclosure complaint |
| 48 | Santa Barbara- New Wave Mortgage - November 12, 2015 |
| 49 | Siskind resignation from OB Real Estate |
| 50 | Talavera Assignment of Mortgage - February 6, 2014 |
| 51 | Talavera QuitClaim Deed - May 8, 2013 |
| 52 | Tatarow Complaint for Foreclosure |
| 53 | Tatarow mortgage - February 25, 2016 |
| 54 | Trump- Certificate of Title to OB Holdings |
| 55 | Trump- Mortgage Deed to Maler |
| 56 | Trump- Mortgage Modification Agreement with Maler Lenders - November 28, 2014 |
| 57 | Trump- Sale of property by Zokaites - January 31, 2018 |
| 58 | Trump- Second Mtge Modification Agreement with Maler Lenders - March 20, 2015 |
| 59 | Trump- Third Mtge Modification Agreement with Maler Lenders - September 20, 2015 |
| 60 | Trump- TP5 Deed - May 17, 2013 |
| 61 | CannaMED Operating Agreement |
| 62 | CannaMED Company Business Plan prepared for MMCC |
| 63 | 2004 Examination of Jeffrey Siskind with corresponding exhibits - December 19, 2019 |
| 64 | Purchase Option Agreement with Machining Technologies dated 08.28.2015 - Hebron Property |
| 65 | Purchase Option Agreement with 27120 Ocean Gateway dated 03.31.2016 - Hebron Property |
| 66 | Case Information Listing from Circuit Court for Baltimore City-Civil System - CannaMED v. MMCC |
| 67 | Appraisal of 3445 Wellington property prepared by Greg Eidson |

## Chance & Anthem, LLC (Case No.: 18-16248-MAM)

**Documents Considered**

**Appendix 1**

| Item No. | Documents Considered |
|---|---|
| 68 | Economic Outlook Update - Q4 2016 - Business Valuation Resources, LLC |
| 69 | Maryland.gov Business Search - Cucanna Pharamacueticals (CannaMED Pharmacueticals, LLC) |
| 70 | Maryland Medical Cannabis Commission (MMCC) - Announcement December 21, 2015 - Revised Scoring Timeline for Applications |
| 71 | Maryland Medical Cannabis Commission (MMCC) - Announcement December 9, 2016 - License Pre-Approvals |
| 72 | Maryland Medical Cannabis Commission (MMCC) - FAQ as of February 21 ,2020 - How will growers be licensed? |
| 73 | Florida Division of Corporations (Sunbiz.org) - Company Search - Florida's Association of Community Banks and Credit Unions, Inc. (FLACC) |
| 74 | Florida Division of Corporations (Sunbiz.org) - Company Search - OB Real Estate Holdings 1732, LLC |
| 75 | Florida Division of Corporations (Sunbiz.org) - Company Search - Siskind Legal Services, LLC |
| 76 | Florida Division of Corporations (Sunbiz.org) - Company Search - Sovereign Gaming & Entertainment, LLC |
| 77 | Florida Division of Corporations (Sunbiz.org) - Company Search - Sympatico Equine Rescue, Inc. |
| 78 | Florida Division of Corporations (Sunbiz.org) - Company Search - Wellington 3445, LP |
| 79 | Washington Post article dated September 8, 2019 - *A bigger crop: Why Maryland's medical pot growers are adding more plants* |
| 80 | Palm Beach Post article dated August 7, 2019 - *Wellington attorney Siskind defrauded investors of millions, bankruptcy trustee claims* |

**APPENDIX 2**

**BARBEE CV AND PRIOR TESTIMONY**

## Biography:

# ALAN R. BARBEE - CPA, ABV
## PRINCIPAL





**Contact:**
561.657.4891
abarbee@glassratner.com
vCard

**Industries**
Automotive
Healthcare
Real Estate
Restaurant

**Specialties**
Bankruptcy Proceedings
Damages/Lost Profit Analysis
Expert Witness
Fiduciary Services
Forensic Accounting
Fraud Investigation
Litigation Support
Ponzi Schemes
Solvency Opinions
Valuation

Alan Barbee is a Principal of GlassRatner and part of the Florida leadership team. Prior to joining GlassRatner in 2014, he was the partner in charge of Marcum, LLP's Florida Advisory Services Division; prior to that from 1991 to 2007 he worked at Barbee & Associates, Inc a well respected boutique Insolvency and Forensic Accounting Practice in Florida. He led Barbee & Associates from 2000 to 2007. Mr. Barbee has over 25 years experience providing forensic accounting and litigation support services primarily concentrated in the areas of fraud investigation, quantification of economic damages, bankruptcy and insolvency consulting and business valuation. Additionally, Mr. Barbee has extensive experience providing business management and advisory services related to businesses in a wide range of different industries.

Mr. Barbee has been retained by numerous attorneys, secured lenders, business organizations, Bankruptcy Trustees, court appointed Receivers and other fiduciaries to provide services that include forensic review and reconstruction of books and records, investigation of investment fraud and Ponzi schemes, identification of concealed assets and complex asset tracing, analysis of avoidable transfers, evaluation of technical tax issues and business valuation in connection with litigation, estate/gift taxation and financial statement audits.

Alan has extensive litigation support experience that includes both expert witness and consulting assignments. Mr. Barbee has rendered numerous expert opinions in connection with commercial economic damage calculations, determination of solvency/insolvency and valuation issues. Mr. Barbee has also provided expert witness consulting services for numerous mediations and settlement conferences. Alan has also served as a court appointed fiduciary relating to matters involving administration of assets, resolution of litigation and claims adjudication.

Mr. Barbee has performed consulting and valuation services for Nations Credit, SunTrust Bank, Colonial Bank, and Bank of America related to distressed properties and troubled loans. He has also performed engagements for the Securities and Exchange Commission and Commodity Futures Trade Commission to name a few of his clients.

Mr. Barbee is a licensed Certified Public Accountant (CPA) in the State of Florida, is Accredited in Business Valuations (ABV) by the AICPA and graduated from the University of Central Florida with a Bachelor degree in Business Administration. Alan Co-authored "Following Electronic Trails to Evidence of Fraud", published in The Journal of Corporate Renewal, August 2007 and has presented at the Region 21 U.S. Trustee training event for panel Trustees, the Turnaround Management Association and other professional associations. Mr. Barbee has also been named Top CPA's in Litigation Support from 2006 to 2016 by South Florida Legal Guide.

©2019 GlassRatner Advisory & Capital Group LLC. All rights reserved. www.GlassRatner.com

**Alan R. Barbee, CPA/ABV**
**Principal**
**Direct: 561.657-4891**
**Cell: 561.398.2025**
**Email:** abarbee@glassratner.com



*Fiduciary Roles – Assignments for the Benefit of Creditors, Receiver, Plan Administrator, Chief Restructuring Officer*

All Southern Rehabilitation Services, LLC
Frank Investment, Inc. (Florida)
Frank Investment, Inc. (New Jersey)
K2 Builders, Inc.
Luna Development Group
Pilates by Geri, LLC
P&S Cigar, Inc.
Tradewinds Engine Services
Vitreo Retinal Consultants of the Palm Beaches, Inc.

Also appointed as financial advisor to fiduciaries in numerous cases.  A list of cases will be provided upon request.

*Deposition or Trial Testimony Experience*

Autotech Leasing Services LLC et al
United States Bankruptcy Court, Southern District of New York
Case No. 00-12084-BKC-SMB
Evidence by Deposition
Retained by:            **Ian J, Gazes, Trustee**
Counsel:                Ian J. Gazes, Esq.
Opposing Counsel:       Timothy O'Neill, Esq.
Issue:                  Forensic Accounting, Avoidable Transfers and Valuation

Atlas Environmental, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 97-20203-BKC-RBR
Evidence at Trial
Retained by:            **Defendants**
Counsel:                Keith Grumer, Esq.
Opposing Client:        Soneet Kapila, Trustee
Opposing Counsel:       Jeffrey Bast, Esq.
Issue:                  Forensic accounting, Avoidable Transfers,
                        Solvency/Insolvency and Valuation

Blue Marlin Motors of Stuart, LLC
United States Bankruptcy Court, Southern District of Florida
Case No. 15-28093-BKC-PGH
Evidence at Deposition and Trial
Retained by:            **Deborah Menotte, Trustee**
Counsel:                Kenneth Robinson, Esq.
Opposing Counsel:       Gary Goldstein, Esq,
Issue:                  Avoidable Transfers and Solvency

 

**Alan R. Barbee, CPA/ABV**
**Principal**
**Direct: 561.657-4891**
**Cell: 561.398.2025**
**Email: abarbee@glassratner.com**



Center for Child Development, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 07-15574-BKC-PGH
Evidence at Trial
Retained by:           **Michael Bakst, Trustee**
Counsel:               Nadine White-Boyd, Esq.
Opposing Counsel:      Tina Talarchyk, Esq,
Issue:                 Avoidable Transfers and Solvency

Center for Child Development, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 07-15574-BKC-PGH
Evidence by Deposition
Retained by:           **Michael Bakst, Trustee**
Counsel:               David Cimo, Esq
Opposing Counsel:      Jose Rojas, Esq
Issue:                 Economic Damages, Forensic accounting, Avoidable
                       Transfers, Solvency and Valuation

Cascade International, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 91-33703-BKC-RAM
Evidence at Trial and Deposition
Retained by:           **Kenneth A. Welt, Trustee**
Counsel:               David Cimo, Esq.
Issue:                 Claims Objections, Constructive Trust Tracing, and
                       Economic Damages

Corporate Communications Group, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 97-10486-BKC-AJC
Evidence by Deposition
Retained by:           **Jeffrey H. Beck, Trustee**
Counsel:               Lance Baker, Esq., Andrew Zaron, Esq.
Opposing Counsel:      Gary Freedman, Esq.
Issue:                 Forensic accounting, Avoidable Transfers, Solvency,
                       Substantive Consolidation and Valuation

Custom Contractors, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 09-24404-BKC-PGH
Evidence at Trial and Deposition
Retained by:           **Deborah Menotte, Trustee**
Counsel:               Steven Fender, Esq.
Opposing Counsel:      Phillip Doyle, US Attorney Trial Attorney
Issue:                 Forensic Accounting, Solvency, Capital Adequacy and
                       Valuation

**Alan R. Barbee, CPA/ABV**
**Principal**
**Direct: 561.657-4891**
**Cell: 561.398.2025**
**Email: abarbee@glassratner.com**



Thomas D'Agostino, Sr. vs. Frederick J. Keitel, III, et.al.
Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County,
Florida
Case No. 502013CA004692XXXXMBAI
Evidence at Trial
Retained by:              **Plaintiff**
Counsel:                  Eric Christu, Esq., Jonathan Hart, Esq.
Opposing Counsel:         Robert Stone, Esq.
Issue:                    Forensic accounting and Economic Damages

Evolution Imports, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 96-21853-BKC-RBR
Evidence at Trial
Retained by:              **Kenneth A. Welt, Trustee**
Counsel:                  Arthur Rice, Esq.
Opposing Counsel:         Patrick Scott, Esq.
Issue:                    Forensic accounting, Claims Objections; Constructive
                          Trust Tracing; Establishing Indebtedness; Equitable
                          Subordination

Genesis Press, Inc. vs. Hartford Casualty
United States District Court, District of South Carolina
Case No. 6:08-CV-2115-HMH
Evidence at Jury Trial and Deposition
Retained by:              **Plaintiff**
Counsel:                  Dick Harpootlian, Esq.
Opposing Counsel:         Martin Disiere, Esq., Frankie Marion, Esq.
Issue:                    Business Interruption Claim and Economic Damages

Greenwood Partners
United States Bankruptcy Court, Southern District of Florida
00-33098-BKC-PGH
Evidence by Deposition
Retained by:              **Deborah Menotte, Trustee**
Counsel:                  Michael Bakst, Esq.
Opposing Counsel:         Stephen Mayans, Esq.
Issue:                    Forensic accounting, Avoidable Transfers, Valuation and
                          Insolvency

Bankruptcy Estate of Dr. James Alan Harrison, D.D. S.
United States Bankruptcy Court, Southern District of Florida
96-35373-PGH
Evidence by Deposition
Retained by:              **Patricia Dzikowski, Trustee**
Counsel:                  Patricia Dzikowski, Esq.
Issue:                    Business Valuation

**Alan R. Barbee, CPA/ABV**
**Principal**
**Direct: 561.657-4891**
**Cell: 561.398.2025**
**Email: abarbee@glassratner.com**



Bankruptcy Estate of Ronald Hyman vs. Deon Burton
United States Bankruptcy Court, Southern District of Florida
09-14669-BKC-EPK
Evidence at Trial
Retained by:            **Robert Furr, Trustee**
Counsel:                Robert C. Furr, Esq., Marc Barmat, Esq.
Opposing Counsel:       Pro-se
Issue:                  Forensic Accounting, Tax Issues and Tax Refunds


KB Aircraft Acquisition, LLC vs. BerryAir, LLC, Jack M. Berry Jr., J&H Grove
Holdings, L.C. and Southern Air Systems, Inc.
Circuit Court of the Thirteenth Judicial Circuit in and for Hillsboro County, Florida
10-CA-22168-DIV-G
Evidence at Trial
Retained by:            **Plaintiff**
Counsel:                Riley Cirulnick, Esq.
Opposing Counsel:       Patrick Lennon, Esq.
Issue:                  Accounting and Forensic Accounting


Kipu Systems, LLC vs. ZenCharts, LLC, Solutions Recovery, LLC, et.al.
United States District Court, Southern District of Florida
1:17-cv-24733-KMW-EGT
Evidence at Jury Trial
Retained by:            **Defendant**
Counsel:                Walter H. Boone, Esq. andAdam K. Israel, Esq.
Opposing Counsel:       Christopher B. Spuches, Esq., Mark Stein, Esq. and
                        Javier J. Rodriguez, Esq.
Issue:                  Economic Damages


Landmark at Sky Towers Suites, LLC and Fountainhead Sky Tower Suites
Investors, LLC vs. Krandon International Management Group, LLC
Circuit Court of the Thirteenth Judicial Circuit in and for Hillsboro County, Florida
11-001922
Evidence by Deposition
Retained by:            **Defendant and Counter Plaintiff - Krandon**
                        **International Management Group**
Counsel:                Phillip Schwartz, Esq., Richard Martin, Esq., Christopher
                        Carver, Esq., Stacy Rodriguez, Esq.
Opposing Counsel:       Robert L. Olsen, Esq., Joshua Smith, Esq.
Issue:                  Economic Damages


Label & Co. Developments, Inc. vs. DeBuys Property Investment Group, Ltd.,
et al.
Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County,
Florida
2011 CA-013872 XXXX MB

Alan R. Barbee, CPA/ABV
Principal
Direct: 561.657-4891
Cell: 561.398.2025
Email: abarbee@glassratner.com



Evidence by Deposition
Retained by:                 **Plaintiff, Label & Co, Developments, Inc.**
Counsel:                      Michael Joblove, Esq.
Opposing Counsel:    William J. Cornwell, Esq., David K. Freidman, Esq.
Issue:                        Economic damages


Michael Chow et.al. vs. Chak Yam Chua et.al.
United States District Court, Southern District of Florida
Case No. 09-21893-CIC-Hoeveler/ Garber
Evidence at Jury Trial and Deposition
Retained by:                 **Defendants**
Counsel:                      Anthony Accetta, Esq.
Opposing Counsel:    Curtis Miner, Esq.
Issue:                        Economic damages


Wells Fargo Bank, NA as Trustee for the Registered Holders of JP Morgan
Chase Commercial Mortgage Securities Corp,, Commercial Mortgage Pass-
Through Certificates, L.T. Series 2003-PM1, by its special servicer, Orix Capital
Markets, LLC vs. Palm Beach Mall, LLC, Simon Property Group, L.P. et.al.
Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County,
Florida
Case No. 502009CA013088XX
Evidence by Deposition
Retained By:                 **Plaintiff, Orix Capital Markets, LLC as Special Servicer**
Counsel:                      Matthew Chait, Esq.
Opposing Counsel:    David P. Ackerman, Esq., Paul Vizcarrondo, Esq., Ben
                              Germana, Esq.
Issue:                        Prevailing rates of expert witnesses


Bankruptcy Estate of Jeffrey Prosser
United States Bankruptcy Court, District of Virgin Islands
Case No. 06-30009-BKC-JKF
Evidence at Trial and Deposition
Retained by:                 **James Carroll, Trustee**
Counsel:                      Yann Geron, Esq., William Stassen, Esq.
Opposing Counsel:    Dustin McFaul, Esq.
Issue:                        Forensic Accounting and Characterization of transactions


Bankruptcy Estate of Jeffrey Prosser
United States District Court, District of Virgin Islands
Case No. 06-30009-BKC-JKF
Evidence at Jury Trial
Retained by:                 **James Carroll, Trustee**
Counsel:                      William Stassen, Esq.
Opposing Counsel:    Jeffrey Moorhead, Esq.
Issue:                        Economic damages, Avoidable Transfers, Characterization
                              of transactions, Forensic Accounting and Valuation

Alan R. Barbee, CPA/ABV
Principal
Direct: 561.657-4891
Cell: 561.398.2025
Email: abarbee@glassratner.com



PSN USA, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 02-11913-BKC-AJC
Evidence at Trial
Retained by:             **PSN USA, Inc. (Debtor)**
Counsel:                 Robert Charbonneau, Esq.
Opposing Counsel:        Michael Seese, Esq.
Issue:                   Forensic accounting, Avoidable Transfers, Valuation and
                         Plan of Reorganization Confirmation


R&J Roofing, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 98-32072-BKC-SHF
Evidence by Deposition
Retained by:             **Patricia Dzikowski, Trustee**
Opposing Counsel:        John Walsh, Esq.
Issue:                   Forensic accounting and Avoidable Transfers


Rollaguard Security, LLC vs. Shamrock Jewelers, Inc., Anthony Simpson, et.al.
United States Bankruptcy Court, Southern District of Florida
Case No. 14-38071-BKC-EPK
Evidence at Trial
Retained by:             **Robert C. Furr, Trustee**
Counsel:                 John Genovese, Esq. and Jesus Suarez, Esq.
Issue:                   Forensic accounting


S.E.C. vs. Victor Incendy, et al
United State District Court, Southern District of Florida
Case No. 95-8149-CIV-NESBITT
Evidence by Deposition
Retained by:             **Securities and Exchange Commission**
Counsel:                 Glenn Harris, Esq.
Issue:                   Forensic accounting, Damages and Disgorgement of
                         Insider Trading Profits


State of Florida vs. Craig Burton Danzig
Circuit Court for the Nineteenth Circuit of the State of Florida, Martin County
Case No. 43-2015-CF-001397-A
Evidence at Jury Trial
Counsel for State:       Lev Evans, Esq. and Anastasia Norman, Esq.
Opposing Counsel:        Menachem Mayberg, Esq.
Issue:                   Forensic Accounting, Tracing of Sources and Uses of
                         Proceeds, Insolvency

**Alan R. Barbee, CPA/ABV**
**Principal**
**Direct: 561.657-4891**
**Cell: 561.398.2025**
**Email: abarbee@glassratner.com**



Mohammed Saeme v. Philip Levine and Baron Wellness LLC.
United States District Court, Southern District of Florida
Case No. 11-civ-21913-UU
Evidence by Deposition
Retained by:             **Defendants**
Counsel:                 Robert B. Miller, Esq., Alaina B. Siminovsky, Esq.
Opposing Counsel:        Larry A. Stumpf, Esq., Roy E. Black, Esq.,
                         Jared M. Lopez, Esq.
Issue:                   Economic damages


Seacoast 5151 Condominium Association, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 99-11096-BKC-AJC
Evidence at Trial
Retained by:             **Seacoast 5151 Condominium Association, Inc.**
                         **(Debtor)**
Counsel:                 Kenneth Robinson Esq., Kendall Coffey, Esq.
Opposing Counsel:        Peter Russin, Esq.
Issue:                   Forensic accounting, Avoidable Transfers, Internal
                         Controls, Solvency and Valuation


Teligent Services, Inc.
United States Bankruptcy Court, Southern District of New York
01-12974-BKC-SMB
Evidence at Trial and Numerous Depositions
Retained by:             **Denise Savage, Litigation Trustee**
Counsel:                 Denise Savage, Esq.
Opposing Counsel:        Numerous
Issue:                   Forensic accounting, Avoidable Transfers, Solvency and
                         Valuation


Tuttles Design Build, Inc.
United States Bankruptcy Court, Southern District of Florida
Case No. 98-33662-BKC-SHF
Evidence by Deposition
Retained by:             **Patricia Dzikowski, Trustee**
Counsel:                 John Walsh, Esq.
Issue:                   Forensic accounting, Avoidable Transfers and Valuation


Lawrence Weinstein MD. vs. Tenet Florida Physician Services, LLC
Arbitration Hearing
Case No. 71-166-00409-12
Evidence at Arbitration Hearing
Retained by:             **Plaintiff**
Counsel:                 Robert B. Miller, Esq.
Opposing Counsel:        Martin Goldberg, Esq., Alan Lash, Esq.
Issue:                   Economic Damages

**Alan R. Barbee, CPA/ABV**
**Principal**
**Direct: 561.657-4891**
**Cell: 561.398.2025**
**Email: abarbee@glassratner.com**



XTEC, Incorporated vs. Hembree Consulting Services, Inc. and Larry Hembree
United States District Court, Southern District of Florida
Case No. 14-21029-CIV-Altonaga/ O'Sullivan
Evidence at Jury Trial
Retained by:          **Defendants**
Counsel:               Thomas J. Meeks, Esq., Gregory M.Cesarano, Esq.
Opposing Counsel:   Eduardo I. Rasco, Esq., Steve Bimston, Esq.
Issue:                  Economic Damages

EXHIBIT A

## Chance & Anthem, LLC (Case No.: 18-16248-MAM)

**Detail - Payments to Advanced Avionics**
**Four Year Period**

| Bank | Entity | Type | Check No. | Date | Memo | Deposit/ Credit | Disbursement/ Debit |
|------|--------|------|-----------|------|------|-----------------|---------------------|
| SunTrust 6688 | Chance & Anthem | Check | 1026 | 11/13/15 | Panel Equipment & Initial Labor Deposit | | $ 100,000.00 |
| | | | | | **Total** | **$ -** | **$ 100,000.00** |

SUNTRUST BANK
PO BOX 305183
NASHVILLE TN 37230-5183

# SunTrust

PAGE 1 OF 2
36/E00/0175/0/ 40
1000176606688
11/30/2015

ACCOUNT
STATEMENT

CHANCE & ANTHEMS LLC
525 S FLAGLER DRIVE
SUITE 501
WEST PALM BEACH FL 33401

QUESTIONS? PLEASE CALL
1-800-786-8787

HOW CAN WE HELP YOU MAKE THE RIGHT FINANCIAL CHOICES FOR TODAY AND TOMORROW?
WITH OUR VARIETY OF SOLUTIONS AND FINANCIAL GUIDANCE.
WE VALUE YOU AS A CLIENT AND WANT TO HELP YOU BANK THE WAY THAT FITS YOUR LIFE.
LEARN MORE AT SUNTRUST.COM

----------------------------------------------------------------------------------
ACCOUNT SUMMARY

| ACCOUNT TYPE | ACCOUNT NUMBER | STATEMENT PERIOD |
|---|---|---|
| PRIMARY BUSINESS CHECKING | 1000176606688 | 11/01/2015 - 11/30/2015 |

----------------------------------------------------------------------------------

| DESCRIPTION | AMOUNT | DESCRIPTION | AMOUNT |
|---|---|---|---|
| BEGINNING BALANCE | $374.37 | AVERAGE BALANCE | $332,612.23 |
| DEPOSITS/CREDITS | $704,974.57 | AVERAGE COLLECTED BALANCE | $332,612.23 |
| CHECKS | $252,260.00 | NUMBER OF DAYS IN STATEMENT PERIOD | 30 |
| WITHDRAWALS/DEBITS | $174,334.63 | | |
| ENDING BALANCE | $278,754.31 | | |

----------------------------------------------------------------------------------
DEPOSITS/CREDITS

| DATE | AMOUNT | SERIAL # | DESCRIPTION |
|---|---|---|---|
| 11/06 | 704,974.57 | | INCOMING FEDWIRE CR TRN #016605 |

DEPOSITS/CREDITS: 1          TOTAL ITEMS DEPOSITED: 0

----------------------------------------------------------------------------------
CHECKS

| CHECK NUMBER | AMOUNT | DATE PAID | CHECK NUMBER | AMOUNT | DATE PAID |
|---|---|---|---|---|---|
| 1022 | 60.00 | 11/06 | 1027 | 17,000.00 | 11/17 |
| *1024 | 120,200.00 | 11/09 | *1030 | 10,000.00 | 11/13 |
| 1025 | 2,500.00 | 11/10 | *1032 | 2,500.00 | 11/30 |
| 1026 | 100,000.00 | 11/13 | | | |

CHECKS: 7          *BREAK IN CHECK SEQUENCE

----------------------------------------------------------------------------------
WITHDRAWALS/DEBITS

| DATE | AMOUNT | SERIAL # | DESCRIPTION |
|---|---|---|---|
| 11/06 | 15.00 | | INCOMING FEDWIRE TRANSFER FEE TRN #016605 |
| 11/09 | 50.00 | | OUTGOING FEDWIRE TRANSFER FEE TRN #008364 |
| 11/09 | 50,000.00 | | OUTGOING FEDWIRE DR TRN #008364 |
| 11/09 | 2,500.00 | | OVER-THE-COUNTER WITHDRAWAL |
| 11/13 | 50.00 | | OUTGOING FEDWIRE TRANSFER FEE TRN #016428 |
| 11/13 | 61,719.63 | | OUTGOING FEDWIRE DR TRN #016428 |
| 11/13 | 5,000.00 | | OVER-THE-COUNTER WITHDRAWAL |
| 11/13 | 5,000.00 | | OVER-THE-COUNTER WITHDRAWAL |
| 11/13 | 5,000.00 | | OVER-THE-COUNTER WITHDRAWAL |
| 11/23 | 5,000.00 | | OVER-THE-COUNTER WITHDRAWAL |
| 11/27 | 40,000.00 | | OVER-THE-COUNTER WITHDRAWAL |

WITHDRAWALS/DEBITS:  11

MEMBER FDIC                    CONTINUED ON NEXT PAGE

**EXHIBIT A**

SUNTRUST BANK
PO BOX 305183
NASHVILLE  TN  37230-5183

PAGE 2 OF 2
36/E00/0175/0/ 40
1000176606688
11/30/2015

# SUNTRUST

ACCOUNT
STATEMENT

----------------------------------------------------------------------------

BALANCE ACTIVITY HISTORY

| DATE | BALANCE | COLLECTED BALANCE | DATE | BALANCE | COLLECTED BALANCE |
|------|---------|-------------------|------|---------|-------------------|
| 11/01 | 374.37 | 374.37 | 11/17 | 326,254.31 | 326,254.31 |
| 11/06 | 705,273.94 | 705,273.94 | 11/23 | 321,254.31 | 321,254.31 |
| 11/09 | 532,523.94 | 532,523.94 | 11/27 | 281,254.31 | 281,254.31 |
| 11/10 | 530,023.94 | 530,023.94 | 11/30 | 278,754.31 | 278,754.31 |
| 11/13 | 343,254.31 | 343,254.31 | | | |

MEMBER FDIC

```
STSC
SUBPOENA SERVICES
FL-ORLANDO-7136
,

COPY REFERENCE: 20181101000365      SS
11/02/18 10:11:11 31 WEB JOBT81102100423
0075011906  20151113       07
100000.00    1000176606688        000000
```

WARNING: THIS DOCUMENT HAS SECURITY FEATURES IN THE PAPER

**CHANCE & ANTHEM**
525 S. Flagler Drive, Ste. 500
West Palm Beach, FL 33401
Telephone (561) 832-0898

**SunTrust Bank**
505 S. Flagler Drive
West Palm Beach, FL 33401
(561)838-5110

1026

DATE    11/11/2015

63-215 / 631

PAY    **Advanced Avionics**    $   **100,000.00

*ONE-HUNDRED-THOUSAND  AND  00/100*********************************************    DOLLARS

TO THE
ORDER
OF    **Advanced Avionics**

Memo    Panel Equipment & Initial Labor Deposit

⑆063102152⑆100017660668⑈ 1026

PLEASE ENDORSE HERE
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

0015 1 1 003300505778  00100302005

# EXHIBIT B

**Chance & Anthem, LLC (Case No.: 18-16248-MAM)**
Flowchart Tracing Referenced Funds
Santa Barbara House

